# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JAB Energy Solutions II, LLC, | ) | Case No. 21-11226 (CTG) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | **Re: Docket No. 27** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] of JAB Energy Solutions II, LLC, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (collectively, the "Case"), for entry of an interim order (this "Interim Order"), pursuant to sections 105, 361, 362, 363(c), 364, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, 9006, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Bankruptcy Rules"), seeking, among other things:

(i)      authorization for the Debtor to obtain and be obligated in respect of postpetition financing (including requirements for the Debtor's use of Cash Collateral (as defined herein), the "DIP Facility"), up to an aggregate principal amount of $720,000 of new money funding from GarMark SBIC Fund II, L.P. (the "DIP Lender") pursuant to the terms of this Interim

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the DIP Term Sheet (as defined below). In the event of any discrepancy between the terms of this Interim Order and the DIP Term Sheet, the terms of this Interim Order shall control.

DOCS_SF:106101.10 42899/001

Order and the DIP Term Sheet attached hereto as **Exhibit 1**;[2]

(ii)     authorization for the Debtor to execute and deliver the DIP Term Sheet and to perform its obligations thereunder and to perform such other and further acts as may be required in connection with the DIP Term Sheet;

(iii)     authorization for the Debtor to borrow up to the Initial Interim DIP Loan (as defined below) from the DIP Lender;

(iv)     the granting of adequate protection in favor of the Prepetition Lenders (as defined below) under the Prepetition Loan Documents (as defined below) in accordance with this Interim Order;

(v)     authorization for the Debtor's use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, including, without limitation, any accounts receivable and general intangible and any other cash or right that would be included in such definition of "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code) constituting Prepetition Collateral (as defined herein) (including, without limitation, all cash and cash equivalents and other amounts from time to time on deposit or maintained by the Debtor in any deposit or securities account or accounts as of the Petition Date) or any cash or cash equivalents received by the Debtor after the Petition Date as proceeds of the Prepetition Collateral (together, the "Cash Collateral") on the terms and conditions set forth in this Interim Order and in the DIP Documentation and subject to the Budget (as defined below), and the granting of adequate protection to the Prepetition Lenders with respect to such use of Cash Collateral;

---

[2]  The DIP Lender reserves the right to require additional documentation with respect to the DIP Facility, which may include, but is not limited to, the execution of a promissory note and security agreement by the Debtor and Holdings in favor of the DIP Lender (the DIP Term Sheet, together with all related documentation, including but not limited to any promissory note, to the extent executed, the "DIP Documentation").

(vi)    approval of the stipulations and releases by the Debtor as set forth in this Interim Order and the DIP Term Sheet with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(vii)    authorization for the Debtor to grant security interests, liens, and superpriority claims (including superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Lender in each case payable from, and having recourse to, all prepetition property of the Debtor, all postpetition property of the Debtor's estate and all proceeds thereof; *except* that the DIP Liens (as defined herein) are subject only to the Carve Out (as defined herein) and any Permitted Liens (as defined in the Prepetition Loan Documents), which such liens were valid, perfected, and non-avoidable liens existing on the Petition Date;

(viii)    authorization for the DIP Lender, to (1) terminate the DIP Facility in accordance with its terms; (2) declare the DIP Facility to be immediately due and payable in full, to the extent permitted by the terms thereof; (3) be granted relief from the automatic stay to foreclose on the DIP Liens; and (4) freeze, take possession of, set off against, and otherwise exercise any remedy available to a secured party under the DIP Documentation, at law or in equity with respect to all DIP Collateral (including Cash Collateral) until the DIP Obligations and the obligations and the rights granted in this Interim Order, have been indefeasibly paid in full in cash, in each case in accordance with this Interim Order and the DIP Documentation;

(ix)    subject to and upon entry of a final order, substantially in the form of this Interim Order (the "Final Order"), authorization of (A) the waivers by the Debtor of the equities of the case exception of section 552(b) of the Bankruptcy Code with respect to the DIP Collateral,

3

right to assert claims to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code to the extent set forth in paragraph 7 hereof, and right to seek marshaling with respect to the DIP Collateral and (B) authorization of the waivers by the Debtor of the equities of the case exception of section 552(b) of the Bankruptcy Code with respect to the Prepetition Collateral, right to assert claims to surcharge against the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code to the extent set forth in paragraph 7 hereof, and right to seek marshaling with respect to the Prepetition Collateral;

(x)     modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documentation and this Interim Order, as applicable;

(xi)     the scheduling of a final hearing (the "<u>Final Hearing</u>") to consider entry of the Final Order, granting the relief requested in the Motion on a final basis; authorizing the balance of the borrowings under the DIP Term Sheet on a final basis as set forth in the Motion and the DIP Term Sheet; establishing that all of the Debtor's obligations with respect to the Prepetition Senior Indebtedness, including principal, interest, fees, cost and other charges payable thereunder through the date of repayment (the "<u>Roll-Up</u>"), shall be deemed post-petition obligations of the Debtor, which roll-up shall be indefeasible, subject to and upon the expiration of the Challenge Period, and may be effectuated by deeming on a cashless basis all of the Debtor's obligations with respect to the Prepetition Senior Indebtedness (defined below) to be post-petition obligations of the Debtor on a dollar-for-dollar basis upon the terms and conditions set forth in the Final Order; and approving the Debtor's notice procedures with respect thereto; and

(xii)     waiver of any applicable stay (including under Rule 6004 of the Bankruptcy Rules) and the provision for immediate effectiveness of this Interim Order.

The Court having considered the relief requested in the Motion, the exhibits attached thereto, any declarations in support of the Motion, the DIP Term Sheet, and the evidence submitted and arguments made at the Interim Hearing held on October 1, 2021 (the "Interim Hearing"), and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Interim Hearing having been held; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court on the record on the Interim Hearing; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor and its estate, and is essential for the continued operation of the Debtor's business and the preservation of the value of the Debtor's assets; and it appearing that the Debtor's entry into the DIP Term Sheet is a sound and prudent exercise of the Debtor's business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A. *Background*. On September 7, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtor has continued to operate its business as debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code. No

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

trustee or examiner has been appointed in the Case.  On September 24, 2021, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Case (the "Committee").

B.     ***Prepetition Secured Parties' Consent***.  Subject to the terms of this Interim Order, the Prepetition Lenders as secured parties under the Senior Secured Note and the Junior Credit Agreement (each as defined below) have agreed to permit the Debtor to use the Cash Collateral, pursuant to the DIP Term Sheet and this Interim Order.

C.     ***Objections Denied and Overruled***.  Except as otherwise expressly provided in this Interim Order, and subject to the record of the Interim Hearing, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled is hereby denied and overruled on the merits.

D.     ***Jurisdiction***.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rules 2002-1, 4001-2, 9006, and 9013-1.

E.     ***Notice***.  The Debtor has provided notice of the Motion and the Interim Hearing via telephone, hand delivery, electronic transmission, or overnight mail to (i) the U.S. Trustee, (ii) the Committee; (iii) the DIP Lender and the Prepetition Lenders; (iv) any other known pre-petition secured lender; (v) counsel to the parties referenced in clauses (iii) and (iv); (vi) the United States Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) the Environmental Protection Agency and similar state environmental agencies for states in which the

Debtor conducts business; (ix) the state attorneys general for states in which the Debtor conducts business; (x) the United States Securities and Exchange Commission; (xi) all known parties asserting a lien against the DIP Collateral; and (xii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

F. ***Debtor's Stipulations***. Without prejudice to the rights of the Committee or any other party in interest (but which rights are subject to the limitations thereon contained in paragraphs 18 and 19 hereof), the Debtor admits, stipulates, and agrees that:

(i) *Prepetition Senior Loan Documents*. As of the Petition Date, the Debtor, together with Allison Marine Contractors II, LLC, a Delaware limited liability company ("AMC II"), Allison Land Development II, LLC, a Delaware limited liability company ("ALD II"), Allison Offshore Services II, LLC, a Delaware limited liability company ("AOS II"), Allison Industrial Services, LLC (formerly known as Allison Marine-Morgan City II, LLC), a Delaware limited liability company ("AIS"), Tarpon Systems International II, LLC, a Delaware limited liability company ("TSI II"), and Holdings (as Guarantor) (the Debtor, AMC II, ALD II, AOS II, AIS, TSI II, and Holdings are referred to herein collectively as the "Borrowers" and each individually as a "Borrower"), were each indebted and jointly and severally liable to GarMark SBIC Fund II, L.P. (in its capacity as pre-petition lender under the Senior Secured Note, the "Prepetition Senior Lender") under that certain Senior Secured Promissory Note, Security Agreement and Guaranty (the "Senior Secured Note," and together with the associated documents, collectively, the "Prepetition Senior Loan Documents"), without defense, counterclaim or offset of any kind, for all of the Prepetition Senior Indebtedness (as defined below), including without limitation, Loans (as defined in the Senior Secured Note) made by such Prepetition Senior Lender in the aggregate principal amount of not less than $3,000,000 under the Senior Secured Note, plus

7

accrued and unpaid interest, costs, indemnification obligations and other charges or amounts, and out-of-pocket expenses (including the reasonable and documented fees, charges and disbursements of counsel to the Prepetition Senior Lender, incurred in connection with the enforcement or protection of such party's rights), plus all other amounts (including without limitation any contingent or unliquidated indemnification obligations) that would constitute Obligations under the Senior Secured Note (collectively, the "Prepetition Senior Indebtedness").

(ii)     *Prepetition Junior Loan Documents*.  As of the Petition Date, the Debtor, along with the Borrowers noted above, were each indebted and jointly and severally liable to Castlegate Credit Opportunities Fund, LLC (in its capacity as pre-petition lender, the "Prepetition Junior Lender")[4] under that certain *Amended and Restated Credit Agreement*, dated as of August 8, 2019 (the "Junior Credit Agreement and together with the associated documents, collectively, the "Prepetition Junior Loan Documents"), without defense, counterclaim or offset of any kind, for all of the Prepetition Junior Indebtedness (as defined below), including without limitation, loans made by such Prepetition Junior Lender in the aggregate principal amount of not less than $ 13,934,866.60 under the Junior Credit Agreement, plus accrued and unpaid interest, costs, indemnification obligations and other charges or amounts, and out-of-pocket expenses (including the reasonable and documented fees, charges and disbursements of counsel to the Prepetition Junior Lender, incurred in connection with the enforcement or protection of such party's rights), plus all other amounts (including without limitation any contingent or unliquidated indemnification obligations) that would constitute Obligations under the Junior Credit Agreement (collectively, the "Prepetition Junior Indebtedness").  Pursuant to that certain *Subordination and Intercreditor Agreement,* dated as of August 8, 2019, by and between the Prepetition Senior Lender

---

[4]  The equity ownership of the Prepetition Junior Lender is included amongst the equity ownership of Holdings.

and the Prepetition Junior Lender, the liens and claims under the Senior Secured Note are senior in all respects (including with respect to payment and priority) to the liens and claims under the Junior Credit Agreement. The Prepetition Senior Lender and the Prepetition Junior Lenders are referenced together herein as the "Prepetition Lenders" where applicable. The Prepetition Senior Indebtedness and the Prepetition Junior Indebtedness are referenced together herein as the "Prepetition Indebtedness" where applicable. The Prepetition Senior Loan Documents and the Prepetition Junior Loan Documents are referenced together herein as the "Prepetition Loan Documents" where applicable.

(iii)    Pursuant to the Senior Secured Note, the Junior Credit Agreement, and all other security agreements, control agreements, or other instruments, agreements, or documents executed and delivered by the Borrowers to create or grant to the Prepetition Lenders any lien on any property as security for the Obligations or to perfect, assure, or preserve any lien or any rights or remedies created thereby, including any other Collateral Documents (the "Prepetition Security Instruments"), the Borrowers granted to the Prepetition Senior Lender, to secure the Prepetition Senior Indebtedness, a first lien on and first priority security interest in all assets, whether then owned or thereafter acquired by the Borrowers as security for such Prepetition Senior Indebtedness, and to secure the Prepetition Junior Indebtedness, a second lien on and second priority security interest in all assets, whether then owned or thereafter acquired by the Borrowers as security for such Prepetition Junior Indebtedness (collectively, the "Prepetition Collateral" and such liens in favor of the Prepetition Lenders, the "Prepetition Liens").

(iv)    The Prepetition Indebtedness constitutes legal, valid, and binding obligations of the Borrowers, including the Debtor, under the Prepetition Loan Documents,

enforceable against them in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(v)     No portion of the Prepetition Senior Loan Documents, the Prepetition Senior Indebtedness, or any payment on account thereof is subject to avoidance, recharacterization, recovery, reduction, subordination, disallowance, impairment, or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and the Debtor does not have, hereby forever releases, and is forever barred from bringing any "claims" (as such term is defined in the Bankruptcy Code), counterclaims, cross claims, causes of action, defenses, recoupment, or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Senior Lender, solely in its capacity as the Prepetition Senior Lender, and not in any other capacity or in respect to any other relationship the Prepetition Senior Lender may have, or have had, with or in respect to the Borrowers, whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance, or other claim arising under the Bankruptcy Code or otherwise.

(vi)    The liens and security interests granted to, or for the benefit of, the Prepetition Lenders, including with respect to the Cash Collateral, pursuant to the Prepetition Security Instruments to secure the Prepetition Indebtedness constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected first priority liens on and security interests in, as applicable, the Prepetition Collateral, comprising substantially all of the assets of the Debtor and other Borrowers, and are not subject to defense, counterclaim, avoidance, recharacterization, recovery, disallowance, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law or regulation by any person or entity, except solely insofar as such liens and security interests are

subject to the DIP Liens and the Carve Out.  The liens and security interests granted to, or for the benefit of, the Prepetition Lenders, including with respect to the Cash Collateral, pursuant to the Prepetition Loan Documents to secure the Prepetition Indebtedness shall remain in full force and effect on a continuous basis, unimpaired, uninterrupted and undischarged, and shall maintain their same perfected status and priority.

(vii)    The Debtor acknowledges and agrees that all of the Debtor's cash, including cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, or subject to setoff rights, constitutes "cash collateral" (as such term is defined section 363(a) of the Bankruptcy Code) of the Prepetition Lenders.

(viii)    As of the Petition Date, there were no liens on or security interests in the Prepetition Collateral that were or are senior to or para passu with the Prepetition Liens.

(ix)    Neither the DIP Lender nor the Prepetition Senior Lender is a control person or insider of the Debtor or any of its affiliates by virtue of entering into the DIP Term Sheet and making any loans thereunder.

**G.**    ***Findings Regarding the DIP Facility and Use of Cash Collateral***.

(i)    Good cause has been shown for the entry of this Interim Order, including immediate and irreparable harm the estate will suffer if relief is not immediately granted.

(ii)    The Debtor needs to obtain immediate access to the postpetition financing under the DIP Facility and to use Cash Collateral to, among other things, protect and preserve the assets of the Debtor's estate and fund the administration of the Case.  The immediate access of the Debtor to sufficient liquidity through the use of Cash Collateral, incurrence of postpetition financing under the DIP Facility, and other financial accommodations is vital to the preservation and maintenance of the value of the Debtor's estate and to achieve an orderly exit for the Debtor.

(iii)     The Debtor is unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lender under the DIP Term Sheet and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without granting to the DIP Lender, subject solely to the Carve Out as provided for herein, the DIP Liens and the DIP Superpriority Claims and incurring the Adequate Protection Obligations (each as defined herein) under the terms and conditions set forth in this Interim Order and in the DIP Term Sheet.  The only source of secured credit available to the Debtor, other than the use of Cash Collateral (which is de minimis), is the DIP Facility.  The Debtor requires both financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order to satisfy its postpetition liquidity needs.

(iv)     The DIP Lender is willing to provide the DIP Facility, and the Prepetition Lenders are willing to consent to the use of Cash Collateral, subject to the terms and conditions set forth in the DIP  Documentation and the provisions of this Interim Order, as applicable, and *provided* that the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, the Adequate Protection Obligations (each as defined herein), and other protections granted by this Interim Order and the DIP Term Sheet are entitled to the protections of this Interim Order and section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility and the use of Cash Collateral approved by this Interim Order.  The DIP Lender has acted in good faith in agreeing to provide the DIP Facility approved by this Interim Order, as further evidenced by the DIP Term Sheet, and the Prepetition Lenders have acted in good faith in consenting to the Debtor's use of Cash Collateral pursuant to the terms of this Interim Order, and their reliance on the provisions of this Interim Order is in good faith.

(v)     The DIP Term Sheet, and the DIP Facility provided for thereunder, and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's-length among the Debtor, the other Borrowers, the DIP Lender, and the Prepetition Lenders, respectively, and the terms of the DIP Facility and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. All of the obligations and the rights granted in this Interim Order to the DIP Lender, including without limitation, the Initial Interim DIP Loan, including accrued and unpaid interest thereon, indemnification obligations, and out-of-pocket fees and  expenses required to be reimbursed (all of the foregoing collectively, the "DIP Obligations"), and the Adequate Protection Obligations, are being extended or received, as applicable, by the DIP Lender, the Prepetition Lenders, and their affiliates (and the successors and assigns of each of the foregoing) in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is reversed or modified on appeal.

(vi)     The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(1) and 4001(c)(1). The authorization granted herein on an interim basis to use Cash Collateral, and to enter into the DIP Term Sheet, to borrow an aggregate initial amount of up to **$300,000 in new loans**, plus interest, fees, and other expenses and amounts provided for in the DIP Term Sheet (pending entry of the Final Order, solely for the purpose of making "Operating Disbursements" as set forth in the Budget) (the "Initial Interim DIP Loan"), is necessary to preserve the value of the Debtor and its estate. Absent granting the relief set forth in this Interim Order, the Debtor's estate will be immediately and irreparably harmed.

Consummation of the DIP Facility and approval of the use of Cash Collateral in accordance with this Interim Order and the DIP Term Sheet, as applicable, are therefore in the best interests of the Debtor and its estate and creditors.

NOW, THEREFORE, on the Motion of the Debtor and the record before this Court with respect to the Motion, including the record made during the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     ***Objections Denied and Overruled***.  Except as otherwise expressly provided in this Interim Order, and subject to the record of the Interim Hearing, any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.     ***Authorization of the DIP Facility, the DIP Documentation, and the Roll-Up***.[5]

(i)     The Debtor is hereby authorized to execute, issue, deliver, enter into, and adopt, and to perform under, as the case may be, the DIP Documentation, including but not limited to the DIP Term Sheet, and the DIP Documentation, including but not limited to the DIP Term Sheet, is hereby approved.

(ii)     The Debtor is hereby authorized to borrow up to the Initial Interim DIP Loan amount on an interim basis, prior to the entry by the Court of the Final Order, on the terms and subject to the conditions, and limits set forth in this Interim Order and the DIP Term Sheet, which borrowings may be used for all purposes permitted under the DIP Term Sheet, pursuant to and subject to the Budget to the extent set forth in the DIP Term Sheet (and pending entry of the Final Order, solely for the purpose of making "Operating Disbursements" as set forth in the

---

[5] Approval of the Roll-Up is subject to entry of the Final Order.

Budget), including, without limitation, (a) to provide agreed liquidity for the Debtor and for general corporate purposes, (b) subject to entry of the Final Order, to pay Adequate Protection Obligations to the Prepetition Lenders, (c) subject to entry of the Final Order, to pay administrative expenses approved by the Court for estate professionals, subject to the Budget, (d) subject to entry of the Final Order, to pay any other fees, costs and expenses required under the DIP Term Sheet, and (e) subject to entry of the Final Order, to pay such other expenses to which the DIP Lender may consent in its sole discretion.

(iii)    The proceeds of any borrowing under the DIP Facility shall, until paid to third parties in accordance with the Budget, be held by the Debtor only in a debtor-in-possession account (satisfactory to the DIP Lender (any such account a "<u>DIP Proceeds Account</u>")) over which the DIP Lender holds a valid, binding, and enforceable first priority lien pursuant to this Interim Order.  No amounts provided to the Debtor pursuant to this Order shall be re-lent to the Debtor or any other Borrower.

(iv)    Subject to entry of the Final Order, all Prepetition Senior Loans provided under the Senior Secured Note and outstanding on the Petition Date shall be deemed "DIP Obligations" under this Order with respect to the Debtor.[6]  Subject to further order of the Court, the Debtor's obligations under the Senior Secured Note are hereby deemed to be post-petition obligations hereunder, on a cashless dollar-for-dollar basis, subject to the terms and conditions set forth herein.  Subject to entry of the Final Order, the deemed "roll-up" of the Prepetition Loans under the Senior Secured Note into DIP Obligations shall be authorized as compensation for, in

---

[6]  For the avoidance of doubt, except as set forth herein and in the DIP Term Sheet with respect to Holdings, nothing herein or in the DIP Term Sheet is intended to or shall be deemed to affect or otherwise modify, amend, vitiate or otherwise alter the obligations of the other Borrowers under the Prepetition Loan Documents or the Prepetition Lenders' rights with respect thereto provided, however, that Holdings also shall be liable for the new advances made pursuant to the DIP Loan.

consideration for, as a necessary inducement for, and on account of the agreement of the DIP Lender to fund the DIP Term Sheet and not as adequate protection for, or otherwise on account of, any Prepetition Senior Indebtedness; *provided* that solely in the event of a Challenge (in compliance with paragraph 18 of this Interim Order) prior to the expiration of the Challenge Period (each as defined below) and such Challenge results in a determination in a final, non- appealable order of the Court that (i) some or all of the Prepetition Liens securing the Prepetition Senior Indebtedness did not constitute valid or properly perfected liens on the Prepetition Collateral as of the Petition Date, or (ii) some or all of the Prepetition Senior Indebtedness did not constitute valid and binding obligations of the Debtor as of the Petition Date, the Court will fashion such remedy as it deems appropriate.

(v)     Upon the closing of the DIP Facility pursuant to this Interim Order, the security and pledge agreements, mortgages, deeds of trust and deposit account control agreements that provide liens on and security interests in the real property and personal property assets of the Debtor shall remain in full force and effect and shall be effective to provide liens on and security interests in the DIP Collateral and shall constitute security for the DIP Facility for all purposes hereunder.

(vi)    In furtherance of the foregoing and without further approval of this Court, the Debtor hereby is authorized and has agreed to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, pledges, and financing statements), and, without further application to the Court, to promptly pay all fees, costs and expenses set forth in the DIP Term Sheet, that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Facility, including, without limitation:

(a)    the execution, delivery, and performance of the DIP Documentation, including, without limitation, the DIP Term Sheet and all related documents contemplated thereby, including a DIP Loan promissory note if requested by DIP Lender;

(b)    the execution, delivery, and performance of one or more amendments to, modifications of, or waivers relating to the DIP Term Sheet in such form as the Debtor and the DIP Lender (or any portion thereof as provided in the DIP Term Sheet) may agree (it being understood that no further approval of the Court shall be required for non-material amendments to or waivers relating to the DIP Term Sheet (and, subject to and effective only upon entry of this Interim Order, any fees paid in connection therewith) or modifications of the Budget); and

(c)    the performance of all other acts required under or in connection with the DIP Documentation.

(vii)    Upon entry of this Interim Order, the DIP Term Sheet shall constitute valid and binding obligations of the Debtor and Holdings, enforceable against the Debtor (and where applicable, Holdings) in accordance with the terms of the DIP Term Sheet and this Interim Order. No obligation, payment, transfer, or grant of security interest under the DIP Term Sheet or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment, or counterclaim.

3.    ***DIP Superpriority Claims***.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior superpriority administrative expense claims against the Debtor (without the need to file any proof of claim or request for payment of administrative expense) with priority over any and all other administrative expenses, adequate

protection claims, diminution claims (including all Adequate Protection Obligations) and all other claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to and effective upon entry of the Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code (the "DIP Superpriority Claims"), which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code shall be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor, and its estate and all proceeds thereof, including, without limitation, subject only to and effective upon entry of the Final Order, all Avoidance Action Proceeds (as defined below), subject only to the Carve Out.

4.      ***Carve Out***.

(i)      Carve Out.  As used in this Interim Order, the "Carve Out" means, in all instances subject to the category and aggregate limitations in the Budget, the sum of (a) all unpaid and accrued fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code; (b) all unpaid and accrued professional fees, as have been or may be approved by the Bankruptcy Court, incurred at any time before the earlier of the occurrence of an event of default as delineated in the DIP Term Sheet (an "Event of Default") or the DIP Maturity Date (as defined in the DIP Term Sheet), upon written notice provided by the DIP Lender to counsel to the Debtor and the Committee (the "Termination Date"), up to the amounts set forth for each professional in the Budget, by persons or firms retained by the Debtor ("Debtor

Professionals") and by the Committee ("Committee Professionals"), whose retention is approved by the Bankruptcy Court pursuant to sections 327, 328 or 1103 of the Bankruptcy Code (collectively, the "Professional Persons," or the "Professionals" and the fees, costs and expenses of Professional Persons, the "Professional Fees"), to the extent such Professional Fees are allowed by the Bankruptcy Court at any time, whether before or after the Termination Date. The Carve Out also shall include the professional fees of the Prepetition Lenders as set forth elsewhere herein, up to the amount set forth in the Budget for same.

(ii) For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or the DIP Facility, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens (as defined herein), the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or any obligations under the Prepetition Loan Documents.

(iii) No Obligation to Pay Allowed Professional Fees. Neither the DIP Lender nor the Prepetition Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Debtor Professionals or Committee Professionals incurred in connection with the Chapter 11 Case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Debtor Professional or Committee Professional or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

5. **DIP Liens**. As security for the DIP Obligations effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing

statements, or other similar documents, or the possession or control by the DIP Lender of, or over, any DIP Collateral, the following security interests and liens, hereby are granted by the Debtor to the DIP Lender (all property of the Debtor identified in clauses (i), (ii), (iii), and (iv) below being collectively referred to as the "DIP Collateral"), subject only to the Carve Out and the Permitted Liens (all such liens on and security interests in the DIP Collateral granted to the DIP Lender pursuant to this Interim Order and the DIP Term Sheet, the "DIP Liens"):

(i)        First Lien on Any Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtor whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) is not subject to any other valid, perfected, and non-avoidable liens existing on the Petition date, if any (collectively, "Unencumbered Property"), including, without limitation, (I) the DIP Proceeds Account and any cash of the Debtors held therein and (II) any other unencumbered cash of the Debtor (wherever maintained), in each of case (I) and (II), any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, minerals, hydrocarbons and other inventory gathered or produced after the Petition Date, as-extracted collateral (including any coal stockpiles or coal stored at mines), patents, copyrights, trademarks, trade names, other intellectual property, equity interests, chattel paper, tax and related assets (including any net operating or other losses), other general intangibles and any claims and causes of action of the Debtor and all proceeds and products thereof; *provided* that before entry of the Final Order, the DIP Collateral shall exclude any of the claims and causes of action of the

Debtors arising under chapter 5 of the Bankruptcy Code (collectively, the "Avoidance Actions"); *provided*, *further*, that upon entry of a Final Order, the proceeds of Avoidance Actions of the Debtors shall constitute DIP Collateral ("Avoidance Action Proceeds").

(ii)     Liens Senior to Prepetition Liens.   Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior priming security interest in and lien upon all pre- and postpetition property of the Debtor and all proceeds thereof (including, without limitation, Cash Collateral) that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) was subject to the Prepetition Liens, except that any lien granted to the Prepetition Junior Lender hereunder shall be junior in all respects to the DIP Lien and the Prepetition Senior Secured Lien.

(iii)     Liens Senior to Certain Other Liens.   The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (b) any liens or security interests heretofore or hereinafter granted in the chapter 11 Case or any Successor Case (as defined herein) or pre-petition, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtor, except for the Permitted Liens.

The DIP Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such case or proceedings, "Successor Cases"), and/or upon the dismissal of the Chapter 11 Case.

6.      ***Protection of the DIP Lender's Rights***.

(i)      The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the earlier of (x) the Termination Date and (y) five (5) business days' written notice (the "Remedies Notice Period") provided by the DIP Lender to the U.S. Trustee, the Debtor, and the Committee through their respective counsel, of the occurrence and continuance of any Event of Default under the DIP Term Sheet, all rights and remedies against the DIP Collateral provided for in the DIP Term Sheet and this Interim Order, including to enforce their lien on the DIP Proceeds Account); *provided that,* during the Remedies Notice Period, (a) the Debtor may use proceeds of the DIP Facility or Cash Collateral to (i) fund operations in accordance with the Budget, and (ii) fund the Carve-Out; and (b) the Debtor, the DIP Lender, and the Committee shall be entitled to an emergency hearing before the Court for the purpose of contesting whether an Event of Default has occurred, seeking the non-consensual use of Cash Collateral subject to the Carve Out, and/or seeking an extension of the Remedies Notice Period.

(ii)      Subject to and effective upon entry of the Final Order, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to its liens and security interests upon and in the DIP Collateral.  Subject to and effective upon entry of the Final Order, in no event shall the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to its respective liens and security interests upon and in the Prepetition Collateral.

(iii)      The DIP Lender's delay or failure to exercise rights and remedies under the DIP Term Sheet or this Interim Order shall not constitute a waiver of the DIP Lender's rights

DOCS_SF:106101.10 42899/001

hereunder, thereunder, or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Term Sheet.

(iv)     No rights, protections, or remedies of the DIP Lender granted by the provisions of this Interim Order or the DIP Term Sheet shall be limited, modified, or impaired in any way by the provision of adequate protection to any party.

7.     ***Limitation on Charging Expenses Against Collateral***.   Subject to and effective upon entry of the Final Order, except to the extent of the Carve Out, no claim may be asserted against the DIP Lender or the Prepetition Senior Lender to (i) charge any expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, against the DIP Collateral or the Prepetition Collateral or (ii) recover such expenses from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, in each case without the prior written consent of the DIP Lender or the Prepetition Senior Lender and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Prepetition Senior Lender.

8.     ***Limitations under Section 552(b) of the Bankruptcy Code***.   The Prepetition Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and effective upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Lenders with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral or any of

the DIP Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

9. **Payments Free and Clear**.  Any and all payments or proceeds remitted to the DIP Lender, or (subject to and effective upon the expiration of the Challenge Period) to the Prepetition Senior Lender, pursuant to the provisions of this Interim Order, or subject to any subsequent order of this Court, shall be received free and clear of any claim, charge, assessment or other liability.

10. **Use of Cash Collateral**.  The Debtor is hereby authorized, subject to the terms and conditions of the DIP Term Sheet and this Interim Order, to use all Cash Collateral, including, without limitation, any Cash Collateral on which the DIP Lender or the Prepetition Lenders hold a lien to the extent permitted by the Budget; *provided*, *however*, that no Cash Collateral shall be used in a manner that would violate paragraph 19 hereof.  The Debtor's right to use Cash Collateral shall be subject in all respects to the Budget, and such right shall terminate automatically upon the earlier of (x) the expiration of this Interim Order and (y) five (5) business days' written notice provided by the Prepetition Senior Lender (or, if the Prepetition Senior Lender and the DIP Lender have each been indefeasibly paid in full in cash, the Prepetition Junior Lender) to the U.S. Trustee, the Debtor, and the Committee through their respective counsel, of the occurrence and continuance of any Event of Default under the DIP Term Sheet or this Interim Order.

11. **Failure to Provide Notice of an Event of Default**.  Notwithstanding the foregoing, the Debtor's right to use Cash Collateral shall immediately terminate (without notice from the DIP Lender or the Prepetition Lenders) at the time that the Debtor has actual knowledge of an Event of

Default if the Debtor fails to promptly notify the DIP Lender, the Prepetition Lenders, and their respective counsel of such Event of Default in accordance with paragraph 10.

12.     **_Budget_**.  The Debtor has provided to the DIP Lender a 13 week cash flow projection (as may be modified from time to time with the consent of the DIP Lender, and consistent with and subject to the terms of the DIP Term Sheet and the terms hereof, the "Budget"), which such Budget is attached hereto as **<u>Exhibit 2</u>**.  All borrowings under the DIP Facility and all use of Cash Collateral shall be in compliance with the Budget, and the Debtor shall not use any portion of the proceeds of the DIP Facility or any Cash Collateral, or accrue any liabilities, directly or indirectly, in excess of the amounts set forth in the Budget on a line item and aggregate basis.  The Budget may be updated and amended from time to time with the express prior written consent of the DIP Lender, _provided_ that (i) such updated or amended Budget shall be provided promptly by Debtor's counsel to counsel for any Committee and to counsel for Holdings, (ii) the Debtor shall not make any payments on account of any prepetition claim except in accordance with the Budget or as otherwise permitted or required by an order of this Court, and (iii) the Debtor shall be required always to comply with the Budget.

13.     **_Prepayments of the DIP Term Sheet_**.  The Debtor may voluntarily prepay the principal of the DIP Loan, in whole or in part, in accordance with the DIP Term Sheet.  The Debtor shall be obligated to promptly prepay the principal of the DIP Loan with the proceeds of the collection of any receivables, subject only to the Carve-Out (to the extent not already expended) and upon such repayment in full, the DIP Facility shall terminate.

14.     **_Adequate Protection_**.  The Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, for and to the extent of any

diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral during the Case, as provided in the Bankruptcy Code (any such diminution in value, "Diminution in Value"). As adequate protection, the Prepetition Lenders are hereby granted the following adequate protection to the extent of any Diminution in Value (collectively, the "Adequate Protection Obligations"):

(i)     Adequate Protection Liens. Effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements, or other agreements, solely for the benefit of the Prepetition Lenders, a replacement security interest in and lien upon all of the DIP Collateral to the extent of any Diminution in Value, subject and subordinate only to the DIP Liens, the Carve Out, and the Permitted Liens (the "Adequate Protection Liens"). For the avoidance of doubt, the Adequate Protection Liens of the Prepetition Junior Lender shall be junior and subordinate to the Adequate Protection Liens and the prepetition liens of the Prepetition Senior Lender.

(ii)     Adequate Protection Superpriority Claims. Allowed superpriority claims, solely for the benefit of the Prepetition Lenders (the "Adequate Protection Superpriority Claims"), with priority over any and all other administrative expenses now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all prepetition and

26

postpetition property of the Debtor and all proceeds thereof; *provided*, *however*, that the Adequate Protection Superpriority Claims shall be subordinate only to the DIP Superpriority Claims and the Carve Out and, pending entry of the Final Order, shall not be payable from Avoidance Action Proceeds. For the avoidance of doubt, the Adequate Protection Superpriority Claims of the Prepetition Junior Lender shall be junior and subordinate to the Adequate Protection Superpriority Claims and the prepetition claims of the Prepetition Senior Lender

    (iii) <u>Prepetition Senior Lender's Fees and Expenses</u>. The Debtor is authorized and directed to pay (y) all accrued and unpaid fees and disbursements owing to the Prepetition Senior Lender under the Senior Secured Note and incurred prior to the Petition Date, including fees and expenses of counsel to the Prepetition Senior Lender; and (z) current cash payments of all fees and out-of-pocket disbursements of (1) Steptoe & Johnson LLP and Finn Dixon & Herling LLP, as counsel to the Prepetition Senior Lender, (2) any local counsel to the Prepetition Senior Lender, and (3) such other consultants and advisors as may be retained or may have been retained from time to time by the Prepetition Senior Lender, in its sole discretion. Payment shall be made in accordance with the Budget. but the accrual of Prepetition Senior Lender fees and expenses, and the obligation of the Debtor and Holdings to pay the same, shall not be limited by the amount set forth in the Budget.

    (iv) <u>Reporting</u>. Receipt of financial and all other reporting, including weekly updates of the Budget. The same weekly Budget reporting shall be provided by the Debtors contemporaneously to the Committee.

   15. ***Reservation of Rights of Prepetition Lenders***. Under the circumstances, the Court finds that the adequate protection provided in this Interim Order is reasonable and sufficient to protect the interests of the Prepetition Lenders. However, the Prepetition Lenders may request

further or different adequate protection, and the Debtor or any other party may contest any such request; *provided* that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Lender granted under this Interim Order, the DIP Term Sheet, and to the Carve Out, and the lien priority and payment subordination of the Prepetition Junior Lender relative to the Prepetition Senior Lender shall be preserved in all respects. Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to the Prepetition Lenders or the DIP Lender.

16. ***Perfection of DIP Liens and Adequate Protection Liens***.

(i) The DIP Lender is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction, take possession of or control over, or take any other action, in each case, to validate and perfect the liens and security interests granted to them hereunder and subject to the priorities set forth herein. Whether or not the DIP Lender chooses to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it under this Interim Order, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, as of the Petition Date. The Prepetition Lenders, without any further consent of any party, are authorized to take, execute, deliver, and file such instruments (in each case without representation or warranty of any kind) to enable the Prepetition Lenders to further validate, perfect, preserve, and enforce the DIP Liens and for the Prepetition Lenders to further validate, perfect, preserve, and enforce the Adequate Protection Liens. The Debtor shall execute and deliver

to the DIP Lender and/or the Prepetition Lenders all such agreements, financing statements, instruments, and other documents as the DIP Lender and/or the Prepetition Lenders may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens and the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(ii)     A certified copy of this Interim Order may, in the discretion of the DIP Lender or the Prepetition Lenders be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order for filing and recording. For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit the DIP Lender and the Prepetition Lenders to take all actions, as applicable, referenced in this subparagraph (ii) and in the immediately preceding subparagraph (i).

(iii)     Subject to and effective only upon entry of the Final Order, any provision of any lease or other license, contract or other agreement that requires (a) the consent or approval of one or more landlords or other parties, or (b) the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting postpetition liens on (x) such leasehold interest or (y) the proceeds of any assignment and/or sale thereof by the Debtor in favor of the DIP Lender or the Prepetition Lenders in accordance with the terms of the DIP Term Sheet or this Interim Order.

17.    *Preservation of Rights Granted Under the Interim Order*.

(i)     Except as expressly provided herein and subject to the Carve Out, (a) no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lender or the Prepetition Lenders, respectively, shall be granted or allowed while any portion of the DIP Facility or the commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding, and (b) the DIP Liens and the Adequate Protection Liens shall not be (1) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (2) subordinate to or made *pari passu* with any other lien or security interest, whether under section 364 of the Bankruptcy Code or otherwise.

(ii)    Unless all DIP Obligations shall have been indefeasibly paid in full in cash in accordance with the DIP Term Sheet and the Adequate Protection Obligations shall have been paid in full, the Debtor shall not assert, file or seek, or consent to the filing or the assertion of or joinder in, and it shall constitute an Event of Default under the DIP Term Sheet and terminate the right of the Debtor to use any and all Cash Collateral or the proceeds of the DIP Term Sheet if the Debtor asserts, files or seeks, or consents to the filing or the assertion of or joinder in, or if there is entered, without the prior written consent of the DIP Lender and the Prepetition Lenders (a) any reversal, modification, amendment, stay, or vacatur of this Interim Order; (b) an order dismissing the Case under sections 105, 305, or 1112 of the Bankruptcy Code or otherwise; (c) an order converting the Case to a case under chapter 7 of the Bankruptcy Code; (d) an order appointing a chapter 11 trustee in the Case; or (e) an order appointing an examiner with enlarged powers beyond those set forth in sections 1104(d) and 1106(a)(3) and (4) of the Bankruptcy Code in the Case.  If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any

time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the DIP Superpriority Claims, Adequate Protection Superpriority Claims, and other administrative claims granted under this Interim Order, the DIP Liens, and the Adequate Protection Liens granted to the DIP Lender and the Prepetition Lenders pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all of the DIP Obligations and the Adequate Protection Obligations shall have been paid and satisfied in full (and that such DIP Superpriority Claims, Adequate Protection Superpriority Claims, the other administrative claims granted under this Interim Order, the DIP Liens, and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) the Court shall retain jurisdiction notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(iii)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect (a) the validity, priority, or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition Lenders, as applicable, of the effective date of such reversal, stay, modification, or vacatur or (b) the validity, priority, or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Term Sheet with respect to any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification, or vacatur, any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtor to the DIP Lender and/or the Prepetition Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Lender and/or the Prepetition Lenders, as the case may be, of the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions

of this Interim Order, and the DIP Lender and the Prepetition Lenders shall be entitled to the protection of section 364(e) of the Bankruptcy Code to the maximum extent possible, this Interim Order, and pursuant to the DIP Term Sheet with respect to all such uses of Cash Collateral and proceeds of the DIP Facility, all DIP Obligations and all Adequate Protection Obligations.

(iv)    Except as expressly provided in this Interim Order or in the DIP Term Sheet, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Lender and the Prepetition Lenders granted by the provisions of this Interim Order and the DIP Term Sheet shall survive, and shall not be modified, impaired, or discharged by any subsequent order, including (a) the entry of an order converting the Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Case, (b) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Term Sheet or otherwise approved by the DIP Lender), (c) the entry of an order confirming a plan of reorganization in the Case, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations and Adequate Protection Obligations, or (d) any other act or omission. The terms and provisions of this Interim Order and the DIP Term Sheet shall continue in the Case, in any Successor Case thereto, in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the DIP Superpriority Claims and all other administrative claims granted pursuant to this Interim Order, the Adequate Protection Obligations, and all other rights and remedies of the DIP Lender and the Prepetition Lenders granted by the provisions of this Interim Order and the DIP Term Sheet shall continue in full force and effect

until the DIP Obligations and the Adequate Protection Obligations are indefeasibly paid in full in cash.

18.    ***Effect of Stipulations on Third Parties***.  The stipulations and admissions contained in this Interim Order, including, without limitation, in paragraph F hereof, shall be binding in all circumstances upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor), the Debtor's estate, the other Borrowers, and all parties in interest, including, without limitation, any committee (including the Committee) or any other person or entity acting on behalf of the Debtor, unless and solely to the extent that (i) a properly authorized adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 19) has been commenced by the Committee or any other party in interest with requisite standing other than the Debtor (or if the Case is converted to a case under chapter 7 prior to the expiration of the Challenge Period (as defined herein), the chapter 7 trustee in such successor case) (a) challenging the validity, enforceability, priority, or extent of the Prepetition Indebtedness, the Prepetition Loan Documents, or the Prepetition Lenders' liens on the Prepetition Collateral or (b) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims, subordination, recharacterization, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (collectively, "Claims and Defenses") against the Prepetition Lenders or any of their respective affiliates, representatives, attorneys, or advisors in connection with matters related to the Prepetition Indebtedness, the Prepetition Loan Documents, the Prepetition Collateral, or the Prepetition Lenders' liens on the Prepetition Collateral, as applicable (such adversary proceeding or Claims and Defenses, a "Challenge"), by the earlier of (1) in the case of the Committee, by no later than the date that is sixty (60) days after the date that notice of

the formation of a Committee appointed under section 1102 of the Bankruptcy Code in the Case is filed on the docket of the Case (but not to exceed seventy five (75) days from the Petition Date), (2) with respect to other parties in interest with requisite standing other than the Debtor or the Committee, by no later than the date that is seventy-five (75) days after the Petition Date, and (3) or as otherwise ordered by the Court (such time period established by the earlier of clauses (1), (2), and (3) above, or such later date as has been agreed to, in writing, by the applicable Prepetition Lender in its sole discretion, the "Challenge Period"); *provided* that if the chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee shall have until the later of (x) the remaining Challenge Period and (y) 30 days from the date of such conversion to bring any Challenges; and (ii) there is a final order in favor of the plaintiff sustaining any such Challenge in any such properly authorized and timely filed adversary proceeding; *provided* that, as to the Debtor, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. For the avoidance of doubt, any trustee appointed or elected in this chapter 11 case shall, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order. The filing of a motion seeking standing to file a Challenge during the Challenge Period, which attaches a proposed Challenge, shall extend the Challenge Period with respect to that party and the Committee until two (2) business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion. If no such properly authorized adversary proceeding or contested matter is

timely filed, then (x) to the extent not theretofore indefeasibly repaid, the Prepetition Indebtedness and all related obligations of the Debtor shall constitute allowed claims not subject to counterclaim, setoff, recoupment, subordination, recharacterization, defense, or avoidance, for all purposes, in the Case and any subsequent chapter 7 case, (y) the Prepetition Lenders' liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be legal, valid, binding, and perfected liens not subject to defense, counterclaim, recharacterization, subordination, or avoidance, and (z) the Prepetition Indebtedness, the Prepetition Loan Documents, and the liens of the Prepetition Lenders on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtor, any committee, or any party in interest, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for the Debtor with respect thereto). If any such properly authorized adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph F hereof shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any committee, whether official, *ad hoc*, or other (including the Committee), and any other person or entity, except to the extent that any such findings and admissions were expressly and successfully challenged in such properly authorized and timely filed adversary proceeding. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee (including the Committee), standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, Claims and Defenses with respect to the Loans, the Prepetition Indebtedness, the Prepetition Loan Documents, or the Prepetition Lenders' liens on the Prepetition Collateral. Except as expressly provided in this Interim Order, the rights and remedies of the Prepetition Lenders granted by the provisions of this Interim Order shall (x) survive and shall not be modified

or affected by the entry of an order converting the Case to a case under chapter 7, dismissing the Case, or by any other act or omission, and (y) continue in the Case or in any successor case in full force and effect.

19.     ***Limitation on Use of Financing Proceeds and Collateral***.     Notwithstanding anything to the contrary herein (except for the last sentence of this paragraph 19) or in any other order by this Court, none of the proceeds of the DIP Term Sheet and none of the DIP Obligations (which, for the avoidance of doubt, shall include the Roll-Up), the Cash Collateral, the Prepetition Collateral, the DIP Collateral, or the Carve Out may be used for the following purposes, including any fees or expenses incurred by any professional in connection therewith: (i) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, defense, or other contested matter seeking any order, judgment, determination or similar relief (a) challenging the legality, validity, priority, perfection, or enforceability of any amount due under the DIP Term Sheet, the Prepetition Indebtedness, or the Prepetition Loan Documents or the liens, security interests, or claims granted under this Interim Order, the DIP Term Sheet, or the Prepetition Loan Documents; (b) invalidating, setting aside, recharacterizing, avoiding, or subordinating in whole or in part any amount due under the DIP Term Sheet, the Prepetition Indebtedness, or the Prepetition Loan Documents or the liens, security interests, or claims granted under this Interim Order, the DIP Term Sheet, or the Prepetition Loan Documents; (c) preventing, hindering, or delaying the assertion or enforcement by either of the DIP Lender or the Prepetition Lenders of any of their respective liens, claims, rights, or security interests or realization upon the Prepetition Collateral, the DIP Collateral, the DIP Liens, the Obligations, or the DIP Obligations; or (d) seeking to modify any of the rights granted to either of the DIP Lender or the Prepetition Lenders hereunder or under the DIP Term Sheet or the Prepetition Loan

Documents, in each of the foregoing cases without such parties' prior written consent; (ii) the commencement or prosecution of any action or proceeding of any claims, causes or action, or defenses against either of the DIP Lender or the Prepetition Lenders or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, including, without limitation, any attempt to recover or avoid any claim or interest from either the DIP Lender or the Prepetition Lenders under chapter 5 of the Bankruptcy Code; or (iii) selling or otherwise disposing of any DIP Collateral, using or seeking to use any insurance proceeds, or incurring any indebtedness not permitted under the DIP Term Sheet or without the DIP Lender's express prior written consent. Nothing herein shall be construed as consent to the allowance of any professional fees of the Debtor or any Committee or shall affect the right of the DIP Lender, the Prepetition Lenders, or other parties in interest to object to the allowance of such fees and expenses.

20. **_Sales of Collateral; Right to Credit Bid_**. Subject to and effective upon entry of the Final Order, the DIP Lender (subject to the rights, claims, and security interests of the Prepetition Lenders with respect to any DIP Collateral that also constitutes Prepetition Collateral or is collateral subject to the Adequate Protection Liens) shall have the right to credit bid the DIP Obligations and the Prepetition Senior Obligations in connection with any sale of the DIP Collateral or Prepetition Collateral in which such parties hold a security interest conducted pursuant to a plan of reorganization subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code or pursuant to the provisions of section 363 of the Bankruptcy Code. No sale of any DIP Collateral or Prepetition Collateral shall constitute a waiver by the DIP Lender or the Prepetition Lenders of any deficiency claim under any applicable law, regardless of whether

the DIP Lender or either Prepetition Lender consents to or opposes such sale and regardless of whether the DIP Obligations are credit bid in connection with such sale.

21. ***Insurance***.  GarMark SBIC Fund II, L.P., as the DIP Lender, shall be deemed to be the loss payee or additional insured under the Debtor's applicable insurance policies, shall act in such capacities, and, subject to the terms of the DIP Term Sheet, shall distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the payment in full of the DIP Obligations, *second*, to the payment of the Adequate Protection Obligations owed to the Prepetition Senior Lender, and *third*, to the payment of the Prepetition Senior Indebtedness.

22. ***Proofs of Claim***.  The Prepetition Lenders shall not be required to file proofs of claim in the Case or Successor Case in respect of any claims arising under or related to Prepetition Indebtedness or the Prepetition Loan Documents.  The Debtor's stipulations and admissions contained in this Interim Order shall be deemed to constitute timely proofs of claim for the Prepetition Lenders on account of their respective Prepetition Indebtedness upon approval of this Interim Order, and the Prepetition Lenders shall be treated under section 502(a) of the Bankruptcy Code as if the Prepetition Lenders have timely filed a proof of claim.  Nothing in this paragraph shall waive, alter, or modify the Prepetition Lenders' right to file, amend, and/or supplement, in their sole discretion, proofs of claim in the Case or Successor Case for any claim allowed herein.

23. ***Modifications of DIP Term Sheet***.  Without further order of the Court, the Debtor and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Term Sheet, any modifications to the Budget, any extension of the maturity subject to the conditions set forth in the DIP Term Sheet, non-material modifications of the DIP Term Sheet (that do not shorten the maturity of the extensions of credit thereunder, increase the commitments thereunder, or otherwise do not materially change the terms of the DIP Term Sheet in a manner

adverse to the interests of the Debtor) or waivers with respect to the DIP Term Sheet; *provided*, *however*, any material modification or amendment to the DIP Term Sheet not expressly authorized hereby or pursuant to the DIP Term Sheet shall be subject to court approval after notice and a hearing.

24. ***Other Borrowers under the Senior Secured Note and Junior Credit Agreement***. Notwithstanding anything herein or in the DIP Term Sheet to the contrary, nothing herein or in the DIP Term Sheet does or shall be deemed to alter, amend, modify or otherwise change the duties and obligations of the Borrowers (other than the Debtor and Holdings) under the Senior Secured Note or the Junior Credit Agreement, or the rights of the Prepetition Lenders thereunder, including but not limited to the right to exercise all remedies in connection therewith.

25. ***Order Governs***. Until such time as an amended interim order or Final Order shall have been entered, the DIP Term Sheet attached hereto as **Exhibit 1**, which is hereby adopted by reference and incorporated herein, and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lender; *provided* that in the event of any inconsistency between the provisions of the DIP Term Sheet and this Interim Order, the provisions of this Interim Order shall govern.

26. ***Binding Effect; Successors and Assigns***. The DIP Term Sheet and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including, without limitation, each of the DIP Lender and the Prepetition Lenders, any committee (including the Committee) appointed in the Case, and the Debtor and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of the DIP Lender and the Prepetition Lenders, any committee (including the Committee) appointed in the Case, and the

Debtor and its respective successors and assigns; *provided, however*, that the DIP Lender shall not have any obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor. The DIP Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor by virtue of entering into DIP Term Sheet and making the New Loans thereunder (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq*., as amended, the federal Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 *et seq.* and any similar state statute).

27. ***DIP Fees and Expenses***. Subject to paragraph 28 hereof, the Debtor shall pay, without the need for the DIP Lender to file retention motions or fee applications, or to provide notice to any party except as required under paragraph 28 hereof, all reasonable and documented out-of-pocket expenses incurred by the DIP Lender in connection herewith, including (1) the reasonable and documented out-of-pocket fees, charges, and expenses of (a) Steptoe & Johnson L.P; (b) Finn Dixon & Herling LLP; (c) such other professionals or consultants that may be retained or may have been retained from time to time by the DIP Lender, in its reasonable discretion; and (2) all costs and expenses incurred by the DIP Lender in connection with any filing, registration, recording, or perfection of any security interest contemplated or permitted by the DIP Term Sheet or any other DIP Document.

28. ***Professional Fee Procedural Requirements***. A copy of each invoice of any professional of the DIP Lender or the Prepetition Senior Lender shall be submitted to the Debtor, the U.S. Trustee, and any Committee for professional fees, expenses, and disbursements (to the extent incurred by such professionals after the Effective Date (as defined in the DIP Term Sheet)),

the payment of which is authorized by this Interim Order (such fees and expenses, the "Lender Professional Fees").  The invoices for such Lender Professional Fees may be in summary form only (and shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine).  None of the Lender Professional Fees shall be subject to Court approval (subject to this paragraph 28) or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any payment on account thereof shall be required to file with respect thereto any interim or final fee application with the Court.  If no written objections to the reasonableness of the fees and expenses charged in any such statement or invoice (or portion thereof) is made within ten (10) days of presentment of such statements or invoices, the Debtor shall thereafter promptly pay in cash all such Lender Professional Fees.  Any objection raised by the Debtor, the U.S. Trustee or any Committee with respect to such fee and expense statements or invoices (with notice of such objection provided to the DIP Lender and to the respective professional) may be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid.  If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtor, any Committee or the U.S. Trustee and the respective professional, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice.  This Court shall retain the jurisdiction to resolve any dispute as to the reasonableness of any such fees and expenses.

DOCS_SF:106101.10 42899/001

Such fees and expenses shall not be limited by the Budget and shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever unless expressly provided herein.

29. **_Indemnification_**. Subject to and effective upon entry of the Final Order, the Debtor is authorized and empowered to jointly and severally indemnify and hold harmless the DIP Lender (solely in its capacity as a DIP Lender), and each other Indemnified Person (as defined in the DIP Term Sheet) to the extent provided in the DIP Term Sheet.

30. **_Effectiveness_**. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order. This Interim Order shall expire at the conclusion of the second interim hearing.

31. **_Retention of Jurisdiction_**. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

32. **_Reservation of Rights of Committee_**. Except for the Initial Interim DIP Loan and all liens and claims of the DIP Lender securing such obligation and the adequate protection granted hereby in favor of the Prepetition Lenders with respect to the Initial Interim DIP Loan, all rights of the Committee to challenge or object to any provision of the Final Order are hereby preserved. Nothing herein shall be used against the Committee as a waiver of any such challenges or

objections by the Committee with respect to any further loans under the DIP Facility or use of cash collateral beyond the Initial Interim DIP Loan approved hereby.

33.     ***Final Hearing***.  The final hearing on the Motion shall be held on October 25, 2021, at 3:00 p.m., prevailing Eastern Time.

**Dated: October 1st, 2021**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

DOCS_SF:106101.10 42899/001