**<u>EXHIBIT C</u>**





# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
07/14/2016

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-34287 (MI) |
| | § | |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | (Chapter 11) |
| OPERATIONS, LLC | § | |
| | § | |
| Debtor | § | |
| | § | |

### ORDER CONFIRMING *THIRD AMENDED PLAN*
### *OF LIQUIDATION OF BLACK ELK ENERGY OFFSHORE*
### *OPERATIONS, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE*

On June 27, 2016, the Bankruptcy Court[1] held the Confirmation Hearing ("Confirmation Hearing") to consider confirmation of the *Third Amended Plan of Liquidation of Black Elk Energy Offshore Operations, LLC Under Chapter 11 of the Bankruptcy Code,* attached hereto as Exhibit "A" (as supplemented, amended, or modified, the "Plan"), filed by the Debtor.

On April 12, 2016, the Debtor filed its Disclosure Statement and its Plan of Liquidation [Docket Nos. 766, 767]. On May 3, 2016, the Debtor filed its Second Amended Plan of Liquidation and Second Amended Disclosure Statement [Docket Nos. 828, 829].

On May 4, 2016, the Bankruptcy Court entered its *Order (I) Approving Disclosure Statement and the Form and Manner of Service Related Thereto; (II) Setting Dates for the Objection Deadline and Hearing Related to Confirmation of the Plan; and (III) Authorizing Related Relief* [Docket No. 835] (the "Disclosure Statement Order"). Among other things, the Disclosure Statement Order approved, on a final basis, the Debtor's Second Amended Disclosure Statement.

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Plan.

On June 3, 2016, the Debtor filed its *Plan Supplement for Debtor's Second Amended Plan of Liquidation* [Docket No. 973] (as supplemented, amended, or modified, the "Plan Supplement"), which included, among other things, a form of Liquidating Trust Agreement and a form of Litigation Trust Agreement (as the same may be respectively modified, supplemented or amended from time to time, the "Liquidating Trust Agreement" and the "Litigation Trust Agreement") (collectively, the "Trust Agreements").

On June 20, 2016, the Debtor filed its *Third Amended Plan of Liquidation of Black Elk Energy Offshore Operations, LLC Under Chapter 11 of the Bankruptcy Code* [Docket No. 1092], and certain documents amending and supplementing the Plan Supplement (*See Notice of Filing Additional Amended Plan Documents* [Docket No. 1092]).

In support of Confirmation of the Plan, the Debtor filed, among other things, the *Amended Declaration of Notice, Balloting and Claims Agent* [Docket No. 1141] (the "BMC Declaration" of the "Balloting Agent").

At the Confirmation Hearing, the Debtor negotiated and finalized multiple stipulations with parties asserting administrative claims and objections to the Plan ("Plan Stipulations"). The terms of the Plan Stipulations were announced on the record in open court at the Confirmation Hearing. Each of the Plan Stipulations are attached to this Confirmation Order as Composite Exhibit "C."

The Debtor announced modifications to the Plan in open court at the Confirmation Hearing related to the asserted priority tax claims of the Louisiana Department of Revenue ("LDR"). In accordance with the modifications announced, the Debtor and LDR agreed that LDR would be entitled to payment on the Effective Date of $56,568.49 for outstanding severance taxes, including 100% those asserted as a priority claim in Claim No. 93-2 and a

2

portion of those asserted as unsecured priority on Claim 90-1. The Debtor has agreed to reserve the amount of $15,895.29 for outstanding severance taxes allegedly owed since the Petition Date [Claim No. 92-2], with the payment of post-petition severance taxes being subject to reconciliation following the Debtor's filing severance returns for all periods since the Petition Date which will be filed no later than ninety days (90) following the Effective Date of the Plan. The remaining balance of Claim No. 90-1 and 93-2 as well as the entirety of Claim 91-1 shall be treated and paid as Allowed General Unsecured Claims.  The Debtor fully and finally releases any and all claims and causes of action against LDR, whether known or unknown and whether forseen or unforeseen.  However, for the sake of clarity, no such claim or cause of action shall survive confirmation of the plan to be transferred to either trust established by the Plan, provided the rights of the parties are reserved as to Claim 92-2 [and any amendment thereof once returns are filed with LDR].  Finally, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the LDR shall retain all rights to immediately collect from any third parties who are or may be found liable under Louisiana law for the trust taxes, specifically including sales taxes and withholding taxes, to the same extent they would be liable if this bankruptcy case had not been filed.

Based upon the Bankruptcy Court's review of, among other things, (i) the Plan, (ii) the Plan Supplement, including the Liquidating Trust Agreement and Litigation Trust Agreement, (iii) the BMC Declaration, (iv) objections to Confirmation of the Plan, the Debtor's responses to the same, and settlements announced on the record at the Confirmation Hearing in connection with same, and the resulting Plan Stipulations (v) exhibits admitted and other evidence presented or proffered at the Confirmation Hearing, (vi) representations and arguments of counsel at the Confirmation Hearing, (vii) the docket of the Bankruptcy Case, and (viii) other relevant factors

609332421.1

affecting these Bankruptcy Case, the Bankruptcy Court makes the following findings of fact and conclusions of law, and issues this Confirmation Order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

A.    <u>Jurisdiction; Venue; Core Proceeding</u>. The Bankruptcy Court has jurisdiction over this Case pursuant to 28 U.S.C. § 1334. Venue in the Bankruptcy Court is proper under 28 U.S.C. § 1408. The Debtor is and was qualified to be a debtor under Bankruptcy Code §109. This matter constitutes a core proceeding under 28 U.S.C. §157(b)(2), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### Notice, Solicitation and Acceptance

B.    <u>Service of Solicitation Materials and Notices</u>.   As evidenced by certificates of service filed on the docket of this Case, all appropriate pleadings, notices, and Ballots were transmitted, mailed, and served to the extent required by the Disclosure Statement Order and Bankruptcy Rule 3017(d). The Balloting Agent mailed, by first class mail, either in paper form or on a compact disc: (a) a copy of the Disclosure Statement Order; (b) a copy of the Disclosure Statement; (c) a copy of the Plan; (d) a Notice of Confirmation Hearing; and (e) an appropriate Ballot Notice in the form as approved by the Disclosure Statement Order (the "<u>Solicitation Package</u>") to (i) Holders of Claims in Classes 2, 3, 4, 5, and 6; and (ii) the appropriate nominee for Holders of Senior Secured Notes. The Court specifically finds that the modifications made to the solicitation version of the Second Amended Plan [Doc. No. 842-7] by the Third Amended Plan [Doc. No. 1092], and the additional modifications to the Third Amended Plan

4

announced at the Confirmation Hearing, are proper under Fed. R. Bankr. P. 3019(a), and thus those modifications were not required to be re-solicited, and the Plan shall be deemed accepted by all creditors and equity security holders who previously accepted Second Amended Plan [Doc. No. 842-7] or any version of the Plan thereafter.

C.  <u>Adequate Notice of Confirmation Hearing</u>. In accordance with Bankruptcy Rules 2002, 3018, 3019, 6004, 6006, 9007 and 9014, and the Disclosure Statement Order, adequate notice of the time for filing objections to Confirmation of the Plan and the authorizations and transfers contemplated thereby and adequate notice of the Confirmation Hearing was provided to all holders of Claims and Equity Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules. No other or further notice of the Confirmation Hearing or Confirmation of the Plan is necessary or required.

D.  <u>Good Faith Solicitation (11 U.S.C. §1125(e))</u>. Based on the record, the Debtor, and its respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals (including but not limited to their attorneys, financial advisors accountants, solicitation agents, and other professionals that have been retained by such parties) have acted in "good faith" within the meaning of Bankruptcy Code §1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the Rules, the Disclosure Statement Order and applicable non-bankruptcy law in connection with all of their respective activities relating to (1) the solicitation of acceptances or rejections of the Plan, (2) the offer, sale, issuance and distribution of the Liquidating Trust Interests and Litigation Trust Interests under the Plan, and (3) their participation in the other activities described in Bankruptcy Code § 1125. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with

Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. In addition, all procedures used to distribute the Solicitation Package to holders of Claims and Equity Interests were fair, and conducted in accordance with the Bankruptcy Code, the Rules, the Local Rules, and all other applicable rules, laws and regulations. Therefore, the Debtor and its respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals are entitled to the full protections afforded by Bankruptcy Code § l 125(e).

## Compliance with Bankruptcy Code § 1129

E.        The Debtor has satisfied its burden of proof.   A plan proponent has the burden to prove the requirements for confirmation by a preponderance of the evidence.[2] Here, the Debtor has satisfied its burden of proof with respect to Confirmation of the Plan.

F.        Plan Compliance with Bankruptcy Code (11  U.S.C. §1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code §1129(a)(l). Congress enacted Bankruptcy Code §1129(a)(1) to ensure that a plan complies with the Bankruptcy Code's provisions regarding classification of claims and interests (11 U.S.C. §1122) and the contents of a plan of reorganization (11 U.S.C. §1123).[3] These provisions are discussed in the following paragraphs.

G.        Plan Compliance with Bankruptcy Code §1122.    The Plan complies with the classification requirements of the Bankruptcy Code. Classification of claims and interests is

---

[2] *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down").

[3] *See* S. REP. NO. 95-989, at 126 (1971), *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R. REP. NO. 95-595, at 412(1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; *see also Kane v. Johns-Manville Corp.,* 843 F.2d 636, 648 (2d Cir. 1988).

governed by Bankruptcy Code §1122, which provides that "a new plan may place a Claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). This section does not require that claims or interests within a particular class be identical.[4] A plan proponent has flexibility in classifying claims, so long as the proponent has some reasonable basis for the classification or the creditor agrees to it.[5]

      H.      Under the Plan, the Claims or Equity Interests within each Class are substantially similar to the other Claims or Equity Interests within that Class. The Plan classifies Claims and Equity Interests as follows:

| Class | Designation | Status | Voting |
|-------|-------------|--------|--------|
| 1 | Other Priority Claims | Unimpaired | Deemed to accept |
| 2 | Noteholder DIP Secured Claim | Impaired | Entitled to vote |
| 3 | Argonaut DIP Secured Claims | Impaired | Entitled to vote |
| 4 | Senior Note Claims | Impaired | Entitled to vote |
| 5 | Other Secured Claims | Impaired | Entitled to vote |
| 6 | General Unsecured Claims | Impaired | Entitled to vote |
| 7 | Interests in the Debtor | Impaired | No (deemed to reject) |

      I.      Valid business, legal, and factual reasons exist for the separate classification of each of these Classes of Claims and Equity Interests, and there is no unfair

---

[4] *In re DRW Property Co.,* 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986); *see also Phoenix Mut. Life Ins. Co. v. Greystone Ill Joint Venture (In re Greystone 111 Joint Venture),* 995 F.2d 1274, 1278-79 (5th Cir. 1991) ("A fair reading of both subsections [of section 1122] suggests that ordinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class").

[5] *See In re Jersey City Med. Center,* 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122 of the Bankruptcy Code] to decide the propriety of plans in light of the facts of each case."). *A* plan proponent cannot "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan," but there may be good business reasons to support separate classification. *In re Briscoe Enterprises.,* 994 F.2d at 1167 (quotations omitted); *see also In re The Heritage Org., L.L.C.,* 375 B.R. 230, 288 (Bankr. N.D. Tex. 2007) ("Substantially similar claims must be classified together unless some reason, other than gerrymandering, exists for separating them").

7

discrimination or gerrymandering between or among the holders of Claims and Equity Interests. A reasonable justification also exists for the classification of Allowed Other Secured Claims differently from First Lien Senior Secured Notes Claims.

J.      In sum, all Claims and Equity Interests within each Class under the Plan are substantially similar and are afforded equal and reasonable treatment, or the claimant has agreed to the classification. Accordingly, the classification of Claims and Equity Interests under the Plan satisfies the requirements of Bankruptcy Code § 1122.

K.      The Plan Complies with Bankruptcy Code §1123. In accordance with Bankruptcy Code § 1123(a), the Plan: (1) designates Classes of Claims and Equity Interests, other than Claims of a kind specified in Bankruptcy Code §§ 507(a)(2), 507(a)(3), 507(a)(8); (2) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan; (3) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (4) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agrees to less favorable treatment of their respective Claim or Equity Interest; (5) provides for adequate means for the Plan's implementation; (6) is a liquidating plan and accordingly (a) provides for the cancelation, termination, and extinguishment of the Equity Interests in BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC, (b) does not provide that any holder of Claims, any holder of Equity Interests, or any other Person will receive equity or other interests in BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC, (c) does not provide for either the Debtor, the Liquidating Trust, or the Litigation Trust to issue securities other than the Liquidating Trust Interests and the Litigation Trust Interests (neither of which are equity securities) to any Person, and (d) provides for the termination of all of the directors, officers, and/or

8

managers of any of the Debtor; and (7) contains only provisions that are consistent with the interests of holders of Claims and Equity Interests and with public policy with respect to the manner of selection of the Liquidating Trustee and Liquidating Trust Committee members on and after the Effective Date. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estate. Therefore, the Plan satisfies the requirements of Bankruptcy Code §1123(a) and (b).

L.   <u>Debtor's Compliance with Bankruptcy Code (11 U.S.C. §1129(a)(2))</u>. In accordance with Bankruptcy Code § 1129(a)(2), the Debtor has complied with the applicable provisions of the Bankruptcy Code.   The Debtor is a proper debtor under Bankruptcy Code § 109. The Debtor has complied with the applicable provisions of the Bankruptcy Code (including §§ 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and all related documents and notices, and in soliciting and tabulating votes on the Plan.

M.   Votes to accept or reject the Plan were solicited by the Debtor and its respective members, partners, representatives, officers, directors, employees, advisors, attorneys and agents after the Court approved the adequacy of the Disclosure Statement pursuant to Bankruptcy Code § 1125(a).

N.   The Debtor and its respective members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents have solicited and tabulated votes on the Plan and have participated in the activities described in Bankruptcy Code § 1125 fairly, in good faith within the meaning of Bankruptcy Code § 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the

9

Bankruptcy Code, the Bankruptcy Rules, and all other applicable laws, rules, and regulations and are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in Article VIII of the Plan.

O. The Debtor and its respective members, officers, directors, employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan, so long as such Distributions are made consistent with and pursuant to the Plan.

P. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). To be confirmed, a plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1129(a)(3). A plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.[6] "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan . . . ."[7]

Q. The Plan is proposed in good faith and not by any means forbidden by law. The Debtor converted this reorganization case with the legitimate and honest purpose of developing an orderly process to compensate legitimate claimants while maximizing value. The Plan culminates a reorganization process during which the Debtor has consistently engaged in arm's-

---

[6] *In re T-H New Orleans Ltd. P 'ship,* 116 F.3d at 802; *In re Madison Hotel Assocs.,* 749 F.2d 410, 424-425 (7th Cir. 1984).
[7] *Brite* v. *Sun Country Dev. (Jn re Sun Country Dev.),* 764 F.2d 406, 408 (5th Cir. 1985); *see also In re JT Thorpe Co.,* 308 B.R. 782, 787 (Bankr. S.D. Tex. 2003).

length negotiations among entities having very different and, in many instances, competing interests, all aimed at an over-arching goal of maximizing the value of the Debtor and the recovery to holders of Claims and Equity Interests in accordance with the Bankruptcy Code. In accordance with Bankruptcy Code § 1129(a)(3), the Debtor has proposed the Plan in good faith and not by any means forbidden by law. The treatment of holders of Claims and Equity Interests contemplated by the Plan was negotiated and consummated at arm's-length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of votes to accept or reject the Plan. Furthermore, the Plan represents extensive arms-length negotiations among the Debtor and other parties in interest, as well as their respective legal and financial advisors, and reflects the best interests of the Debtor's Estate and holders of Claims and Equity Interests.

       R.        <u>Payment for Services or Costs and Expenses (11 U.S.C. §1129(a)(4))</u>.  In accordance with Bankruptcy Code § 1129(a)(4), all payments and distributions, made or to be made by the Debtor, the Liquidating Trustee or the Litigation Trustee for services or for costs and expenses in, or in connection with, this Case, or in connection with the Plan and incident to this Case, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable, unless otherwise ordered by the Bankruptcy Court.

       S.        <u>Directors, Officers, and Insiders (11 U.S.C. §1129(a)(5))</u>.  The Debtor has complied with Bankruptcy Code §1129(a)(5). The Persons that must be identified pursuant to Bankruptcy Code §1129(a)(5) have been identified. These provisions of the Plan are consistent with the interests of Claim and Equity Interest holders and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5).

609332421.1

T.  No Rate Changes (11 U.S.C. § 1129(a)(6)). In accordance with Bankruptcy Code § 1129(a)(6), the Debtor is not subject to any governmental regulation of any rates.

U.  Best Interests of Creditors (1129(a)(7)). Bankruptcy Code §1129(a)(7), the "best interests of creditors test," requires that, with respect to each impaired class, each holder of a claim or interest in the class:

    i.     has accepted the plan; or

    ii.    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

V.  The testimony presented by the Debtor's financial adviser, Mr. Lance Gurley of Blackhill Partners LLC, in connection with the Confirmation Hearing, and other evidence admitted at the Confirmation Hearing, establish that the requirements of Bankruptcy Code § 1129(a)(7) are satisfied by the Plan. In accordance with Bankruptcy Code § 1129(a)(7), with respect to Classes of Impaired Claims or Impaired Equity Interests, each holder of a Claim or Equity Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

W.  Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 is not Impaired and thus is deemed to have accepted the Plan. Classes 2, 3, 4, 5, and 6 are Impaired. In accordance with various modifications announced in open court, including the Debtor's agreements reached in the Plan Stipulations, various creditors including McMoRan Oil and Gas, LLC, Merit Energy Company, Marubeni Oil & Gas (USA), Inc., Northstar Offshore,

Peregrine Oil & Gas, LP, W&T Offshore, Inc., and Platinum Partners changed their respective negative votes to votes in favor of the Plan. As a result, and as demonstrated by the BMC Declaration Classes 2, 3, 4, 5, and 6 have accepted the Plan in accordance with Bankruptcy Code § 1126(c). The Class 7 Interests are being extinguished and are deemed to reject the Plan. Based on modifications made in open court at the Confirmation Hearing, the Debtor is adding Class 8 which consists of the allowed secured claim of Harris County, Texas. The modifications to the Plan provide that Harris County shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Tax Claim in Class 8, each such Holder shall receive on the later of the Effective Date or thirty (30) days following the date on which such Secured Tax Claim becomes an Allowed Secured Tax Claim: (i) payment in full in Cash of such Holder's Allowed Class 8 Claim, including interest at the applicable non-bankruptcy rate; (ii) regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest at the applicable non-bankruptcy rate; (iii) the Collateral securing such Holder's Allowed Class 8 Claim; or (iv) such other treatment as to which such Holder and the Debtor, shall have agreed upon in writing. The modifications further provide that Harris County shall retain its lien for both pre-petition and post-petition tax years on the Collateral or the proceeds of the Collateral, if applicable, until such time as the taxes are paid. Based on such modifications, Harris County indicated its acceptance of the Plan.

X.  Treatment of Administrative, Priority, and Tax Claims (11 § U.S.C. § 1129(a)(9)). The Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(l) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

Y.  Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). In accordance with Bankruptcy Code § 1129(a)(l0), at least one Class of Claims that is Impaired under the Plan has

voted to accept the Plan, without including acceptances of the Plan by any insider.

Z.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan contemplates liquidation and distribution of all of the Debtor's assets and, as such, there will be no need for further financial reorganization or liquidation. Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

AA.    Payment of Fees (11 U.S.C. § 1129(a)(12)). In accordance with Bankruptcy Code § 1129(a)(12), to the extent that fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date.

BB.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). In accordance with Bankruptcy Code § 1129(a)(13), the Plan does not alter retiree benefits to the extent any such benefits currently exist.

CC.    Other Provisions of 11 U.S.C. § 1129(a). The provisions of 11 U.S.C. § § 1129(a)(14), (a)(15), and (a)(16) are not applicable to the Debtor.

DD.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. §1129(b)). The Bankruptcy Court finds and concludes that Class 7 is an Impaired Class of Equity Interests, respectively, that are deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g). The Plan is fair and equitable and does not discriminate unfairly as to Class 7. With respect to a class of *equity interests*, "fair and equitable" includes the requirement that either (i) each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, *or the value of the equity interest*, or (ii) the holder of any equity interest that is junior to the equity interest

14

of that class will not receive or retain under the plan, on account of that junior equity interest, any property.   11 U.S.C. §1129(b)(2)(C).

EE.      Based on the evidence, there is no value in the Equity Interests in the Debtor. Accordingly, the first prong of Bankruptcy Code § 1129(b)(2)(C) is satisfied.   In addition, no junior classes will receive any property under the Plan, so the second prong of Bankruptcy Code § 1129(b)(2)(C) is also satisfied.

FF.      Therefore, the Plan may be confirmed as to Classes 1, 2, 3, 4, 5, 6, and 7. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes of Claims and Equity Interests.

GG.      <u>Only One Plan – 11 U.S.C. §1129(c)</u>.   The Bankruptcy Court finds and concludes that, other than the Plan (including previous versions thereof), no other plan has been filed in the Case. Accordingly, the requirements of Bankruptcy Code § 1129(c) have been satisfied.

HH.      <u>Principal Purpose (11 U.S.C. § 1129(d))</u>.   No Person, including but not limited to the SEC (as defined below) or any other Governmental Authority, has requested  that  the Bankruptcy Court deny Confirmation on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of section 5 of the 1933 Act. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the 1933 Act.

II.      <u>Burden of Proof</u>. The Debtor has met its burden of proving the elements of Bankruptcy Code §§ 1129(a) and (b).

**Appeal of this Confirmation Order**

JJ.      The reversal or modification on appeal of this Confirmation Order does not

15

affect the validity of the authorizations and transfers contemplated under the Plan with respect to an entity that acquired property or an interest in property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorizations and transfers contemplated under the Plan are stayed pending appeal.

### Securities Findings and Conclusions/Exemptions

KK. <u>Issuance of Trust Interests</u>. The Liquidating Trust and Litigation Trust (collectively, the "<u>Trusts</u>") constitue or will constitute a "successor" and a "newly organized successor" to the Debtor under the Plan solely for purposes of Bankruptcy Code §§ 1145 and 1125(e) and the Debtor has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, sale, issuance and distribution of the Liquidating Trust Beneficial Interests and the Litigation Trust Beneficial Interests (collectively, the "<u>Trust Interests</u>"). With respect to the offer, sale, issuance and distribution of the Trust Interests (to the extent such interests and/or rights constitute securities under the 1933 Act or any State or local law) pursuant to the terms of the Plan, (1) neither the Debtor nor the Trusts are underwriters within the meaning of Bankruptcy Code § 1145(b), (2) the offer, sale, issuance and distribution of the Trust Interests shall be pursuant to the Plan, (3) the Trust Interests are to be distributed in exchange for Claims against the Debtor, and (4) the Trust Interests (to the extent constituting a security under the 1933 Act or any State or local law), constitute securities of a successor or newly organized successor to the Debtor under the Plan for purposes of Bankruptcy Code §§ 1145 and 1 125(e). The findings of fact and conclusions of law in this Paragraph shall be binding upon all parties to the Case, the Debtor, the Trusts and their Trustee(s), the U.S. Securities and Exchange Commission (the "<u>SEC</u>"), and all other federal, state, and local regulatory enforcement and other agencies.

LL.    Exemptions from Recording, Stamp, and Similar Taxes ((11 U.S.C. § 1146(a)). The Bankruptcy Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of any security, and the making or delivery of any instrument of transfer pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.

**Authorizations and Transfers Pursuant to the Plan**

MM.    Legal Binding Effect.  The provisions of the Plan will bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

NN.    Release and Exculpation. The release and exculpation provisions are an integral part of the Plan and represent a valid exercise of the Debtor's business judgment. Pursuing any such claims against the Exculpation and Released Parties is not in the best interest of the Debtor's estate and various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims. The failure to affect the release and exculpation provisions of the Plan would impair the Debtor's ability to confirm the Plan, and the release and exculpation provisions of the Plan are fair, equitable and reasonable. Accordingly, the compromises and settlements embodied in the release and exculpation provisions described in the Plan, except as may be expressly excluded in this Confirmation Order, are approved.

OO.    Issuance of Trust Interests. The issuance and distribution of the Trust Interests in accordance with the provisions of the Plan are reasonable and necessary.

PP.    Transfer of Liquidating and Litigation Trust Assets. The Debtor's transfer of the Liquidating Trust Assets and the Litigation Trust Assets (including, but not limited to, the Causes

of Action) to the respective Trusts on the Effective Date in accordance with the Plan and the Trust Agreements is reasonable and necessary and made in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 363(b) and 1123(b)(3).

QQ.     Rejection of Executory Contracts and Unexpired Leases. The rejection of executory contracts and unexpired leases pursuant to the Plan and this Confirmation Order is (i) a sound and reasonable exercise of the Debtor's business judgment, (ii) in the best interests of the Debtor, its Estate, holders of Claims and Equity Interests, and (iii) necessary for the implementation of the Plan.

RR.     Plan Documents Valid and Binding. All other documents reasonably necessary to implement the Plan, including, without limitation, the Trust Agreements, have been negotiated in good faith and at arm's length, shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements, and are in the best interests of the Debtor and its Estate and have been negotiated in good faith and at arm's length.

SS.     Compliance with Bankruptcy Rule 3016. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Debtor that submitted it and filed it is appropriately identified. The filing of the Disclosure Statement with the clerk of this Court satisfies Bankruptcy Rule 3016(b).

## The Trusts Are Not A Successor to the Debtor

TT.     Except for purposes of compliance with Bankruptcy Code § 1145 and as otherwise provided herein, the Trusts and their affiliates, successors, or assigns are not, as a result of actions taken in connection with the Plan, a successor to the Debtor or a continuation or substantial continuation of the Debtor or any enterprise of the Debtor. The Trusts shall be

deemed to be a successor to the Debtor only for purposes of compliance with Bankruptcy Code §1145; provided however the Liquidation Trust shall be the successor as to laws reasonably designed to protect the public health and safety (collectively, the "Safety Laws") including, but not limited to, plugging and abandonment obligations, Maintenance and Monitoring Obligations or any other safety obligations that may be provided for in Article II.A.3 of the Plan and/or in other applicable federal laws and regulations with respect to any federal OCS leases or rights-of-way that are not being abandoned by the Debtor in accordance with this Confirmation Order and the Plan; and the requirements sert forth in any federal OCS leases or rights-of-way with respect to any federal OCS leases or rights-of-way that are not being abandoned by the Debtor in accordance with this Confirmation Order and the Plan, and for no other reason.

### Miscellaneous Provisions

UU.      Best Interests of Persons. Confirmation of the Plan is in the best interests of the Debtor and its Estate.

VV.      Findings of Fact and Conclusions of Law on the Record. All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with Confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference. To the extent that any of the findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

### ORDER

Based on the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that:

1.      Confirmation of Plan. The Plan, as modified herein, is **APPROVED** and **CONFIRMED** under Bankruptcy Code §1129.      Except as otherwise set forth in this

609332421.1

Confirmation Order, the Plan is valid and enforceable pursuant to its terms and the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2. <u>Objections Overruled</u>. All objections that have not been withdrawn, waived, resolved by stipulation, or settled are **OVERRULED** on the merits.

3. <u>Approval of Plan Documents</u>. Subject to paragraph 6, the form and substance of the Plan documents, as reflected in the Plan Supplement or otherwise (including all exhibits and attachments thereto or hereto and documents referred to therein or herein), are hereby **APPROVED.** The execution, delivery, and performance by the Debtor, the Trusts and their respective Trustee(s) of the Plan Documents are authorized and approved without the need for further corporate or other organizational action or further Order or authorization of the Bankruptcy Court. The Debtor is authorized and empowered to make any and all modifications to any and all documents included as part of the Plan and Plan Supplement that may be agreed to by the parties thereto and that are consistent with the Plan and the terms of this Confirmation Order.

4. <u>Approval of Plan Stipulations</u>. To the extent not previously approved by order of the Court, the Plan Stipulations **are <u>APPROVED in all respects.  The Court approves and incorporates herein by reference the Plan Stipulations attached to this Confirmation Order as Exhibit "C".  In the event of a conflict between a Plan Stipulation and this Confirmation Order, the Plan Stipulation shall control with respect to the treatment of the parties to and issues addressed by each applicable Plan Stipulation</u>**.

5. <u>Authority</u>.

    a. The Debtor, the Trusts, the Liquidating Trustee, and the Litigation Trustee are authorized and empowered to take such actions and do all things as may be necessary or required to implement and effectuate the Plan, the transfer of the Liquidating Trust Assets and the Litigation Trust

Assets to their respective trusts, the Litigation Trust Agreement and the Liquidating Trust Agreement, and this Confirmation Order.

b.  The Debtor, the Trusts and their respective Trustee(s), and their respective directors, officers, partners, members, managers, trustees, agents, representatives, and attorneys, are authorized, empowered, and ordered to carry out all of the provisions of the Plan, to issue, execute, deliver, file and record, as appropriate, any instrument, or perform any act necessary to implement, effectuate, or consummate the Plan and this Confirmation Order, and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents (collectively, "Documents"), and to perform such other acts and execute and deliver such other Documents as are required by, consistent with and necessary or appropriate to implement, effectuate, or consummate the Plan and this Confirmation Order and the transfers contemplated thereby and hereby, all without the requirement of further application to, or order of, the Bankruptcy Court or further action by their respective directors, stockholders, managers, members, or other beneficiaries, and with the like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, managers, members, or other beneficiaries of such entities.

c.  The Debtor is further authorized, empowered, and ordered to enter into and, if applicable, cause to be filed with the Secretary of State or other applicable officials of any applicable governmental authority any and all amended and/or restated certificates or articles of incorporation, organization, or formation or amendments to limited liability company agreements, operating agreements, or regulations and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental authorities with respect to compliance with Bankruptcy Code § 1123(a)(6).

This Confirmation Order shall constitute all approvals and consents, if any, required by all applicable business organization, corporation, trust, and other laws of the applicable governmental authorities with respect to the implementation and consummation of the Plan and all actions authorized by this Confirmation Order; provided, however, that: (i) any pending sales or transfers that are subject to the approval of the Regulatory Agencies under applicable federal laws and regulations shall continue to be subject to the approval of such Regulatory Agencies in

21

their sole discretion; and (ii) any entities seeking to decommission any properties encompassed by any federal OCS lease or right-of-way shall be required to comply with permitting and other obligations required by federal laws and regulations for such decommissioning to be determined in the Regulatory Agencies' discretion.

d.   Any officer of the Debtor and, from and after the Effective Date, the Liquidating Trustee and the Litigation Trustee are authorized to execute and perform, for and on behalf of the Debtor, any and all Documents and other instruments referred to in the foregoing clauses (b) and (c) and to certify or attest to any of the foregoing actions taken by the Debtor. The execution of any such Document or instrument or the taking of any such action by any officer of the Debtor or, from and after the Effective Date, the Liquidating Trustee or the Litigation Trustee, shall be, and hereby is, deemed conclusive evidence of the authority of such action.

e.   As of the Effective Date, the Liquidating Trustee (as trustee of the Liquidating Trust) and the Litigation Trustee (as trustee of the Litigation Trust) is hereby irrevocably appointed as the Debtor's attorney-in-fact (which appointment as attorney-in-fact shall be coupled with an interest), with full authority in the place and stead of the Debtor and in the name of the Debtor to take any action and to execute any instrument that the Liquidating Trustee or the Litigation Trustee, in their sole respective discretion, may deem to be necessary or advisable to convey, transfer, vest, perfect, and confirm title of the Liquidating Trust Assets in the Liquidating Trust and of the Litigation Trust Assets in the Litigation Trust, including without limitation to issue, execute, deliver, file, and record such contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and to file any claims, to take any action, and to institute any proceedings that the Liquidating Trustee or Litigation Trustee may deem necessary or desirable in furtherance thereof, each solely to the extent and as authorized in the Liquidating Trust Agreement and the Litigation Trust Agreement.

f.   All amendments to the certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, the limited liability company agreements, the partnership agreements, and/or bylaws of the Debtor and all other corporate action on behalf of the Debtor as may be necessary to put into effect or carry out the terms and intent of the Plan, including, without limitation, any mergers, consolidations, or dissolutions of the Debtor, may be effected, exercised, and taken without further action by the Debtor's directors, officers,

609332421.1

managers, and/or members with like effect as if effected, exercised, and taken by unanimous action of the directors, officers, managers, and/or members of the Debtor. The Liquidating Trustee and Litigation Trustee, as authorized signatory of Debtor, is authorized to execute any document, certificate or agreement necessary to effectuate any and all transactions contemplated under the Plan on behalf of such Debtor (including, without limitation, any mergers, consolidations or dissolutions of the Debtor), and file with the Secretary of State of the State of Texas any articles or certifications of merger or dissolution or such other documents as may be necessary in order to effect such actions, which documents, certificates and agreements shall be binding on the Debtor, all holders of Claims, and all holders of Equity Interests and, upon execution by the Liquidating Trustee or the Litigation Trustee as authorized herein, shall have the same force and effect as if approved by all requisite partners, members, managers or Equity Interest holders of the Debtor.

g.    The Liquidating Trust, the Litigation Trust, the Liquidating Trustee and the Litigation Trustee shall have no liability or obligation to act with respect to any Abandoned Assets (as defined below); *provided, however,* that the Liquidation Trust, and Liquidating Trustee shall be required to comply with the relinquishment procedures provided for in 30 CFR 556 (Subpart K) as a condition of abandonment. However, if an action is required with respect to an Abandoned Asset, the Liquidating Trustee and the Litigation Trustee shall have the option, but not the obligation, to take an action with respect to such Abandoned Asset. Nothing herein shall create any liability of the Liquidating Trustee, the Litigation Trustee, the Litigation Trust or the Liquidating Trust should it decide to decline to take any action respecting any Abandoned Assets other than as expressly set forth in this paragraph.

6.    Approval of Liquidating Trust Agreement. The Liquidating Trust Agreement in substantially the form filed by the Debtor at Docket No. 1092-9 (together with all schedules, addendums, exhibits, annexes, and other attachments thereto and as supplemented, amended, and modified, the "Liquidating Trust Agreement") is **APPROVED,** and the Debtor, the Liquidating Trustee, and the Liquidating Trust are authorized to take all actions contemplated under the Liquidating Trust Agreement, including making appropriate modifications that do not materially affect substantive rights. Notwithstanding the foregoing or anything in the Plan, Confirmation Order, or the form Liquidating Trust Agreement filed with the Court, the

Liquidating Trust Agreement Committee shall be comprised of the Liquidating Trustee (to be jointly selected by Platinum and the Backstop Lenders), a member selected by Platinum, and a member selected by the Backstop Lenders. A member may be removed by a majority vote of the committee. The party whose designee is removed may challenge the removal in the Bankruptcy Court as not being a removal for cause. The Liquidating Trustee may hire professionals, and agree to such retention terms, only after consulting with the Liquidating Trust Committee.

7.      Approval of Litigation Trust Agreement. The Litigation Trust Agreement in substantially the form filed by the Debtor at Docket No. 1092-7 (together with all schedules, addendums, exhibits, annexes, and other attachments thereto and as supplemented, amended, and modified, the "Litigation Trust Agreement") is **APPROVED,** and the Debtor, the Litigation Trustee, and the Litigation Trust are authorized to take all actions contemplated under the Litigation Trust Agreement, including making appropriate modifications that do not materially affect substantive rights. As provided in Article VIII(A)(7) of the Third Amended Plan, no Holder of an Allowed Claim (including any adjustment thereto as provided in any Stipulation) shall be entitled to receive, on account of their Claim, more than the Allowed Claim amount, plus interest to the extent allowed under the Plan, or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement or by otherwise applicable law. In the event that there are any funds remaining in the Litigation Trust after payment of such Allowed Claims in full, the Litigation Trustee shall file a motion with the Bankruptcy Court advising the Bankruptcy Court of the same, and the remaining funds shall be paid to prepetition holders of equity interests in proportion to their holdings as of the Petition Date, as determined by the Bankruptcy Court.

8.      Settlements. Each settlement embodied in the Plan and this Confirmation Order

609332421.1

between the Debtor and holders of Claims and Equity Interests is **APPROVED** in all respects. The Court approves and incorporated herein by references the Stipulations attached to this Confirmation Order as Composite Exhibit C. In the event of a conflict between a Stipulation and this Confirmation Order, the Stipulation shall control with respect to the treatment of the parties to and issues addressed by the applicable Stipulation.

9.     Plan     Classification     Controlling. The terms of the Plan shall govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or to reject the Plan; and (b) shall not be binding on the Debtor except for voting purposes.

10.     Preservation of Causes of Action. The provisions of Article VII of the Plan are hereby approved in their entirety. The Debtor, the Liquidating Trust, the Liquidating Trustee, the Litigation Trust, and the Litigation Trustee, as applicable, expressly reserve all rights to prosecute any and all of their respective Causes of Action against any Person, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor, the Liquidating Trust, the Litigation Trust, the Litigation Trustee and the Liquidating Trustee, as applicable, expressly reserve all of their respective Causes of Action for later adjudication.

11.     Trust Assets; Abandonment. The property of the Debtor's Estate will not revest in the Debtor on or after the Effective Date. Except as otherwise set forth in the Plan or this Confirmation Order: (i) all property of the Estate constituting the Liquidating Trust Assets shall

be conveyed and transferred by the Debtor to the Liquidating Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances, but subject to the Liquidating Trust's obligations under the Plan and the Liquidating Trust Agreement; and (ii) all property of the Estate constituting the Litigation Trust Assets shall be conveyed and transferred by the Debtor to the Litigation Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances, but subject to the Litigation Trust's obligations under the Plan and the Litigation Trust Agreements. From and after the Effective Date, the Liquidating Trust shall perform and pay when due liabilities under, or related to the ownership or operation of, the Liquidating Trust Assets. Notwithstanding anything to the contrary herein or in the Plan, the assets identified in the attached Exhibit B, which amends Exhibit D to the Disclosure Statement, or that have been otherwise abandoned by the Debtor pursuant to an Order of this Court prior to the Effective Date (collectively, the "Abandoned Assets") shall not be transferred or assigned to, or vested in, the Liquidating Trust or the Litigation Trust.

12.     Liquidating Trustee; Liquidating Trust Committee; Litigation Committee. Richard Schmidt is hereby approved to serve as the Liquidating Trustee and Litigation Trustee on an interim basis, subject to the terms set forth in the Plan, including the Plan Supplement, and the Liquidating Trust Agreement and the Litigation Trustee Agreement. Mr. Schmidt and his successor(s) are authorized to take the actions contemplated in the Plan, the Liquidating Trust Agreement, the Litigation Trust Agreement, and this Confirmation Order. The Liquidating Trustee and Litigation Trustee shall be permitted to pay his fees and expenses and the fees and expenses of his professionals for services rendered in connection with this Case, the Liquidating Trustee's appointment under the Plan, the Liquidating Trust Agreement, the Litigation Trustee's appointment under the Plan, the Litigation Trust Agreement, and this Confirmation Order to the

609332421.1

extent permitted by the Plan, the Plan Supplement, the Litigation Trust Agreement and the Liquidating Trust Agreement. Such payments shall be made by the Liquidating Trust or the Litigation Trust in accordance with the Plan and the Liquidating Trust Agreement.

13. <u>Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. §1123(b)(2)</u>. Except to the extent (a) the Debtor has previously assumed, and (if applicable) assigned, or rejected an executory contract or unexpired lease or (b) prior to the Effective Date, the Bankruptcy Court has entered an Order authorizing the assumption, and (if applicable) assignment, of an executory contract or unexpired lease, the Debtor's executory contracts and unexpired leases shall be deemed rejected on the Effective Date, pursuant to Bankruptcy Code §§ 365 and 1123.

14. <u>Authority</u>. All actions and transfers contemplated under the Plan, including but not limited to, any certificates, agreements or other documents or instruments to be executed in connection with the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust, and the Litigation Trust Assets to the Litigation Trust, free and clear of interests, Claims, Liens, and encumbrances shall be authorized upon entry of this Confirmation Order without the need of further approvals, notices or meetings of the Debtor's directors, officers, managers, and/or members.

15. <u>Legal Binding Effect</u>. The provisions of the Plan shall bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

16. <u>Exculpations, Injunction, and Releases</u>. The following exculpations, injunction, and releases, which are also set forth in the Plan, are approved and authorized in their entirety:

17. <u>Exculpation and Limitation of Liability</u>. ***The Exculpation and Released***

*Parties shall not have and shall not incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of the Bankruptcy Case, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and except for Montco, with respect to Montco's obligations under the Montco Services Agreement, as amended by the First Amended Montco Services Agreement and Second Amended Montco Services Agreement, and, in all respects, the Exculpation and Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

*Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, for the good and valuable consideration provided by each of the Exculpation and Released Parties, the adequacy of which is hereby confirmed, all Professionals retained by order of the Court and Blackhill Partners LLC each for their work done in connection with this Chapter 11 Case, the Creditor's Committee (and the members of the committee, solely in their capacity as committee members, for their work in connection with this Chapter 11 case), the DIP Lenders, Indenture Trustee, and the professionals retained by such parties, are deemed released and discharged by the Debtor and its Estate from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, its Estate, or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity*

28

*Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Exculpation and Released Parties, the restructuring of claims and interests prior to or during this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or any related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of the Exculpation and Released Parties that constitutes actual fraud, willful misconduct, or gross negligence, provided, however, except as to Zach Weiner solely in his capacity as post-petition board member of the Debtor, nothing in this section or the Plan shall release, waive or otherwise serve as a defense for Platinum or any director, officer, employee, control person or insiders (an insider as defined under the Bankruptcy Code) of Platinum. For the avoidance of any doubt, nothing in this paragraph shall be construed to conflict with, or override, the Government Carve-Out or the Government Reservation of Rights and, in the event of any conflict, the Government Carve-Out and the Government Reservation of Rights shall control.*

*Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.*

29

*Nothing contained in this Plan shall operate as a release, waiver, or discharge of any Claim, Cause of Action, right or other liability against members of the Creditors' Committee in any capacity other than as a member of the Creditors' Committee.*

*Notwithstanding anything to the contrary in the Plan, the Plan documents or elsewhere in the Confirmation Order, nothing shall release, discharge or immunize any third party or non-debtor entity from any debt, obligation, liability, claim, action, proceeding, defense or cause of action in connection with any claim, action, proceeding, defense or cause of action, brought, or that may be brought, by the United States of America or its agencies including, without limitation, as may otherwise be provided for in this section (as applied to the United States and its agencies, the "Government Carve-Out").*

18.    EXCEPT    AS    OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, NEITHER THE DEBTOR,   THE ESTATE, THE   TRUSTS AND THEIR RESPECTIVE TRUSTEES, THE DIP LENDERS, THE COMMITTEE, THE FORMER AND  CURRENT MEMBERS OF THE COMMITTEE (BUT  SOLELY   IN   THEIR    CAPACITY AS MEMBERS OF THE COMMITTEE) NOR ANY HOLDER OF A  CLAIM OR EQUITY INTEREST OR RELATED PERSONS TO ANY OF THE FORGOING SHALL HAVE ANY RIGHT OF ACTION AGAINST THE DEBTOR, ITS DIRECTORS AND OFFICERS, THE ESTATE, THE TRUSTS AND THEIR RESPECTIVE TRUSTEES, THE DIP LENDERS, THE SENIOR  SECURED NOTEHOLDERS, THE SENIOR SECURED NOTES INDENTURE TRUSTEE, THE COMMITTEE, THE FORMER AND CURRENT MEMBERS OF THE   COMMITTEE (BUT SOLELY IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE) OR ANY OF THEIR RESPECTIVE ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, FINANCIAL ADVISORS,  OR OTHER PROFESSIONALS,

FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO OR ARISING OUT OF THE CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE PREPARATION AND DISTRIBUTION OF THE DISCLOSURE STATEMENT, THE ADMINISTRATION OF THE LIQUIDATING TRUST, THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, OR THE OFFER, ISSUANCE, SALE OR PURCHASE OF A SECURITY OFFERED OR SOLD UNDER THIS PLAN, PROVIDED SUCH EXCULPATED PERSON DID NOT AND DOES NOT ENGAGE IN WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND PROVIDED FURTHER THAT SUCH EXCULPATION SHALL NOT EXTEND TO SUCH EXCULPATED PERSON'S RIGHTS AND OBLIGATIONS UNDER THIS PLAN, THE PLAN DOCUMENTS OR THE LIQUIDATING TRUST AGREEMENT. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL, OR SHALL BE DEEMED TO, EXCULPATE ANY EXCLUDED PARTY FROM ANY SPECIFIED LITIGATION CLAIM.

19.    ***Injunction Enjoining Holders of Claims Against, and Equity Interests in the Debtor.*** *Except as set forth in the Plan, Confirmation Order, Stipulation, or otherwise by settlement, all Persons are hereby stayed, restrained, and enjoined from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtor, or any property thereof, or against any of the Debtor's transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Interest; provided, that this provision shall not prevent any*

31

*governmental unit from enforcing such governmental unit's police or regulatory power and shall not impede or limit the United States' rights to assert setoff or recoupment rights to the fullest extent provided by law; and provided, that nothing in this Section shall prevent a creditor from exercising its recoupment or setoff rights to the extent they are otherwise valid under Section 553 of the Bankruptcy Code.*

20.     Exemption from Certain Taxes.  In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under the Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtor's interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the releases of Liens contemplated under the Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. Federal, state and/or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

21.     Exemption from Securities Laws.  To the extent constituting securities under the 1933 Act, the Trust Interests offered, sold, issued and/or distributed pursuant to the Plan are deemed to have been offered, sold, issued and distributed pursuant to Bankruptcy Code § 1145. Pursuant to Bankruptcy Code § 1145, the exemption of the offer and sale of securities from the registration requirements of the 1933 Act, and any state or local law requiring registration for

32

609332421.1

the offer or sale of a security, applies with respect to the Liquidating Trust Interests and the Litigation Trust Interests distributed pursuant to the Plan, to the extent constituting securities under the 1933 Act. Without limiting the generality of the foregoing the offer, sale, issuance, and distribution of the Liquidating Trust Interests and Litigation Trust Interests to Claimants pursuant to the Plan are and shall be exempt from the requirements of Section 5 of the Securities Act and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer, broker, or dealer thereof pursuant to Bankruptcy Code § 1145(a).

22. <u>Injunctions and Automatic Stay</u>. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of or prior to the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

23. <u>Cancellation of Securities</u>. Unless otherwise provided for in the Plan, on the Effective Date, all promissory notes, stock, instruments, indentures, bonds, agreements, certificates or other documents evidencing, giving rise to, or governing any Equity Interest in, or debt obligation of, the Debtor shall be deemed cancelled and shall represent only the right, if any, to participate in the Distributions contemplated by the Plan. Except as otherwise provided in the Plan, the obligations of the Debtor thereunder or in any away related thereto shall be fully released, terminated, extinguished and discharged and, with respect to the Equity Interests in the Debtor, retired and thereafter cease to exist, in each case without further notice to or order of the

33

Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

24. <u>Abandonment of Certain Assets</u>. Except as expressly provided in this paragraph and in Article II.A.3 of the Plan, the Abandoned Assets (including the Relinquished Leases and ROWs) shall be deemed abandoned as of the Effective Date pursuant to Bankruptcy Code § 554 without further order of the Bankruptcy Court. Entry of this Confirmation Order shall constitute (i) approval, pursuant to Bankruptcy Code section 554, of the abandonment of the Abandoned Assets and (ii) authorization to relinquish any interest the Debtor's hold in the Abandoned Assets. Such abandonment and/or relinquishment does not alter the obligation of the Debtor or the Liquidating Trust to comply with any and all Safety Laws including but not limited to plugging and abandonment obligations, Maintenance and Monitoring Obligations, or any other safety obligations that may be provided for in Article II.A.3 of the Plan and/or in other applicable federal laws and regulations or in any manner extinguish, modify, or otherwise limit (a) the obligations of non-debtor third parties, for plugging and abandonment obligations or bonding obligations (or any other obligations for which they are liable) as may be provided for under the Plan and/or in applicable federal laws and regulations or the rights of the United States to enforce such Safety Laws.

**<u>Miscellaneous Provisions</u>**

25. The Plan shall not become Effective until the conditions set forth in Article VIII(B) of the Plan are satisfied, and in addition, the Debtor demonstrates that it has obtained access to $250,000 to provide for ongoing health and safety operations post-Confirmation.

26. <u>Effective Date Payments</u>. Within 30 days after the Effective Date, each Professional whose retention with respect to the Debtor's Case has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall file

with the Bankruptcy Court, and serve on all parties required to receive notice, a final Fee Application. Such claims shall be paid by the Liquidation Trustee upon Final Order as set forth in Article II.D of the Plan.

27.     On the Effective Date, to the extent not otherwise previously funded, the DIP Lender shall fund up to $350,000 of the Investigation Loan (See Docket No. 717), which funds shall be provided to the Litigation Trustee.

28.     <u>Set Off and Recoupment</u>. Nothing in Article VIII(B)(2) of the Plan or paragraph 18 of this Confirmation Order shall prevent a creditor from exercising recoupment or set off rights to the extent they are provided for under Section 553 of the Bankruptcy Code or as set forth in a stipulation incorporated herein. Notwithstanding anything to the contrary in this Order or the Plan, any rights, claims, and/or defenses belonging to or assertable by Chevron U.S.A. or its affiliates, as to setoff and/or recoupment, if any as well as the Debtor and the Liquidating Trust's objection to such claims, and any response or defense to any such objection, all of which are expressly preserved and not affected by operation of this Order or the Plan. Notwithstanding anything to the contrary in this Order or the Plan, any rights to set off or recoupment that may be asserted by the United States and any or all of its agencies are expressly preserved.

29.     <u>Reservation of Rights in Favor of the United States.</u> Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or elsewhere in this Confirmation Order, nothing shall preclude, bar or enjoin the United States of America, or its agencies, from taking any and all actions to: (i) enforce its police or regulatory powers; (ii) regulate and administer its federal programs; or (iii) assert any setoff or recoupment rights they may have (all of which are expressly preserved). For the avoidance of any doubt, the provisions of this paragraph expressly preserve, without limitation, the regulatory powers of the Regulatory Agencies to approve or disapprove any sales or transfers of federal leases or rights-of-way on the OCS in their sole

35

discretion in accordance with applicable federal laws and regulations. For the further avoidance of any doubt, nothing in the Plan, the Plan Supplement or elsewhere in this Confirmation Order shall preclude, bar, or enjoin the United States of America, or its agencies, from bringing any claim, action, proceeding, defense or cause of action to the extent such claim, action, proceeding, defense or cause of action is permitted by 11 U.S.C. § 1141 including, without limitation, as provided by 11 U.S.C. § 1141(d)(3) and 11 U.S.C. § 727(a) (the "Governmental Reservation of Rights").

30.    <u>Effectiveness of Montco Agreement</u>. Nothing in this Order, the Plan, or in the implementing agreements provided for in the Plan, shall modify, alter, amend, vacate, impair, subordinate, or affect any rights, claims, liabilities, or obligations under and pursuant to the Montco Services Agreement, the First Amendment to the Montco Services Agreement, the Second Amendment to the Montco Services Agreement, and the implementing Orders of this court directly pertaining to such agreement as amended. Subject to further order of this Court, the Montco decommissioning plan shall move forward under the decommissioning plan attached as Exhibit D (which amends Exhibit A to the Disclosure Statement), Exhibits B and C to the Disclosure Statement, and pursuant to the order dated June 8, 2016, authorizing the First Amendment to the Montco Services Agreement (Doc. 999) and dated June 27, 2016, authorizing the Second Amendment to the Montco Services Agreement (Doc. 1146).

31.    <u>Reservation of Rights</u>. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained herein or the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

32.    <u>Notice of Effective Date</u>. On or before five Business Days after the occurrence

of the Effective Date, the Liquidating Trustee shall file on the docket of the Case a notice of the entry of the Confirmation Order, the occurrence of the Effective Date, and such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

33.     <u>Waiver or Estoppel</u>.   Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated, by virtue of an agreement made with the Debtor or its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with this Court prior to the Confirmation Date.

34.     <u>Non-Occurrence of Effective Date</u>. If confirmation does not occur, or if the Effective Date does not occur on or prior to 90 days after the Confirmation Date or such later date as is consented to by the Debtor in accordance with the Plan, then (a) the Plan shall be null and void in all respects, (b) settlements or compromises embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), rejections of executory contracts or unexpired leases affected by the Plan, and any documents or agreements executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

35.     <u>References to Plan Provisions</u>. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair

the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety (except as otherwise modified in this Confirmation Order).

36. _Reversal._ If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

37. _Applicable Non-Bankruptcy Law._ Pursuant to Bankruptcy Code §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

38. _Modification of the Plan Prior to Substantial Consummation._ After the Confirmation Date and prior to the Effective Date of the Plan, the Debtor may, under Bankruptcy Code § 1127(b), (i) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under the Plan; provided, however, prior notice of any amendment shall be served in accordance with the

609332421.1

Bankruptcy Rules or Order of the Bankruptcy Court.

39.     Conflicts between Plan and Confirmation Order. If there is any conflict between the Plan (as supplemental by the Plan Supplement) and this Confirmation Order, the terms of this Confirmation Order shall control.

40.     Severability of Plan Provisions. Each term and provision of the Plan, as it may be altered or interpreted, is valid and enforceable pursuant to its terms.

41.     Retention of Jurisdiction. This Bankruptcy Court's retention of jurisdiction as set forth in Article VIII of the Plan is approved. Such retention of jurisdiction does not affect the finality of this Confirmation Order. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending matters, including adversary proceedings.

42.     Nonseverable and Mutually Dependent. The provisions of this Confirmation Order are nonseverable and mutually dependent.

43.     Recordable Form. This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable Governmental Authority for filing and recording purposes without further or additional orders, certifications or other supporting documents. Further, the Bankruptcy Court authorizes the Liquidating Trustee and the Liquidating Trust, as applicable, to file a memorandum of this Confirmation Order in any appropriate filing or recording office as evidence of the matters herein contained.

44.     Waiver of Stay. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (as applicable), the Debtor shall be authorized to consummate the Plan and the transfers contemplated thereby immediately after entry of this Confirmation Order.

45.     Release of Avoidance Action Claims against Regulatory Agencies. Notwithstanding anything else to the contrary in the Confirmation Order, the Plan, the Plan

39

Supplement, the Liquidation or Litigation Trust Agreements, or any other document executed in connection with the Plan, any and all of the Debtor's Avoidance Actions against the Regulatory Agencies are hereby released, waived, and abandoned by the Debtor.

46.     <u>Preservation of Rights Pursuant to Final DIP Order</u>.   Notwithstanding anything else to the contrary in this Confirmation Order, the Plan, the Plan Supplement, the Liquidation Trust Agreement, the Litigation Trust Agreement, or any other exhibits or documents associated in any way with the Plan, (a) all rights to adequate protection, including any diminution in value claims and replacement liens of the Indenture Trustee contained in prior orders of this Court for use of cash collateral or DIP financing, and (b) all rights of the DIP Lenders provided for in (i) the *Final Order Under 11 U.S.C. § 105, 361, 362, 363(c), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 507 and Bankruptcy Rules 2002, 4001 and 9014 Authorizing the Debtor to Obtain Post-Petition Financing on a Final Basis* [Doc. No. 717]; and (ii) the *Order Approving (I) Release of Certain Escrowed and Reserved Funds, (II) Montco Incentive Fee, (III) Adequate Protection Payment, and (IV) Related Miscellaneous Relief* are hereby specifically acknowledged and preserved.

47.     <u>Preservation of Prior Merit Decommissioning Orders.</u>   Notwithstanding any other provision of this Order and for the avoidance of doubt, nothing herein shall modify, alter, amend, vacate, impair, subordinate, or affect the rights, claims, liens, obligations, and other terms of the prior orders in the Bankruptcy Case involving Merit Energy Company, LLC, other co-owners, predecessor owners, and Debtor, including the orders entered on Setpember 29, 2015 (the "JAB-Merit Order") (Doc. 230), October 28, 2015 (the "9019 Order") (Doc. 368), January 19, 2016 ("Merit Cash Collateral Order") (Doc. 609), the order dated March 1, 2016, authorizing Debtor to enter into the Montco Services Agreement (Doc. 682), the order dated June 8, 2016,

authorizing the First Amendment ot the Montco Services Agreement (Doc. 999), and the order dated June 27, 2016 authorizing the Second Amendment to the Montco Services Agreement (Doc. 1146).

48. _Arogonaut Insurance Company Provisions_. Notwithstanding anything else to the contrary in this Confirmation Order, the Plan, the Plan Supplement, the Liquidation Trust Agreement, the Litigation Trust Agreement, or any other exhibits or documents associated in any way with the Plan, all rights of Argonaut Insurance Company ("_Argonaut_") in and to any and all cash collateral it now possesses or in which it has a security interest by and through (i) the Pre-Petition Argo Indemnity and Collateral Documents (as defined in paragraph 4(f) of the Final Order under 11 USC 105, 361, 362, 363(c), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 507 and Bankruptcy Rules 2002, 4001, and 9014 Authorizing the Debtor to Obtain Post-Petition Financing on a Final Basis [Docket No. 717]) and (ii) as created or preserved through prior orders of this Court in this bankruptcy case, are hereby specifically acknowledged and preserved in favor of Argonaut and in relation to all parties for all purposes. Without limiting the applicability of the foregoing in any way, this preservation of rights in favor of Argonaut specifically subordinates in favor of Argonaut the rights of any and all parties claiming any revisionary interest in any cash collateral held by Argonaut through this Confirmation Order, the Plan Supplement, the Liquidation Trust Agreement, the Litigation Trust Agreement, or any other exhibits or documents associated in any way with the Plan, or otherwise. In addition, it is ordered that all Losses (as defined in the Pre-Petition Argo Indemnity and Collateral Documents) associated with any and all surety bonds posted by Argonaut and as contemplated by the Pre-Petition Argo Indemnity and Collateral Documents shall be paid in full and all surety bonds issued by Argonaut Insurance Company shall be fully canceled and released without residual

41

lability prior to the effectiveness of any such residual rights or interests in any cash collateral held by Argonaut. All of Argonaut's indemnity and collateral rights under all applicable documents and orders of this Court with and affecting all parties are specifically preserved until all Argonaut surety bonds are fully canceled and released without residual liability.

49.    <u>Final Order</u>.  This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of the Confirmation Order.

SIGNED: July 13, 2016

_____

MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 15-34287 (MI) |
| | § | |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | (Chapter 11) |
| OPERATIONS, LLC | § | |
| | § | |
| Debtor | § | |
| | § | |

THIRD AMENDED PLAN OF LIQUIDATION OF BLACK ELK ENERGY OFFSHORE
OPERATIONS, LLC UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE

Dated, June 20, 2016
Houston, Texas

BAKER & HOSTETLER LLP
*Attorneys to the Debtor and Debtor-In-Possession*

2

Elizabeth A. Green, Esq.
Fed ID No. 903144
Email: egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
Fed. ID No. 2687598
Email: jparrish@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

-and-

Jorian L. Rose, Esq.
(*admitted pro hac vice* 9/02/2015)
Email: jrose@bakerlaw.com
45 Rockefeller Plaza
New York, New York
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Pamela Gale Johnson, Esq.
State Bar No. 10777700
E-mail: pjohnson@bakerlaw.com
Fed ID No. 4481
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone: (713) 646-1324
Facsimile: (713) 751-1717

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 15-34287 (MI)** |
| | § | |
| | § | |
| **BLACK ELK ENERGY OFFSHORE** | § | **(Chapter 11)** |
| **OPERATIONS, LLC** | § | |
| | § | |
| **Debtor** | § | |
| | § | |

## THIRD AMENDED[1] PLAN OF LIQUIDATION OF BLACK ELK ENERGY OFFSHORE
## OPERATIONS, LLC UNDER CHAPTER 11 OF THE

---

[1] The Debtor files this Third Amended Plan in order to disclose the proposed treatment of the claims of the Regulatory Agencies relating to the Debtor's P&A Obligations except with respect to the Excluded P&A Claims. The Debtor's Second Amended Plan and Disclosure Statement disclosed that the Regulatory Agencies had asserted a protective proof of claim for over $660 million against the Debtor, that there were ongoing discussions regarding the resolution of the Regulatory Agencies' claim relating to P&A Obligations, and that a negotiated resolution would reduce the return to the holders of allowed unsecured claims. Since the filing of the Second Amended Plan, the Regulatory Agencies have filed an

3

**BANKRUPTCY CODE**

BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC, hereby proposes the following Plan of Liquidation pursuant to Chapter 11 of the Code, 11 U.S.C. §101, *et seq.*

**ARTICLE I. - DEFINITIONS.**

For the purpose of the Plan, the following terms will have the meanings set forth below:

**60/40 Leases** shall mean the leases and rights-of-way that are the subject of the 60/40 Reserve Claim.

**60/40 Reserve Claim** shall mean the Claims identified as "60/40 Reserve Claims" on the attached **Exhibit F**, which amount shall be reduced on a dollar for dollar basis to the extent that P&A Obligations associated with the 60/40 Reserve Claims are satisfied. The 60/40 Reserve Claim shall be funded after the Fully-Allowed Reserve Claim has either been satisfied in full or a reserve sufficient to satisfy the Fully-Allowed Reserve Claim has been established the benefit of the Regulatory Agencies. The funding and distribution of the 60/40 Reserve Claim is set forth in Article II(A)(3) herein. For the avoidance of doubt, prior to the funding of the 60/40 Reserve Claims, the Litigation Trust shall satisfy all claims secured by Litigation Trust Assets and shall pay all super priority administrative expense claims.

**Adequate Protection Liens** shall mean any Liens arising from the following Bankruptcy Court Orders: Docket Nos. 164, 368, 532, 609, 610, 682 and 717.

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(2) of the Code, including without limitation, the actual, necessary costs, and expenses incurred after the

---

administrative expense claim against the Debtor for P&A Obligations in the amount of $714,244,578. Under these circumstances, the Debtor asserts that this Third Amended Plan is proper pursuant to Fed. R. Bankr. P. 3019(a), and accordingly, this Third Amended Plan and a related disclosure statement need not be re-solicited to creditors.

commencement of the Bankruptcy Case, of preserving Debtor's estates and operating the business of the Debtor, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code and all fees and charges assessed against the Bankruptcy Estate under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean May 6, 2016 or any other date established by the Bankruptcy Court or as may otherwise be agreed to by the Debtor.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the lists of Creditors prepared and filed by Debtor with the Bankruptcy Court, pursuant to Section 521(1) of the Code and Rule 1007(b), and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims, Allowed Unsecured Claims and Final Reserve Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, including, for the avoidance of doubt, the Final DIP Order. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court

5

until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Priority Non-Tax Claim** shall mean a Priority Non-Tax Claim to the extent such Priority Non-Tax Claim is or becomes an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Tax Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Tax Claim is or becomes an Allowed Claim.

**Allowed Reserve Unsecured Claims** shall mean the Claims identified as "Allowed Reserve Unsecured Claims" on the attached Exhibit F.  The total initial amount of Allowed Reserve Unsecured Claims shall be $8,476,758.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim including any Allowed Reserve Unsecured Claims that have become Final Reserve Claims.

**Argonaut** shall mean Argonaut Insurance Company.

**Argonaut DIP Loan** shall mean the portion of the New Money DIP Loan, in a principal amount of up to $3,500,000.00, funded by Argonaut Insurance Company.

6

609021587.4

**Argonaut DIP Secured Claim** shall mean collectively, all Secured Claims against the Debtor arising from, under or with respect to the Debtor's Obligations to Argonaut under the DIP Documents.

**Avoidance Actions** shall mean any and all actual or potential avoidance, recovery, subordination, or other related Claims and Causes of Action that may be brought by or on behalf of the Debtor or its Estate to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or applicable nonbankruptcy law which are owned by the Debtor on the Effective Date.

**Backstop Lenders** shall mean AQR Capital Management, LLC and Phoenix Investment Adviser LLC or their respective affiliates that subscribe to the Note Holder DIP Loan.

**Ballot** shall mean a ballot for voting in favor of or against the Plan.

**Bankruptcy Case** shall mean the above-captioned bankruptcy case of the Debtor, which is pending before the United States Bankruptcy Court for the Southern District of Texas, Houston Division pursuant to Chapter 11 of the Code.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in which Debtor's Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the estate, created pursuant to Section 541 of the Code, by the commencement of the Debtor's Bankruptcy Case and shall include all property of the estate as defined in Section 541 of the Code.

**BOEM** shall mean the Bureau of Ocean Energy Management.

**BSEE** shall mean the Bureau of Safety and Environmental Enforcement.

7

**Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

**Cash Collateral Orders** shall mean the collective orders entered in the Bankruptcy Case authorizing the Debtor to use cash collateral.

**Causes of Action**   shall mean all actions (and the proceeds thereof), including Avoidance Actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other Claims whatsoever, in each case held by the Debtor, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, whether asserted directly or derivatively in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case, including through the Effective Date which are owned by the Debtor on the Effective Date.

**Claim** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any class into which Claims or Interests are classified by the Plan pursuant to Section 1123(a)(1) of the Code.

**Class 1, Class 2, Class 3**, *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean title 11 of the United States Code, 11 U.S.C. 101, *et seq.*, and any amendments thereto.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Hearing** shall mean the hearing scheduled by the Bankruptcy Court to consider confirmation of the Plan.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code.

**Creditor** shall mean any Person that holds a Claim against the Debtor.

**Creditor's Committee** shall mean the statutory committee of unsecured creditors appointed by the Office of the United States Trustee in the Bankruptcy Case pursuant to section 1102 of the Code, which consists of Gulf Offshore Logistics, LLC, The Grand Ltd., Montco Oilfield Contractors, LLC, Shamrock Management LLC, and Ryan Marine Services, Inc..

**Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

**Debtor** shall mean Black Elk Energy Offshore Operations, LLC, and its employees, officers, managers, directors, and partners.

**Debtor's Oil and Gas Leases** shall mean all Oil and Gas Leases under which the Debtor holds any Working Interest.

**DIP Agent** shall mean Wilmington Trust, National Association, as administrative agent and collateral agent for the DIP Lenders.

**DIP Documents** shall mean the Senior Secured Superpriority Debtor-In-Possession Credit Agreement dated as of March 28, 2016, by and between the Debtor and the DIP Agent, as administrative agent for the DIP Lenders, as amended, modified, or supplemented upon due and proper notice and further order of the Court (the "DIP Agreement"), and inclusive of all collateral, guarantee and other documents executed in connection therewith.

**DIP Lender** shall mean the Note Holder DIP Lenders and Argonaut.

**DIP Loan** shall mean the aggregate principal amount of $15,000,000.00 consisting of (a) $7,000,000.00 of New Money DIP Loans; (b) $7,000,000.000 of Roll Up Operating DIP Loans; (c) $500,000.00 of Investigation Loans; and (d) $500,000 of Roll Up Investigation Loans, loaned to the Debtor by the DIP Lenders pursuant to the terms and conditions of the DIP Documents and the Final DIP Order.

**DIP Obligations** shall mean all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Documents and the Final DIP Order, including but not limited to: (1) the New Money DIP Loan, (2) the Roll Up Operating DIP Loan, (3) the Investigation Loan, and (4) the Roll Up Investigation Loan.

**DIP Superpriority Claim** shall mean (i) the Allowed Superpriority Administrative Claim granted, ratified, confirmed and approved on a final basis with priority over any and all Administrative Claims and unsecured claims against the Debtor or its Estate to the extent set forth in the Final DIP Order and (ii) the Allowed Administrative Claims of the DIP Agent for its fees and expenses to the extent set forth in the Final DIP Order.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

**Disallowed Claim** shall mean a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Claim** shall mean that portion (including, when appropriate, the whole) of a Claim against that is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

**Distribution** shall mean the distribution of the applicable Plan Payments to the Holders of Allowed Claims in accordance with the terms of the Plan.

**Effective Date** shall mean a date within ninety (90) days after the Bankruptcy Court has entered the Confirmation Order provided that no appeal of the Confirmation Order is pending; *provided, however,* that the Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met or waived in accordance with the terms hereof. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 90th day after the entry of the Confirmation Order provided that the conditions to effectiveness have been met or waived in accordance with the terms hereof.

**Excluded P&A Claims** shall mean those OCS leases and rights-of-way that are not affected by the proposed settlement of the Debtor's P&A Obligations with the Regulatory Agencies including EC 81/Lease G01477, EI 107/Lease G15241, HI A442/Lease G11383, PL 13/Lease G03171, PL 8/Lease G03587, SM 40/ROW G29328 and G25422, SM 41/ROW G29329, G25395 and G01192, WC 20/Lease 680 and WC 269/Lease G13563 or otherwise excluded from **Exhibit G** attached hereto.

**Exit Facility** shall mean the commitments and extensions of credit under the credit facility referred to in Section 2.12 of the Senior Secured Superpriority Debtor-In-Possession Credit Agreement, to be negotiated by the Debtor and the DIP Lenders but which shall have terms which maintain the reservation of rights as to competing liens, offset and recoupment

11

rights otherwise set forth in the Final DIP Order,[2] and which facility shall also provide for the

Debtor, or the Liquidating Trust's, Maintenance and Monitoring Obligations under applicable

federal regulations as contemplated in this Plan to the extent that these obligations are not

otherwise being covered by Montco or by JAB Energy Solutions LLC.

**Exit Facility Documentation** shall mean the definitive documentation for the Exit

Facility, including the loan agreement, collateral agreements, mortgages and other security

agreements, and other related documents and instruments.

**Final DIP Order** shall mean the *Final Order Under 11 U.S.C. §§ 105, 361, 362, 363(c),*

*363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364€ and 507 and Bankruptcy Rules 2002,*

*4001 and 9014 Authorizing the Debtor to Obtain Post-Petition Financing on a Final Basis*

entered by the Bankruptcy Court on March 18, 2016 at Docket No. 717.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no

longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari

proceeding is pending or, in the discretion of the Debtor, if an appeal is filed and no stay has

been entered.

**Final Reserve Claim** shall mean a Reserve Claim after its amount is fixed, which shall

occur in accordance with the provisions of Article II(A)(3) of the Plan.  For all purposes under

---

[2] Specifically including paragraph 44 of the Final DIP Order:

44. *Reservation of Rights of Co-Owners.* Notwithstanding anything contained in this Final Order or the DIP Credit Agreement, the common law or contractual right of recoupment, set-off, or off-set that any operator or co-owner has against the Debtor or any property of the Debtor, whether such right arises pre-petition or post-petition, are preserved.  The rights of the Debtor, any secured party or the Creditors' Committee to contest such rights are also preserved.  Further, nothing contained in this Final Order or the DIP Credit Agreement shall alter or prime any pre-petition, valid, enforceable, perfected, and non-avoidable liens or security interests of Shell Offshore, Inc. or its affiliates or related entities, Fieldwood Energy LLC or its affiliates or related entities, W&T Offshore Inc., Merit Energy Company, LLC, McMoRan Alta Mesa Holdings, LP, Cairn Energy USA, LLC, Energy Xxi GOM, LLC and Marubeni Oil & Gas (USA), Inc. (collectively, the "Co-Owners")  Notwithstanding anything contained in this Final Order or DIP Credit Agreement, the Co-Owners shall retain their respective pre-petition security interest in the Debtor's assets on a post-petition basis in the same collateral with the same validity and priority as the pre-petition security interests held by such respective entities.

the Plan, a Final Reserve Claim shall be treated as an Allowed Claim entitled to distributions under the Plan.

**Fully-Allowed Reserve Claim** shall mean the Claims identified as "Fully-Allowed Reserve Claims" on the attached **Exhibit F**. The total amount of Fully-Allowed Reserve Claims shall be $32,228,271, which amount shall be reduced on a dollar for dollar basis to the extent that P&A Obligations associated with the Fully-Allowed Reserve Claims are satisfied. After the satisfaction of Claims secured by the Litigation Trust Assets and any superpriority administrative claims, the Litigation Trust Assets shall first be reserved and set aside in the full amount of the Fully-Allowed Reserve Claim for the benefit of the Regulatory Agencies. After the full amount of the Fully-Allowed Reserve Claim has been reserved and set aside for the benefit of the Regulatory Agencies, the Litigation Trust shall proceed to reserve and set aside Litigation Trust Assets for the full amount of the 60/40 Reserve Claim.

**Fully Allowed Reserve Claim Leases** shall mean the leases and rights-of-way that are the subject of the Fully Allowed Reserve Claim.

**Grand Isle Litigation** shall mean any claims or causes of action relating to the 2012 explosion at the Debtor's West Delta 32 platform in the Gulf of Mexico which resulted in personal injuries and property damage.

**Holder** shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

**Impaired** shall mean the status of any holder of a Claim or Interest whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in Section 1124 of the Code.

13

**Indenture** shall mean the Indenture for the Senior Secured Notes dated November 27, 2014, and any and all supplements and amendments thereto, among the Debtor and Black Elk Energy Finance Corporation, as issuers, and Delaware Trust Company as trustee and collateral agent.

**Indenture Trustee** shall mean Delaware Trust Company as trustee and collateral agent.[3]

**Initial DIP Lender** shall mean OW DIP, LLC.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, membership interest, or other equity instruments in the Debtor.

**Interior** shall mean the United States Department of the Interior which includes, among other agencies, The Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement.

**Investigation Fee(s)** shall mean those allowed Professional Fees related to the investigation of Claims and Causes of Action and payable from the Investigation Loan.

**Investigation Loan** shall mean the loan from the Note Holder DIP Lenders to the Debtor in the maximum principal amount of $500,000.00, the terms and conditions of which are set forth in the DIP Documents and the Final DIP Order.

**JAB** shall mean JAB Energy Solutions LLC.

**Lien** shall have the meaning set forth in Section 101(37) of the Code.

**Liquidation Trust** shall mean that certain trust that will come into existence on or before the Effective Date into which all of the Liquidation Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidation Trust Agreement.

---

[3] On December 14, 2015, Delaware Trust Company was appointed successor to the Bank of New York Mello Trust Company, N.A. as Indenture Trustee and Collateral Agent.

14

**Liquidation Trust Agreement** shall mean the agreement governing the Liquidation Trust dated on or before the Effective Date, substantially in the form included in the Plan Supplement.

**Liquidation Trust Assets** shall mean all Property of the Debtor less the Litigation Trust Assets, including, without limitation, each of its Oil & Gas Leases and interest in such leases and rights-of-way.   For the avoidance of doubt, all of the Debtors' Oil & Gas Leases, except for those Oil & Gas Leases identified on **Exhibit G** to this Plan, shall be Liquidation Trust Assets.

**Liquidation Trust Beneficial Interests** shall mean the beneficial interests in the Liquidation Trust, which shall be distributed Pro Rata to the Holders of Claims entitled to the Liquidation Trust Beneficial Interests under the Plan.

**Liquidation Trust Committee** shall mean the [five (5) / three (3)] member board established to oversee, review and guide the activities and performance of the Liquidation Trustee, [two (2) / one (1)] member[s] of which shall be selected by the Debtor, [two (2)/ one (1)] member[s] of which shall be selected by the Backstop Lenders, and the final member of which shall be the Liquidation Trustee.

**Liquidation Trustee** shall mean the trustee of the Liquidation Trust.

**Litigation Trust** shall mean that certain trust that will come into existence on or before the Effective Date into which all of the Litigation Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Litigation Trust Agreement.

**Litigation Trust Agreement** shall mean the agreement governing the Litigation Trust dated on or before the Effective Date, substantially in the form included in the Plan Supplement.

**Litigation Trust Assets** shall mean (i) all causes of action belonging to the Debtor on the Petition Date, other than any causes of action related to the Northstar Collateral, the P&A Recoveries or the Grand Isle Litigation; (ii) any amount of the Investigation Loan not consumed

15

by Investigation Fees prior to the Effective Date; and (iii) the Debtor's reversionary interest in the Liquidation Trust Assets after the satisfaction of all Liens, Claims, interests and any other obligations by the Liquidation Trust which, for the avoidance of doubt, shall specifically exclude: (i) any bond proceeds transferred to the Liquidation Trust by the United States for the purposes of decommissioning; (ii) any funds originally transferred by the Litigation Trust to the Liquidation Trust for the benefit of the Regulatory Agencies; (iii) the Northstar Assets; and (iv) the Northstar Collateral. For the avoidance of further doubt, if final site clearance verification has been obtained from BSEE by the Liquidation Trust for a particular lease or right of way, only the excess reserve funds, if any, associated with that specific lease or right of way that has been site cleared shall be returned to the Litigation Trust.

**Litigation Trust Beneficial Interests** shall mean the beneficial interests in the Litigation Trust, which shall be distributed Pro Rata to the Holders of Claims entitled to the Litigation Trust Beneficial Interests under the Plan.

**Litigation Trust Committee** shall mean the three (3) member board established to oversee, review and guide the activities and performance of the Litigation Trustee, one (1) member of which shall be selected by the Creditors' Committee, one (1) member of which shall be selected by the Backstop Lenders, and the final member of which shall be the Litigation Trustee.

**Litigation Trustee** shall mean the trustee of the Litigation Trust.

**Maintenance and Monitoring Obligations** shall mean the Debtor's maintenance and monitoring obligations for all leases and rights-of-way which it has operated prior to the Confirmation Date pursuant to applicable federal regulations including, without limitation, 30 C.F.R. §§ 250.107, 250.132, 250.300, 250.301, 250.518, 250.520, 250.804, 250.1703 and 33 C.F.R. § 143.14 and the Debtor's obligations to make payments to keep an OSRP (Oil Spill

16

609021587.4

Response Plan) in place until such leases and rights-of-way are fully decommissioned pursuant to 30 C.F.R. §§ 254 *et seq.*

**Montco** shall mean, together, Montco Oilfield Contractors, LLC and Montco Offshore, Inc.

**Montco Services Agreement** shall mean that certain Amended and Restated Turnkey Services Agreement, effective as of February 8, 2016, by and between the Debtor and Montco Oilfield Contractors, LLC, as may be amended, as approved by the Bankruptcy Court via the *Order Authorizing the Debtor to Enter into the Montco Services Agreement and Granting Related Relief* entered by the Bankruptcy Court on March 1, 2016 at Docket No. 682.

**New Money DIP Loans** shall mean the draws of the DIP Loan up to a collective total of up to $7,000,000.00, which were funded 50% by Argonaut and 50% by the Note Holder DIP Lenders (referred to separately as the "Argonaut DIP Loan" and "Note Holder DIP Loan").

**Northstar** means Northstar Offshore Group, LLC and its direct and indirect subsidiaries.

**Northstar Assets** shall mean those leases and assets involved in the Northstar Transaction (as defined in the DIP Documents).

**Northstar Collateral** shall mean up to $14,000,000.00 of cash collateral made available to the Debtor's Bankruptcy Estate by resolution of the transfer of properties involved in the Northstar Transaction (as defined in the DIP Documents) relating to the Northstar Bonds (as defined in the DIP Documents).

**Note Holder DIP Secured Claim** shall mean collectively, all Secured Claims against the Debtor arising from, under or with respect to the Debtor's Obligations under the DIP Documents.

**Note Holder DIP Lenders** shall mean all subscribing noteholders under the Indenture or such funds designated by such subscribing noteholders.

17

609021587.4

**Note Holder DIP Loan** shall mean the portion of the New Money DIP Loan, in a principal amount of up to $3,500,000.00, funded by the Note Holder DIP Lenders.

**OCS** shall mean the Outer Continental Shelf.

**OCSLA** shall mean The Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 *et seq.*, and its implementing federal regulations.

**Oil and Gas Lease** shall mean the instrument by which a Working Interest is created in minerals.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**OSRP** shall mean Oil Spill Response Plan as defined in 30 CFR §§ 254 *et seq.*

**Other Secured Claim** shall mean any Secured Claim other than the Senior Notes Claim, the Note Holder DIP Secured Claim, and the Argonaut DIP Secured Claim.

**P&A Bonds** shall mean all surety bonds posted by the Debtor for the purpose of ensuring the satisfaction of the plugging and abandonment obligations and liabilities of the Debtor in connection with the plugging and abandonment of wells and decommissioning oil and gas platforms, pipelines, other facilities and site clearances.

**P&A Escrows** shall mean any escrow account established by any of the Debtor's predecessors-in-title for the purpose of funding future plugging and abandonment obligations, including, but not limited to, those established by Merit, W&T, and Maritech.

**P&A Obligations** shall mean the plugging and abandonment and decommissioning obligations and liabilities related to various wells, oil and gas platforms, pipelines and other facilities owned by the Debtor..

609021587.4

**P&A Plans** shall mean the two decommissioning plans that have been approved by the Bankruptcy Court following the Petition Date, but prior to the Effective Date of the Plan, for the decommissioning of federal leases and rights of way by Montco or JAB.

**P&A Recoveries** shall mean the Debtor's reversionary right in any cash collateral held by any surety or predecessor-in-title to the extent funds are returned to the Debtor's estate. For the avoidance of doubt, the P&A Recoveries do not include any P&A collateral that is used to make payments under the Montco Service Agreement or the Argonaut DIP Repayment (as defined in the DIP Documents) or subject to the P&A Escrows until such time as the funds are no long subject to the P&A Escrows.

**Parties in Interest** shall mean any entity or person with a legal or beneficial interest at issue in the Bankruptcy Cases.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean August 11, 2015, which is the date on which the involuntary petition for relief under Chapter 7 of the Code was filed against the Debtor.

**Plan** shall mean this Amended Chapter 11 Plan of Liquidation, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Debtor, the Litigation Trust or the Liquidation Trust, as applicable, pursuant to the terms of the Plan.

**Plan Supplement** shall mean a separate volume of documents, including the Liquidating Trust Agreement and Litigation Trust Agreement, to be filed with the Bankruptcy Court not less than 14 days prior to the Confirmation Hearing.

**Platinum** shall mean Platinum Partners Value Arbitrage Fund, LP, and its affiliates, as the term affiliates is defined in § 101(2) of the Code, but excluding the Debtor.

19

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Non-Tax Claim** shall mean any Claim entitled to priority in payment as specified in Section 507(a) of the Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim.

**Priority Tax Claim** shall mean any Claim of a governmental unit (as defined in Section 101(27) of the Code) of the kind entitled to priority under Sections 502(i) and 507(a)(8) of the Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Cases pursuant to an Order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Code.

**Pro Rata Share** shall mean with respect to any Distribution, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

**Property** shall mean all of the Estate's property, whether tangible or intangible, and without limitation, any and all real or personal property, including all cash and cash equivalents, licenses, certifications, tax refunds, accounts receivable, stock in subsidiaries that are not the Debtor, inventory, Causes of Action, and equipment.

**Regulatory Agencies** shall mean the Department of Interior and its agencies, the Bureau of Safety and Environmental Enforcement and the Bureau of Ocean Energy Management.

**Regulatory Agencies' Claims** shall mean any Claims against the Debtor that have been asserted by the Regulatory Agencies on account of the Debtor's P&A Obligations, including: (i)

609021587.4

the United States' Motion for Allowance of Administrative Expenses Pursuant to 11 U.S.C. §

503(b) (Doc. No. 889) filed on May 18, 2016, as amended, seeking allowance of an

Administrative Expense in the amount of $714,255,578; and (ii) the protective Proof of Claim

No. 102 filed by BSEE in the amount of $660,606,223 on account of the Debtor's P&A

Obligations, but excluding: (i) the Excluded P&A Claims and (ii) any other claims filed by the

United States that do not arise out of the Debtor's P&A Obligations, including any proofs of

claim filed by the Office of Natural Resources Revenue for unpaid royalties and by the

Regulatory Agencies for civil penalties which shall be unaffected by the settlement proposal set

forth in this Plan and shall be subject to the ordinary claims allowance process.

**Reserve Claims** shall mean, collectively, the Fully-Allowed Reserve Claims, the 60/40

Reserve Claims, the Allowed Reserve Unsecured Claims, and the Reserve Unsecured Claims.

**Reserve Unsecured Claim** shall mean the Claims identified as "Reserve Unsecured

Claims" on the attached Exhibit F. The total initial amount of Reserve Unsecured Claims shall

be $20,187,577.

**Roll Up Investigation Loan** shall mean a deemed borrowing by the Debtor of one dollar

for each dollar funded under the Investigation Loan.

**Roll Up Operating DIP Loan** shall mean a deemed borrowing by the Debtor of two

dollars for each dollar funded under the Note Holder DIP Loan up to $7,000,000.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented

by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable

under applicable law, and that is not subject to avoidance under the Code or other applicable

non-bankruptcy laws. A Secured Claim which is challenged by the Debtor, Liquidation Trust or

Litigation Trust shall only be an Allowed Secured Claim to the extent that such Claim is deemed

to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as set forth in Section 101(51) of the Code.

**Senior Litigation Trust Interest** shall mean that senior interest in the Litigation Trust received by the Holder of the Allowed Senior Notes Claim in an amount equal to the Adequate Protection Liens to the extent they attach to Causes of Action Trust (as defined in the Final DIP Order).

**Senior Liquidation Trust Interest** shall mean the senior interest in the Liquidation Trust received by the Holder of the Allowed Senior Notes Claim in an amount equal to the Adequate Protection Liens.

**Senior Notes** shall mean the 13.75% Senior Secured Notes due 2015, issued pursuant to the Senior Notes Indenture.

**Senior Notes Claim** shall mean all Claims against the Debtor arising under the Senior Notes, the Senior Notes Indenture or any ancillary agreement.

**Senior Notes Indenture** shall mean that certain Indenture dated November 23, 2010 by and among the Debtor and Black Elk Energy Finance Corp. as issuers, each of the guarantors party thereto and The Bank of New York Mellon Trust Company, N.A., as trustee and collateral agent, pursuant to which the Senior Notes were issued.

**Senior Note Liquidating Trust Treatment** shall mean the rights and benefits granted to Holders of Senior Notes as provided in Paragraph 23 of the Final DIP Order.

**Senior Notes Pre-Petition Obligations** shall mean the aggregate principal amount of approximately $68,567,000.00 plus accrued and unpaid interested thereon, plus additional

22

609021587.4

amounts owned under the Indenture, including default interest, fees, expenses, costs and all other amounts due and owing under and in connection with the Indenture.

**Unclaimed Property** shall mean any Cash, or any other property of the Debtor, Litigation Trust or Liquidation Trust which is unclaimed for a period of six (6) months after any Distribution to a Holder of an Allowed Claim.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

**Unresolved P&A Claims** shall mean Reserve Claims for leases and rights of way that are excluded from decommissioning in the two P&A Plans approved by the Bankruptcy court prior to the Effective Date of the Plan.

**Unresolved P&A Claims Triggering Date** shall mean the date that is the later of: (i) the date of the termination or dissolution of the Liquidating Trust; or (ii) three (3) years from the Effective Date of the Plan

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date that is not: (i) an Administrative Claim; (ii) a Priority Tax Claim; (iii) a Priority Non-Tax Claim; or (iv) a Secured Claim and shall include the deficiency portion of the Senior Notes Claim.  For the avoidance of doubt, the term Unsecured Claim shall include rights arising under Section 502(h) of the Bankruptcy Code, which rights are expressly preserved pursuant to this Plan, and shall be treated for all purposes of Unsecured Claims.

**Unsecured Creditor** shall mean a Creditor holding an Allowed Unsecured Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 7 located at 515 Rusk, Houston, TX 77002.

**Working Interest** shall mean an ownership right in an oil and gas lease granting the holder the right to bear costs in the activities undertaken pursuant to a lease.  The Debtor's Working Interests are identified in the Debtor's Schedule A, available on the Bankruptcy Court docket at docket number 443.

## ARTICLE II. – ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS & UNITED STATES TRUSTEE STATUTORY FEES.

In accordance with Section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims of the Debtor have not been classified, and the Holders thereof are not entitled to vote on the Plan.  All other Claims and Interests are classified and treated under Articles III-V of the Plan.

A.     <u>Administrative Claims.</u>

1.     <u>DIP Superpriority Claims.</u>

The DIP Superpriority Claims shall be Allowed in the full amount due and owing under the Cash Collateral Orders, DIP Documents and Final DIP Order, and no Holder of a DIP Superpriority Claim shall be required to file an application, motion, or request with the Bankruptcy Court for allowance of such Claim as an Administrative Claim.  Except to the extent that a Holder of an Allowed DIP Superpriority Claim agrees to a less favorable treatment, each Holder of an Allowed DIP Superpriority Claim shall receive Cash equal to the full amount of its Allowed DIP Superpriority Claim in full and final satisfaction of such Claims.

2.     <u>Indenture Trustee Fees and Expenses.</u>

On or before the Effective Date, the Debtor will pay all reasonable and documented fees and expenses of the Indenture Trustee, in accordance with Paragraph 19 of the Final DIP Order.

3.     <u>Regulatory Agencies' Claims.</u>

24

609021587.4

The Regulatory Agencies have asserted certain administrative expense claims against the Debtor on account of P&A Obligations in the collective amount of over $700,000,000. The Debtor objects to the allowance of these claims, as set forth in Disclosure Statement Article III(B)(1)(b). Throughout the Debtor's liquidation, the Debtor, the Committee and the Regulatory Agencies have been in active discussions regarding a compromise of the Regulatory Agencies' administrative expense claims allegedly arising from the Debtor's P&A Obligations and the treatment of those claims. Recently, due to the Debtor's inability to perform its P&A Obligations on several federal leases and rights of way on the Outer Continental Shelf, the Debtor and the Committee have made a compromise proposal to the Regulatory Agencies with respect to the Debtor's P&A Obligations which, if approved by the United States government, would consensually resolve the Debtor's objection to allowance of the Regulatory Agencies' administrative expense claims for P&A Obligations (other than the Excluded P&A Claims), by providing an agreed-upon treatment for all such decommissioning claims. The terms of the proposal that has been made to the United States government for its approval are set forth below.

> *Contingency.* This agreement is contingent on the Regulatory Agencies obtaining certain approvals from within the United States. In the event that appropriate approvals are not obtained from the United States, the treatment of the Regulatory Agencies' Claims shall be governed by the Second Amended Plan. Whether appropriate approvals of this agreement have been obtained shall be determined by the United States in its sole and absolute discretion.

> *The Debtor Defaults on its P&A Obligations.* The Debtor has defaulted on its P&A Obligations for all of the leases and rights of way set forth in **Exhibit G** and acknowledges that it is unable to decommission these leases and rights of way as required by the Outer Continental Shelf Lands Act and its implementing federal regulations and the terms of the applicable leases and rights of way.

> *Reserve Claim Amounts.* The Debtor, Committee and Regulatory Agencies have agreed upon a stipulated reserve claim amount, on a lease by lease and right-of-way by right-of-way basis, for each lease or right of way in which the Debtor holds an interest except with respect to the Excluded P&A Claims. The stipulated reserve claim amounts

are identified as the "Total Claim Amount" on the schedule attached hereto as **Exhibit F.** The Regulatory Agencies shall be the Holders of such claims and any notices with respect to such claims shall be provided to:

> Eric Andreas
> Attorney-Advisor
> U.S. Department of the Interior
> Office of the Solicitor
> 1849 C Street, NW
> Washington, D.C. 20240
> Phone: (202) 208-7310
> eric.andreas@sol.doi.gov
>
> -and-
>
> Eunice R. Hudson
> Trial Attorney
> U.S. Department of Justice
> P.O. Box 875
> Ben Franklin Station
> Washington, DC 20044-0875
> Phone: (202) 514-6748
> Eunice.R.Hudson@usdoj.gov

*Categorization of Claims.*  Each "Total Claim Amount" shall be divided into one or more of the following four (4) categories, in accordance with the allocation reflected on Exhibit F: (1) Fully-Allowed Reserve Claims; (2) 60/40 Reserve Claims; (3) Allowed Reserve Unsecured Claims; and (4) Reserve Unsecured Claims.

*Allowance of Claims.*  The Fully-Allowed Reserve Claims shall be deemed Allowed Claims for all purposes and without the need for further action on the part of any party, in the full amount reflected on Exhibit F, except that such claims shall not constitute Final Reserve Claims and shall not be entitled to distributions under the Plan until compliance with the Determination of Claim Amount provisions below, provided, however, that the Allowed amount of the Fully Allowed Reserve Claims shall be reduced on a dollar for dollar basis to the extent that P&A Obligations associated with the Fully Allowed Reserve Claim Leases are satisfied.  After the satisfaction of all Claims secured by the Litigation Trust assets and of all superpriority Administrative Claims, the Litigation Trust shall next set aside and reserve sufficient funds to fund the full amount of the Fully-Allowed Reserve Claim.  The 60/40 Reserve Claims shall be deemed Allowed Claims, for all purposes and without the need for further action on the part of any party; provided, however, that the Allowed amount of the 60/40 Reserve Claims shall be reduced on a dollar for dollar basis to the extent that P&A Obligations associated with the 60/40 Leases are satisfied.  After the Fully-Allowed Reserve Claims are either satisfied in full or reserved for in full and until $7,490,000 (or the then applicable maximum amount of the 60/40 Reserve Claim) has been reserved for the benefit of the Regulatory Agencies, each additional dollar recovered by the Litigation Trust shall be divided 60/40,

with 60% of each additional dollar recovered being held in reserve to satisfy the 60/40 Reserve Claims for the benefit of the Regulatory Agencies and 40% of each additional dollar recovered being made available for distribution to Allowed Class 6 Claims.  The 60/40 Reserve Claims shall not constitute Final Reserve Claims and shall not be entitled to distributions under the Plan until compliance with the Determination of Claim Amount provisions below.  Once both the Fully-Allowed Reserve Claim and the 60/40 Reserve Claims have been reserved in their full amounts for the benefit of the Regulatory Agencies, the Litigation Trust shall distribute any additional funds to the holders of Allowed Class 6 Claims.  For the avoidance of doubt, the Litigation Trustee shall include the then maximum amount of the Allowed Reserve Unsecured Claim and the Reserve Unsecured Claims when calculating distributions and shall reserve such amounts that would otherwise be distributed on account of the Allowed Reserve Unsecured Claim and the Reserve Unsecured Claims until compliance with the Determination of Claim Amount provisions below.  The Allowed Reserve Unsecured Claims shall be deemed Allowed Claims, for all purposes and without the need for further action on the part of any party, in the full amount reflected on **Exhibit F**, except that such claims shall not constitute Final Reserve Claims and shall not be entitled to distributions under the Plan until compliance with the Determination of Claim Amount provisions below.  The *Reserve Unsecured Claims shall be deemed filed, for all purposes and without the need for further action on the party*, but shall not automatically be deemed Allowed Claims or Final Reserve Claims.  For the avoidance of doubt, the Reserve Unsecured Claims shall *be subject to the claims objection procedures set forth in Article VII(I)(1) of the Plan* with all parties reserving their rights to object to, or defend, such Reserve Unsecured Claims.

*Treatment of Reserve Claims Pending Determination of Claim Amounts.*  The Litigation Trustee shall reserve in the Litigation Trust for the benefit of each holder of a Reserve Claim, cash in an amount equal to the distributions that would have been made to the Holder of such Reserve Claim under the Plan if it were an Allowed Claim.  Such amount so reserved shall constitute the maximum amount of distribution to which a Holder of a Reserve Claim may ultimately become entitled.  Notwithstanding any other provision in the Plan, no distributions will be made with respect to a Reserve Claim until the Reserve Claim is deemed a Final Reserve Claim.

*Determination of Claim Amount.*  The extent to which a Reserve Claim becomes a Final Reserve Claim, and thus becomes entitled to distributions under the Plan, depends largely on the Debtor's satisfaction of its P&A Obligations and submits to BSEE a site clearance.  The Debtor's efforts to satisfy its P&A Obligations are ongoing, but will not be completed prior to the Effective Date.  When the P&A Obligations with respect to any lease or right-of-way identified on **Exhibit F** are fully satisfied in compliance with applicable federal regulations and procedures as determined by BSEE pursuant to its regulatory authority, BSEE shall issue to the Debtor or Liquidating Trustee, as applicable, a final site clearance verification.  Upon issuance of final site clearance verification from BSEE for a specific lease or right-of-way, the Reserve Claim relating to that lease or right-of-way shall be reduced to $0.  If the Debtor, Liquidating Trustee,, or other non-Debtor third party, as applicable is unable to obtain a final site clearance verification for a particular lease or right of way, then the Debtor or Liquidating Trustee,

as applicable, shall inform the Regulatory Agencies of same, and the Regulatory Agencies and the Debtor or Liquidating Trustee, as applicable, shall work together in good faith to create or obtain a written estimate of the costs necessary to satisfy the Debtor's remaining P&A Obligations as to that lease or right-of-way. Upon agreement over such written estimate, the Regulatory Agencies' Claim for P&A Obligations on the applicable lease or right of way shall immediately be fixed at the lesser of: (1) the estimated costs necessary to satisfy the Debtor's P&A Obligations as to that lease or right of way; or (2) the Total Claim Amount identified on **Exhibit F** for that lease or right-of-way. The fixed claim amount shall be characterized as a Fully-Allowed Reserve Claim, 60/40 Reserve Claim, Allowed Unsecured Reserve Claim, or Unsecured Claim in accordance with **Exhibit F**. In the event that a Reserve Claim was made up of more than one category of Reserve Claims, the Final Reserve Claim shall be divided between the categories of Reserve Claims in the same proportion. Until such time as the Debtor or Liquidating Trustee, as applicable, obtains a final site clearance verification from BSEE for that lease or right of way, the Reserve Claims relating to that lease or right-of-way shall remain in reserve, unless otherwise agreed to in writing by the Regulatory Agencies and the Liquidating Trustee. For the avoidance of any doubt, any Unresolved P&A Claims, shall become Final Reserve Claims and shall be released for distribution to the United States by the Unresolved P&A Claims Triggering Date. Upon occurrence of the Unresolved P&A Claims Triggering Date, any distributions made to the United States on account of the Unresolved P&A Claims shall be sent to an account to be specified by the Regulatory Agencies. To the extent that any escrows, bonds or other forms of satisfaction (including satisfaction of the applicable decommissioning obligations by other jointly and severally liable parties) reduce the amount of the total decommissioning obligation for a particular lease or right-of-way included in the Unresolved P&A Claims after distributions have been made to the United States on account of such Unresolved P&A Claims, the United States shall, after consultation with the Litigation Trustee, return such agreed-to amounts to the Litigation Trustee on account of such reduction. To the extent there are any unresolved issues pertaining to any distributions made to the United States on account of these Unresolved P&A Claims that cannot be agreed to by the United States and the Litigation Trustee, any such unresolved issues shall be resolved by the Bankruptcy Court.

*Liquidating Trustee's Duties.* Upon formation of the Liquidating Trust, the Liquidating Trustee shall manage the Liquidating Trust Assets in such a manner as to first ensure that the Final Reserve Claim amount is minimized.

*Treatment of Final Reserve Claims.* Final Reserve Claims shall receive distributions in accordance with Article VII(D)(8) of the Plan.

*Relinquishment of Leases and Rights of Way and Compromise of P&A Obligations.* If the proposed settlement is approved by the United States, the federal oil and gas leases and rights-of-way, which are set forth in **Exhibit G** (the "Relinquished Leases and ROWs"), shall be relinquished to Interior in accordance with its procedures and protocols and any interests in properties relating to such Relinquished Leases and ROWs shall be abandoned pursuant to 11 U.S.C. § 554(a) subject to the conditions set forth in this section. The Debtor acknowledges that it: (i) is unable to comply with its

28

P&A Obligations under the Outer Continental Shelf Lands Act and its implementing federal regulations because the Debtor is unable to decommission the Relinquished Leases and ROWs; and therefore (ii) has defaulted on its P&A Obligations to the United States for the Relinquished Leases and ROWs.  As a result of the Debtor's default on its P&A Obligations under the Relinquished Leases and ROWs, but without extinguishing the Debtor's underlying P&A Obligations on such Relinquished Leases and ROWs, if this settlement proposal is approved by the United States, it will agree to accept the terms of this settlement as a compromise of the Debtor's P&A Obligations to the United States (except with respect to the Excluded P&A Claims or as otherwise specified herein) and agrees not to seek any further recovery from the Litigation Trust or the Liquidation Trust for P&A Obligations relating to the Relinquished Leases and ROWs.

For the avoidance of doubt, nothing in this Plan shall, in any manner, extinguish, modify or otherwise limit: (i) the Debtor, or the Liquidating Trust's, Maintenance and Monitoring Obligations, which shall be provided for by the Plan including in Article VII(E)(2), as amended, and any corresponding exit facility to be obtained by the Debtor in accordance with the Plan, as amended, until the relevant leases or rights-of-way being maintained and monitored have been fully decommissioned as verified by BSEE; (ii) the obligations of non-debtor third parties to the United States including, without limitation, any jointly and severally liable parties on the Relinquished Leases and ROWs or any applicable sureties that have issued bonds in favor of the United States to secure the Debtor's obligations to the United States, including its P&A Obligations (collectively the "Non-Debtor Parties") as this compromise is predicated on the Debtor's default under its P&A Obligations; or (iii) the rights of the United States to enforce the P&A Obligations or any applicable mandatory compliance obligations, including Maintenance and Monitoring Obligations (including obligations to maintain an OSRP) and obligations to maintain insurance, under applicable laws and regulations, against any such Non-Debtor Parties.  Any sureties that have furnished bonds in favor of the United States on behalf of the Debtor under the Relinquished Leases and ROWs or any leases or rights of way that have been compromised by this settlement proposal made to the Regulatory Agencies, including for the Debtor's P&A Obligations, shall retain their rights, if any, to seek repayment and recourse from the Debtor's estate, the Litigation Trust or Liquidation Trust, as applicable.

*No Subrogation*.  The Debtor, Committee and Regulatory Agencies agree that the treatment of the Regulatory Agencies' Claims is a negotiated compromise and resolution of a contested matter, and is not intended to benefit any non-Debtor third parties.  No party shall be entitled, under any circumstances, to claim a right of subrogation as to the Regulatory Agencies' rights under the Plan.

4.    Filing Administrative Claims.

Any Person that asserts an Administrative Claim, or a protective

application on account of any Administrative Claim, arising before the Confirmation Date,

including Claims under Section 503(b) of the Code, but excluding (a) Administrative Claims for

an expense or liability incurred and payable in the ordinary course of business by the Debtor; (b)

29

fees payable by the Debtor pursuant to 28 U.S.C. §1930 or any interest accruing thereto; (c) claims addressed in Paragraph 19 of the Final DIP Order; (d) fees and costs of professional advisors (e.g., attorneys, financial advisors, and accountants) retained by the Debtor or Creditors' Committee in the Case ("Professional Fee Claims"); and (e) claims that are entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court Order or as may be agreed to by the Debtor, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim, provided that such previously filed application, motion or request was in compliance with the Bankruptcy Court's Order Setting Administrative and Priority Claims Bar Date entered on March 30, 2016 [Doc. No. 748].. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of an Administrative Claim for an expense or liability incurred that is not payable in the ordinary course of business by the Debtor, other than such a Professional engaged or employed by the Debtor, the Committee, the Liquidation Trust and the Litigation Trust, other than as may be otherwise agreed to by the Debtor, shall bar such a claimant from seeking recovery on such Administrative Claim.

5.    Treatment of Administrative Claims.

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, in writing, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim, either: (i) as soon as reasonably practicable after the Effective Date, or (ii) if the Administrative Claim

30

is not Allowed as of the Effective Date, thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim; provided, however, an Allowed Administrative Claim representing obligations incurred in the ordinary course of business of the Debtor may be paid by the Debtor in the ordinary course, consistent with past practice of the Debtor and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such liabilities, without further action by the Holders of such Administrative Claims or further approval by the Bankruptcy Court; and provided, further, that other than Investigation Fees, Allowed Administrative Claims shall not be payable from any Litigation Trust Assets, including, but not limited to the Investigation Loan.

B.    Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim will be paid either (i) the full amount of the Allowed Priority Tax Claim (without post-petition interest or penalty) in Cash on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such lesser amount at such time as to which the holder of an Allowed Priority Tax Claim may agree, in writing.

C.    Fees Under 28 U.S.C. § 1930.

After confirmation, the Liquidation Trustee and the Litigation Trustee shall jointly be responsible for filing joint post-confirmation quarterly financial reports on behalf of the Liquidation Trust and the Litigation Trust. Each respective trust shall be liable for its *pro rata* portion of all United States Trustee quarterly fees as they accrue until the Bankruptcy Court enters a final decree closing this case or enters an order either converting the case to a case under Chapter 7 or dismissing the case.

D.    Professional Fee Claims.

Each Professional whose retention with respect to the Debtor's Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to file with the Bankruptcy Court, and to serve on all parties required to receive notice, a final fee application not later than thirty (30) days following the Effective Date (the "Professional Fee Bar Date"). The failure to timely file the fee application shall result in the Professional Fee Claim being forever barred and discharged. A Professional Fee Claim with respect to which a fee application has been properly and timely filed shall be treated and paid only to the extent allowed by Final Order. All Professional Fee Claims, other than Investigation Fee Claims, shall be paid either by the Debtor or the Liquidating Trust, as applicable; provided, however, that to the extent any Holder of an Allowed Professional Fee Claim holds a retainer regarding such Claim, the retainer shall be applied first to such Claim with the balance of such Claim to be paid by the Debtor or the Liquidating Trust, as applicable. Investigation Fee Claims shall be paid solely from the proceeds of the Investigation Loan. For the avoidance of doubt, the DIP Agent shall not be required to file a fee application in respect of the satisfaction of the DIP Agent's fees and expenses, and the Indenture Trustee shall not be required to file a fee application in respect of its fees and expenses to be paid in accordance with Paragraph 19 of the Final DIP Order.

## ARTICLE III. - CLASSIFICATION OF CLAIMS, INTERESTS AND VOTING.

The following table designates the Classes of Claims and Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Code, and (iii) deemed to reject the Plan.

(a) <u>Acceptance by Impaired Classes</u>. Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote

32

to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

(b)    Voting Presumptions. Claims in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Claims and Equity Interests in Classes that do not entitle the Holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Note Holder DIP Secured Claim | Impaired | Yes |
| Class 3 | Argonaut DIP Secured Claim | Impaired | Yes |
| Class 4 | Senior Notes Claim | Impaired | Yes |
| Class 5 | Other Secured Claims | Impaired | Yes |
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 7 | Interests in the Debtor | Impaired | No (deemed to reject) |

For convenience of identification, the Plan classifies the Allowed Claims in Class 5 as a single Class.  This Class is actually a group of subclasses, and each subclass is treated for all purposes hereunder as a distinct Class.

**ARTICLE IV. - TREATMENT OF UNIMPAIRED CLASSES.**

33

A.   Class 1 – Priority Non-Tax Claims.

The legal, equitable and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to different treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Non-Tax Claim, Cash in an amount equal to such Allowed Priority Non-Tax Claim, either: (i) as soon as reasonably practicable after the Effective Date, or (ii) if the Priority Non-Tax Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.   To the extent that such claims exist, Priority Non-Tax Claims are unimpaired and, as such, are not entitled to vote on the Plan.

**ARTICLE V. - TREATMENT OF IMPAIRED CLASSES OF CLAIMS.**

A.   Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, except as may otherwise be provided by Order of the Bankruptcy Court, the Debtor, the Liquidation Trust, and the Litigation Trust reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

B.   Class 2 —Note Holder DIP Secured Claim.

34

609021587.4

Class 2 consists of the Allowed Note Holder DIP Secured Claim. All Note Holder DIP Secured Claims shall be Allowed in the full amount due and owing under the DIP Documents and Final DIP Order. In full satisfaction of the Allowed Note Holder DIP Secured Claim, on or before the Effective Date, the Litigation Trust and the Liquidating Trust shall enter into the Exit Facility. The Class 2 Claim is Impaired and, as such, the Holders of DIP Secured Claims are entitled to vote on the Plan.

C.     Class 3 – Argonaut DIP Secured Claim.

Class 3 consists of the Allowed Argonaut DIP Secured Claim. All Argonaut DIP Secured Claims shall be Allowed in the full amount due and owing under the DIP Documents and Final DIP Order. In full satisfaction of the Allowed Argonaut DIP Secured Claim, on or before the Effective Date, the Litigation Trust and the Liquidating Trust shall enter into the Exit Facility. The Class 3 Claim is Impaired and, as such, the Holders of Argonaut DIP Secured Claim are entitled to vote on the Plan.

D.     Class 4- Senior Notes Claim.

Class 4 consists of the Allowed Senior Notes Claim, which security interest was affirmed in the Final DIP Order. The Senior Notes Claim shall be Allowed in the full amount of the Senior Notes Pre-Petition Obligations. In satisfaction of the Allowed Class 4 Claim, on or before the Effective Date Allowed Senior Notes Claim Holder shall receive, to the extent not otherwise satisfied by proceeds from collateral, Senior Litigation Trust Interest in the amount of the Adequate Protection Liens to the extent they attach to Trust Causes of Action (as defined in the Final DIP Order), and (ii) a Senior Liquidated Trust Interest, as adjusted by the Senior Note Liquidating Trust Treatment provided in the Final DIP Order. The Senior Litigation Trust Interest shall be paid after payment of all administrative costs of the Litigation Trust, but prior to any payment to Holders of Litigation Trust Beneficial Interests. The Senior Liquidation Trust

35

Interest shall be paid after all other expenses of the Liquidation Trust are paid, but prior to any residual payment to the Litigation Trust. The Class 4 Claim is Impaired and, as such, the Holders of the Senior Notes Claims are entitled to vote on the Plan. All distributions on account of the Senior Notes Claims shall be made by or at the direction of the Indenture Trustee.

E.     Class 5 – Other Secured Claims.

Class 5 consists of the Allowed Other Secured Claims. For purposes of voting and distribution, each Holder of an Other Secured Claim shall be deemed to be classified in a separate subclass of Class 5. Because each of the Other Secured Claims are subordinate to the Note Holder DIP Secured Claim, the Argonaut DIP Secured Claim, and the Senior Notes Claim, the Allowed Class 5 Claims are wholly unsecured and will be treated as general unsecured claims in accordance with Class 6. The Class 5 Claim is Impaired and, as such, the Holders of the Other Secured Claims are entitled to vote on the Plan.

F.     Class 6 – General Unsecured Creditors

Class 6 consists of the collective holders of Allowed Unsecured Claims against the Debtor, which shall include any deficiency claims of the Senior Notes Claims and any (i) Allowed Reserve Unsecured Claims or (ii) Reserve Unsecured Claims that have become Final Reserve Claims. Each Allowed Unsecured Claim shall receive a Pro Rata Share of the Litigation Trust Beneficial Interests and shall be entitled to receive distributions from the Litigation Trust in accordance with the Article VII(D) herein. Distributions from the Litigation Trust to Holders of Allowed Unsecured Claims shall be limited to the amount of each Holder's Allowed Claim, plus interest to the extent allowed under the Plan, the Plan Supplement or otherwise applicable law.

The Class 6 Claim is Impaired and, as such, Unsecured Claims are entitled to vote on the Plan.

36

G.      Class 7 – Interests in the Debtor

Class 7 consists of the collective Interests in the Debtor.  The Debtor's Interests will be cancelled on the Effective Date of the Plan.  Each holder of an Interest shall neither receive nor retain any property or interest in property on account of such Interest and such holder shall have no Claim against the Debtor, the Litigation Trust, the Liquidation Trust or otherwise on account of such cancelled Interest.  Because the Class 7 Interests are being cancelled, Holders of Interests are deemed to reject the Plan and, as such, they are not entitled to vote on the Plan.

**ARTICLE VI. - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.**

To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or unexpired lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 6 Unsecured Claim. The Debtor shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. For the avoidance of doubt, all agreements ancillary to the Debtor's Oil & Gas Leases, including operating agreements, shall be deemed rejected unless specifically assumed.   For the further avoidance of doubt, this section is not intended to reject any federal OCS leases or ROWs.

**ARTICLE VII. - MEANS OF IMPLEMENTATION.**

A.      Transfers of Property.

1.      On the Effective Date, the Debtor shall be deemed to have irrevocably transferred and assigned:

37

        a.     To the Litigation Trust, the Litigation Trust Assets, to hold in trust for the benefit of the all Holders of Allowed Claims with respect to the Debtor pursuant to the terms of this Plan and of the Litigation Trust Agreement.  Except as otherwise provided by this Plan or the Litigation Trust Agreement, upon the Effective Date, title to the Litigation Trust Assets shall pass to the Litigation Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Code, except for the liens relating to the Investigation Loan, the Roll Up Investigation Loan and the previously granted Adequate Protection Liens, which shall continue to encumber the Litigation Trust Assets to the same validity, extent and priority as existed prior to the Effective Date.  For the avoidance of doubt, all rights and causes of action against Platinum shall be transferred to the Litigation Trust and shall constitute Litigation Trust Assets, all of which rights and causes of action are expressly reserved.

        b.     To the Liquidation Trust, the Liquidation Trust Assets, to hold in trust for the benefit of the all Holders of Allowed Claims with respect to the Debtor pursuant to the terms of this Plan and of the Liquidation Trust Agreement.  Except as otherwise provided by this Plan or the Liquidating Trust Agreement, upon the Effective Date, title to the Liquidation Trust Assets, shall pass to the Liquidation Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Code.  Platinum objects to the composition of the Liquidation Trust.

609021587.4

B.     Dissolution of the Debtor.   Following the transfers contemplated in Article VII(A), above, the Debtor shall be deemed dissolved.   The Liquidation Trustee shall have all power to wind up the affairs of the Debtor under applicable state laws in addition to all the rights, powers, and responsibilities conferred by the Code, the Plan, the Liquidation Trust Agreement, and may, but shall not be required to dissolve the Debtor under applicable state law.

C.     Northstar Assets

1.     Transfer of Assets Upon Agreement. On or before the Effective Date, assuming that the Debtor has obtained BOEM's consent to such transfer, the Debtor shall transfer the Northstar Assets to Northstar, to the extent the Debtor and Northstar reach agreement on terms, and upon consent of the DIP Lenders and DIP Agent either (i) pursuant to Section 363 of the Bankruptcy Code on or prior to the Confirmation Date, or (ii) pursuant to 1129 of the Bankruptcy Code, under the Confirmation Order. The bond collateral related to such transaction shall be distributed in accordance with the DIP Agreement.   For the avoidance of any doubt, nothing in this paragraph shall impinge on the regulatory authority of BOEM, in the exercise of its regulatory authority, to either approve or disapprove any contemplated transfer of the Northstar Assets.

D.     The Litigation Trust.

1.     Formation of the Litigation Trust.   On or before the Effective Date, the Litigation Trust Agreement shall be executed by the Debtor and the Litigation Trustee, and all other necessary steps shall be taken to establish the Litigation Trust.

2.     Causes of Action to be Transferred to and Retained by the Litigation Trust.  A schedule identifying and describing the claims and causes of action to be transferred and retained by the Litigation Trust is attached to the Disclosure Statement as **Exhibit E**.

3.     Material Terms of Litigation Trust Agreement.  The following provisions

39

of this section are intended to summarize the material terms of the Litigation Trust Agreement, which shall control the formation, operations and dissolution of the Litigation Trust. In the event of any conflict between the terms of this section and the terms of the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall govern.

4. <u>Purpose of Litigation Trust.</u> The Litigation Trust shall be established only for the purposes of prosecuting and resolving, in the name of the Debtor and/or the name of the Litigation Trustee, Trust Causes of Action (as defined in the Final DIP Order), to prosecute and resolve objections to Disputed Claims against the Debtor that are payable from the Litigation Trust Asset, and liquidating and distributing its assets, with no objective to continue or engage in the pursuit of a trade or business.

5. <u>The Litigation Trustee.</u> On or before the Effective Date, the Creditors' Committee and the Backstop Lenders shall jointly select the Litigation Trustee. The Creditors' Committee and the Backstop Lenders shall notify, and consult with, the United States regarding its selection of the Litigation Trustee.

6. <u>Authority of Litigation Trustee.</u> Subject only to the limitations contained in this Plan or in the Litigation Trust Agreement, the Litigation Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers: (A) the power and authority to hold, manage, sell, and distribute the Litigation Trust Assets in accordance with the Plan, (B) the power and authority to prosecute and resolve, in the name of the Debtor and/or the name of the Litigation Trustee, the Litigation Trust Assets, (C) the power and authority to prosecute and resolve objections to Disputed Claims against the Debtor that are payable from the Litigation Trust Assets, and (D) the power and authority to perform such other functions as are provided in the Plan and Litigation Trust Agreement.

7. <u>Governance of Litigation Trust.</u> The Litigation Trust shall be governed by

40

the Litigation Trust Committee in accordance with the Litigation Trust Agreement and consistent

with the Plan.  Subject to and qualified by the provisions of the Litigation Trust Agreement, after

the Effective Date, if a member of the Litigation Trust Committee has its claim paid or sells its

claim, that member will resign from the Litigation Trust Committee and will be replaced by vote

of the remaining members, provided, however, that the new member must be from the same

Class as the resigning member, or a representative thereof.

       8.    <u>Priority of Distribution of Litigation Trust Assets</u>.  The Litigation Trust,

through the Litigation Trustee and with the oversight of the Litigation Trust Committee, shall be

responsible for paying the following Claims (in the order of priority shown) from the Litigation

Trust Assets: (i) the Investigation Loan; (ii) the Roll Up Investigation Loan; (iii) the Senior

Litigation Trust Interest; (iv) Final Reserve Claims that were initially classified as either Fully-

Allowed Reserve Claims or 60/40 Reserve Claims; (v) Allowed Non-Tax Priority Claims; and

(vi) Allowed Unsecured Claims including Final Reserve Claims that were initially classified as

Allowed Reserve Unsecured Claims or Reserve Unsecured Claims.  For the avoidance of doubt,

all expenses of the Litigation Trust that are directly related to Causes of Acton which are also

Litigation Trust Assets shall be taxed against the gross proceeds of the Litigation Trust and shall

be satisfied prior to any liens against the Litigation Trust Assets.  Other than the enumerated

claims, no claims against the Debtor or its Estate shall be charged to the Litigation Trust.

       9.    <u>Procedure for Distribution of Litigation Trust Assets</u>.  The Litigation

Trustee shall distribute Cash in accordance with the Litigation Trust Agreement, beginning on

the Effective Date or as soon thereafter as is practicable, from the Litigation Trust Assets on

hand (including any Cash received from the Debtor on the Effective Date), except such amounts

(i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been

Allowed, prior to the time of such distribution (but only until such Claim is resolved), (ii) as are

41

reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during litigation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Litigation Trust or in respect of the Litigation Trust Assets), and (iv) to satisfy other liabilities incurred by the Litigation Trust in accordance with this Plan or the Litigation Trust Agreement.  Any distributions on account of any Final Reserve Claims shall be made to the party or parties selected by the Regulatory Agencies in their sole and exclusive direction.  The Regulatory Agencies may, in their sole discretion, direct that any distributions made on account of their Final Reserve Claims be transferred to either: (i) the Liquidation Trust, which shall hold any such distributions in reserve for the benefit of the Regulatory Agencies for the purpose of carrying out any decommissioning directed by the Regulatory Agencies; or (ii) to a separate account that shall be specified to the Litigation Trustee by such Regulatory Agencies.

        10.    <u>Compensation of the Litigation Trust Committee and Litigation Trustee.</u> The members of the Litigation Trust Committee and the Litigation Trustee shall be entitled to reasonable compensation as set forth in the Litigation Trust Agreement.

        11.    <u>Retention of Professionals by the Litigation Trustee</u>.  The Litigation Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Litigation Trustee on such terms as the Litigation Trustee deems appropriate without Bankruptcy Court approval.   The Litigation Trustee may retain any professional who represented parties in interest in the Bankruptcy Case, which may also be the same counsel retained by the Liquidation Trustee.

        12.    <u>Tax Returns.</u>  The Litigation Trustee shall file all necessary tax returns and other filings with governmental authorities on behalf to the Litigation Trust and the Litigation Trust Assets held therein pursuant to the terms of the Litigation Trust Agreement.

        13.    <u>Dissolution</u>.  The Litigation Trust and the Litigation Trustee shall be

discharged or dissolved, as the case may be, at such time as (i) all Litigation Trust Assets have been liquidated, and (ii) all distributions required to be made by the Litigation Trustee under the Plan have been made, but in no event shall the Litigation Trust be dissolved later than three (3) years from the Effective Date absent Bankruptcy Court approval.

14.     Indemnification of Litigation Trustee.  The Litigation Trustee and the Litigation Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Litigation Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Litigation Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary due, or *ultra vires* acts.  Any indemnification claim of the Litigation Trustee, its agents or professionals, shall be satisfied from the Litigation Trust Assets.  The Litigation Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

E.     The Liquidation Trust.

1.     Formation of the Liquidation Trust.  On or before the Effective Date, the Liquidation Trust Agreement shall be executed by the Debtor and the Liquidation Trustee, and all other necessary steps shall be taken to establish the Liquidation Trust.

2.     Assignment of the Services Agreement to the Liquidation Trust.  On the Effective Date, the Debtor shall be deemed to assign all of its right, title and interest in the Montco Services Agreement to the Liquidation Trust as well as the other agreements listed on **Exhibit A** attached to the Disclosure Statement.  The Liquidation Trustee shall assume and perform all of the Debtor's obligations under the Montco Services Agreement.  JAB and Montco

43

will be responsible for performing all mandatory compliance obligations, including: (i) Maintenance and Monitoring Obligations (which shall include maintaining an OSRP pursuant to 30 C.F.R. §§ 254 *et seq*.) and (ii) maintaining any required insurance, as required by BSEE and applicable federal regulations for all facilities encompassed by their respective P&A Plans. To the extent that mandatory compliance obligations pertaining to the public health and safety are not performed by either JAB or Montco for the transferred leases under their respective P&A Plans, such health and safety obligations will be funded through the DIP Exit Facility and performed by a contractor chosen by the Liquidation Trustee; provided, however, that sufficient funds shall be set aside and reserved in the Exit Facility to fully fund any Maintenance and Monitoring obligations, or other health and safety obligations, that will not be satisfied by either Montco or JAB; provided, further, however that the Exit Facility Lenders shall not be compelled or obligated to fund amounts in excess of the Exit Facility to fund health and safety obligations.

   3. <u>Material Terms of the Liquidation Trust Agreement.</u> The following provisions of this section are intended to summarize the material terms of the Liquidation Trust Agreement, which shall control the formation, operations and dissolution of the Liquidation Trust. In the event of any conflict between the terms of this section and the terms of the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall govern.

   a. <u>Purpose of Liquidation Trust.</u> The Liquidation Trust shall be established for the general purposes of winding up the Debtor's business, resolving all P&A Obligations associated with the Debtor's operations, and liquidating and distributing the Liquidation Trust's Assets, with no objective to continue or engage in the pursuit of a trade or business other than to: (i) serve as an independent decommissioning agent for the Regulatory Agencies to oversee and administer the decommissioning of certain federal OCS leases and rights-of-way if so requested by the Regulatory Agencies pursuant to the terms of a

44

Decommissioning Trust Agreement that may be separately entered into by the Liquidation Trustee and the United States and (ii) collect and apply any bond proceeds, or other funds that may be transferred to the Liquidation Trust from the Litigation Trust, for the purposes of decommissioning certain federal OCS leases and rights of way as may be requested by the Regulatory Agencies, subject to the conditions and limitations set forth in the Liquidation Trust Agreement and any separate Decommissioning Trust Agreement that may separately be entered into by the Liquidation Trustee and the United States.

b. <u>The Liquidation Trustee</u>. On or before the Effective Date, the Debtor, the Backstop Lenders and the Regulatory Agencies shall jointly select the Liquidation Trustee. The same Person may serve as both the Litigation Trustee and the Liquidation Trustee.

c. <u>Authority of Liquidation Trustee</u>. Subject only to the limitations contained in this Plan or in the Liquidation Trust Agreement, the Liquidation Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers: (A) the power and authority to hold, manage, sell, and distribute the Litigation Trust Assets in accordance with the Plan, (B) the power and authority to prosecute and resolve, in the name of the Debtor and/or the name of the Liquidation Trustee, Liquidation Trust Assets; (C) the power and authority to prosecute and resolve objections to Disputed Claims against the Debtor that are payable from the Liquidation Trust Assets, (D) the power and authority to perform such other functions as are provided in the Plan and Liquidation Trust Agreement including serving as an independent decommissioning agent at the request of the Regulatory Agencies, and (E) any other act that the Liquidation Trustee deems in the best interest of the Liquidation Trust.

d. <u>Governance of Liquidation Trust</u>. The Liquidation Trust shall be governed by the Liquidation Trust Committee in accordance with the Liquidation Trust Agreement and consistent with the Plan. After the Effective Date, if a member of the Liquidation

45

Trust Committee has its claim paid or sells its claim, that member will resign from the Liquidation Trust Committee and will be replaced by vote of the remaining members, provided, however, that the new member must be from the same Class as the resigning member, or a representative thereof.

e.    Distribution of Liquidation Trust Assets.  The Liquidation Trustee shall be responsible for making distributions from the Liquidation Trust Assets as provided by the Plan and the Liquidation Trust Agreement.

f.    Procedure for Distribution of Liquidation Trust Assets.  The Liquidation Trustee shall distribute Cash in accordance with the Liquidation Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidation Trust Assets on hand (including any Cash received from the Debtor on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidation Trust Assets during litigation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidation Trust or in respect of the Liquidation Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidation Trust in accordance with this Plan or the Liquidation Trust Agreement.

g.    Compensation of the Liquidation Trust Committee and Liquidation Trustee.  The members of the Liquidation Trust Committee and the Liquidation Trustee shall be entitled to reasonable compensation as set forth in the Liquidation Trust Agreement.

h.    Retention of Professionals by the Liquidation Trustee.  The Liquidation Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Liquidation Trustee on such terms as the Liquidation Trustee deems

46

appropriate without Bankruptcy Court approval. The Liquidation Trustee may retain any professional who represented parties in interest in the Bankruptcy Case.

i.      Tax Returns.    The Liquidation Trustee shall file all necessary tax returns and other filings with governmental authorities on behalf to the Liquidation Trust and the Liquidation Trust Assets held therein pursuant to the terms of the Liquidation Trust Agreement.

j.      Dissolution.    The Liquidation Trust and the Liquidation Trustee shall be discharged or dissolved, as the case may be, at such time as (i) all Liquidation Trust Assets have been liquidated, and (ii) all distributions required to be made by the Liquidation Trust under the Plan have been made, but in no event shall the Liquidation Trust be dissolved later than three (3) years from the Effective Date absent Bankruptcy Court approval.

k.      Indemnification of Liquidation Trustee.    The Liquidation Trustee and the Liquidation Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidation Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidation Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary due, or *ultra vires* acts.    Any indemnification claim of the Liquidation Trustee, its agents or professionals, shall be satisfied from the Liquidation Trust Assets.    The Liquidation Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

F.      P&A Escrows.

For the avoidance of doubt, on the Effective Date, any interest, the Debtor's possess, reversionary interest or otherwise (if any), in the P&A Escrows shall be deemed

47

transferred to the Liquidation Trust, subject to the liens of the Noteholder DIP Lenders, DIP Superpriority Claim and the liens of the Delaware Trust as Indenture Trustee for the Senior Notes to the extent provided in the Final DIP Order, and such interest shall become property of the Liquidation Trust. Each P&A Escrow shall be used in accordance with the applicable agreements to satisfy the Debtor's P&A Obligations with respect to the wells for which the Debtor and the predecessor-in-interest established the P&A Escrow provided the applicable agreement permits such use, which shall expressly include, for each of the P&A Escrows, all rights and reservations granted to Merit, W&T, and Maritech under the Final DIP Order or otherwise existing pursuant to any applicable contract, agreement or at law. If assets remain in any P&A Escrow after satisfaction of such P&A Obligations, and the applicable agreements provide for the return or reversion of funds to Debtor, such assets shall be transferred to the Liquidation Trust and become property of the Liquidation Trust. Nothing in the Plan shall modify, alter, amend, vacate, impair, subordinate, or affect he rights, claims, liens, obligations, and other terms of the prior orders in the Bankruptcy Case involving Merit Energy Company, LLC, other co-owners, predecessor owners, and Debtor, including the orders entered on September 29, 2015 (the "JAB-Merit Order") (Doc. 230), October 28, 2015 (the "9019 Order") (Doc. 368), and January 19, 2016 ("Merit Cash Collateral Order") (Doc. 609).

G.     Comprehensive Settlement of Claims and Controversies.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims and Interests or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. Entry of the Confirmation Order will constitute the Bankruptcy Court's

approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises are (a) in the best interests (x) of the Debtor and its Estate and property, and (y) of the Claim and Interest Holders; and (b) fair, equitable, and reasonable.

H.    Distributions to Holders of Senior Notes Claims.

Notwithstanding any provision of the Plan to the contrary, distributions to Holders of Senior Notes Claims shall be made to or at the direction of the Indenture Trustee which shall act as disbursing agent for distributions to the Holders of Senior Notes Claims. The Indenture Trustee may transfer or direct the transfer of such distributions directly through the facilities of the Depository Trust Company ("DTC") (whether by means of book-entry exchange, free delivery or otherwise) and will be entitled to recognize and deal for all purposes under the Plan with Holders of Senior Notes Claims to the extent consistent with the customer practices of DTC. Such distributions shall be subject in all respects to the right of the Indenture Trustee to assert its charging lien or priority of payment under the Indenture against such distributions.

I.    Additional Provisions.

1.    Procedures For Resolving Disputed Claims.

a.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court, after notice and a hearing, and except as otherwise provided in the Plan, only the Liquidation Trustee and the Litigation Trustee shall have the right to make and file objections to Claims, subject to prior orders of the Bankruptcy Court.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Interests shall be filed with the Court and served upon the Holders of each of the Claims and Interests to which objections are made within 90

49

days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any Order in aid of Confirmation shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtor, the Liquidation Trust, and the Litigation Trust, as applicable, shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.      Estimation of Claims.

Pursuant to the Plan, the Debtor, the Liquidation Trust and the Litigation Trust may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Code for purposes of determining the Allowed amount of such Claim, regardless of whether the Debtor or any other Party In Interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor, the Liquidation Trust, and the Litigation Trust

50

may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

> 2.  Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as a Claim becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Claim for purposes related to allocations, Distributions, and voting under the Plan.

> 3.  Disallowance of Certain Claims and Interests.

According to the Plan, all Claims held by Entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed Claims, pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor, the Liquidation Trust or the Litigation Trust.

> 4.  Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

> 5.  Preservation of Causes of Action.

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into or effected in connection with or pursuant to the Plan, in accordance with Bankruptcy Code section 1123(b), any and all claims and causes of action that were owned by the Debtor's or their Estates as of the Effective Date, (except the Grand Isle Claims or claims related to the Northstar Collateral), including, but not limited to, all Avoidance Actions, shall vest in the Litigation Trust on the Effective Date and the Litigation Trust Trustee, shall have the exclusive right to pursue and enforce such claims and causes of action. For the avoidance of doubt, the Litigation Trust Assets shall vest in the Litigation Trust as Litigation Trust Assets. The Grand Isle Litigation Claims and claims related to the Northstar Collateral shall vest in the Liquidating Trust as a Liquidating Trust Asset subject to the liens as set forth in the Final DIP Order on the Effective Date and the Liquidation Trust Trustee shall have the exclusive right to pursue and enforce the Grand Isle Litigation Claims and the claims related to Northstar Collateral.

## ARTICLE VIII. — MISCELLANEOUS.

A.    <u>Effects of Confirmation.</u>

1.    <u>Amendments to the Plan.</u>

The Debtor reserves all rights to amend, alter, or withdraw this Plan before conclusion of the hearing on Confirmation and to amend, modify, or alter this Plan after the Confirmation Date, all in accordance with the applicable provisions of the Code.

2.    <u>Authority to Effectuate the Plan.</u>

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Debtor, the Liquidation Trust, and the Litigation Trust shall be authorized, without further application to or Order of the Bankruptcy Court to take

52

whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

      3.      Termination of the Committee.

      Upon the Effective Date, the Committee shall dissolve, and their members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case. The retention and employment of the Professionals retained by the Committee shall terminate as of the Effective Date; provided, however, that the Committee shall exist and their Professionals shall be retained, after such date with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code.

      4.      Post-Confirmation Status Report.

      Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Liquidation Trust and Litigation Trust shall file a status report, which reports may either be filed separately or combined and filed together, with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

      5.      Retention of Professionals.

      The Debtor, the Liquidation Trust or the Litigation Trust may retain professionals on such terms as they deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may also continue to serve the Liquidation Trust or the Litigation Trust.

      6.      Reservation of Rights in Favor of the United States.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or elsewhere in any Confirmation

53

Order that may be entered by the Bankruptcy Court, nothing shall preclude, bar or enjoin the United States of America, or its agencies, from taking any and all actions to: (i) enforce its police or regulatory powers; (ii) regulate and administer its federal programs; or (iii) assert any setoff or recoupment rights they may have (all of which are expressly preserved). For the avoidance of doubt, nothing in the Plan, the Plan Supplement or elsewhere in any Confirmation Order that may be entered by the Bankruptcy Court, shall preclude, bar, or enjoin the United States of America, or its agencies, from bringing any claim, action, proceeding, defense or cause of action to the extent such claim, action, proceeding, defense, or cause of action is permitted by 11 U.S.C. § 1141, including, without limitation, as provided by 11 U.S.C. § 1141(d)(3) and 11 U.S.C. § 727(a).

7.     <u>Cancellation of Notes, Instruments, and Interests.</u>

On the Effective Date, except as otherwise provided for in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, the Indenture and all other instruments or agreements evidencing any Claim or Interests, shall be deemed automatically extinguished and cancelled with respect to the Debtor only, without any further act or action under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtor under the Indenture, and all other instruments evidencing any Claims or Interests shall be automatically discharged. The Holders of or parties to such cancelled notes and all other agreements and instruments shall have no rights against the Debtor arising from or relating to such notes, Indenture, and all other agreement and instruments or the cancellation thereof, except the rights provided pursuant to the Plan. Notwithstanding the foregoing, and notwithstanding confirmation or consummation of the Plan, and such indenture or agreement that governs the rights of a Holder of a Claim shall continue in effect (and the Indenture Trustee shall remain as trustee, register and paying agent) for the purposes of: (1) allowing Holders to receive

54

distributions under the Plan; and (2) allowing the Indenture Trustee to make the distributions in accordance with the Plan and the Indenture, as applicable; (3) preserving any rights of the Indenture Trustee to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the relevant indenture, including any rights to priority or payment and/or to exercise charging liens; (4) to permit the Indenture Trustee to enforce any obligations owed to it under the Plan; (5) to permit the Indenture Trustee to appear in the case or any proceeding in the case in which it is or may become a party.  Nothing herein or under this Plan shall modify, alter, or cancel any escrow agreement, security interests, or other rights of third parties related to the P&A Escrows.

For the avoidance of doubt, notwithstanding any other provision of the Plan, or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, no Holder of an Allowed Claim shall be entitled to receive, on account of their Claim, more than the Allowed Claim amount, plus interest to the extent allowed under the Plan, or any agreement, instrument or other document incorporation in the Plan or the Plan Supplement or by otherwise applicable law.

B.    Conditions to Effectiveness.

The Effective Date shall not occur until all of the following conditions have been satisfied:

1.    The entry of the Confirmation Order by the Bankruptcy Court and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

55

2. Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all Persons, except as set forth in the Plan, from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtor, or any property thereof, or against any of the Debtor's transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

3. All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtor, unless waived in writing.

4. All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered.

5. All authorizations, consents and regulatory approvals, if any, required by the Debtor in connection with the consummation of the Plan are obtained and not revoked.

6. All General Administrative Claims, and Priority Tax Claims shall be disallowed or estimated in an amount less than $600,000 in the aggregate.

7. All of the Obligations (as defined in the DIP Agreement) under the DIP Documents, including without limitation the fees and expenses of the DIP Agent as set forth in the DIP Documents, shall be indefeasibly satisfied in full pursuant to the terms of the Plan.

8. All reasonable and documented fees and expenses of the Indenture Trustee shall be paid in accordance with Paragraph 19 of the Final DIP Order.

9. Upon the satisfaction or waiver of each of the foregoing conditions, the Debtor shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become effective without further Order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein have been met or waived by the Debtor.

56

C.      Exculpation, Limited Liability and Release of Debtor.

*Neither the Debtor, the Creditors' Committee, the Indenture Trustee, the Holders of Senior Notes, the Initial DIP Lender, the DIP Agent, the DIP Lenders, Montco nor any of their respective members, officers, directors, employees, advisors, professionals, independent contractors or agents (collectively, "Exculpation and Released Parties") shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of the Bankruptcy Case, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and except for Montco, with respect to Montco's obligations under the Montco Services Agreement, and, in all respects, the Exculpation and Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

*Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, for the good and valuable consideration provided by each of the Exculpation and Released Parties the adequacy of which is hereby confirmed, the Exculpation and Released Parties are deemed released and discharged by the Debtor and its Estate from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, its Estate, or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other entity, based on or relating to, or in any manner arising*

57

*from, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Exculpation and Released Parties, the restructuring of claims and interests prior to or during this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or any related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of the Exculpation and Released Parties that constitutes actual fraud, willful misconduct, or gross negligence, provided, however, except as to Zach Weiner solely in his capacity as post-petition board member of the Debtor, nothing in this section or the Plan shall release, waive or otherwise serve as a defense for Platinum or any director, officer, employee, control person or insiders (an insider as defined under the Bankruptcy Code) of Platinum.*

*Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.*

*Nothing contained in this Plan shall operate as a release, waiver, or discharge of any Claim, Cause of Action, right or other liability against members of the Creditors' Committee in any capacity other than as a member of the Creditors' Committee.*

*Notwithstanding anything to the contrary in the Plan, the Plan documents or elsewhere in the Confirmation Order, nothing shall release, discharge or immunize any third party or*

*non-debtor entity from any debt, obligation, liability, claim, action, proceeding, defense or cause of action in connection with any claim, action, proceeding, defense or cause of action, brought, or that may be brought, by the United States of America or its agencies including, without limitation, as may otherwise be provided for in this section.*

      D.    <u>Retention of Jurisdiction.</u>

        After the Effective Date, the Debtor, the Liquidation Trust or the Litigation Trust will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in tis Bankruptcy Case with respect to the following matters:

        1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

        2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtor's Bankruptcy Cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Liquidation Trust or the Litigation Trust Trusts in the ordinary course of business without a Bankruptcy Court Order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

        3.    Any adversary proceedings or contested matters brought by the Liquidation Trust or the Litigation Trust, including but not limited to the Causes of Action;

4. All controversies and disputes arising under or in connection with the Plan;

5. The enforcement and interpretation of the provisions of the Plan;

6. The issuance of such Orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7. Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8. All Claims arising from the rejection of any executory contract or lease;

9. Such other matters as may be provided for in the Code or the Plan;

10. The protection of property of the estate from adverse claims or interference inconsistent with the Plan; and

11. Ensuring that Distributions are accomplished, as provided herein, and resolving any dispute concerning the right of any Person to a Distribution hereunder, under applicable law, or under a contract or agreement.

E. <u>Subrogation.</u> Except as otherwise expressly set forth in the Plan, parties shall retain all subrogation rights under otherwise applicable law, including Section 509 of the Bankruptcy Code.

F. <u>Special Tax Provisions.</u>

Pursuant to Section 1146(a) of the Code and the Plan, the issuance, transfer, or exchange of notes or securities under the Plan; the creation of any mortgage, deed of trust, or other security interest; the making or assignment of any lease of sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection

60

with the Plan shall not be subject to any stamp, real estate transfer, documentary, registration, sales, added-value, mortgage release, mortgage recording, or similar tax.

G.      Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

H.      Cramdown.

The Debtor reserves the right to seek confirmation of the Plan under Section 1129(b) of the Code.

I.      Argonaut Reservation of Rights.

Notwithstanding anything else contained in this Plan or in any of the Plan Supplement documentation (including, but not limited to, the Liquidating Trust Agreement or the Litigation Trust Agreement), but subject to appropriate treatment under the Bankruptcy Code, nothing herein shall limit, amend, affect, or minimize (i) Argonaut's rights under the Pre-Petition Argo Indemnity and Collateral Documents (as defined in the Final DIP Order) in relation to the Debtor and any third party, (ii) any rights of Argonaut in any collateral transferred to Argonaut pursuant to the Final DIP Order itself, and (iii) Argonaut's cross-collateralization rights associated with all collateral associated with any surety bonds it has posted for the benefit of the Debtor or the Liquidating Trust against any and all such surety bonds.

J.      Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States mail to the following:

If to the Debtor:

Black Elk Energy Offshore Operations, LLC

61

609021587.4

3100 S. Gessner, Ste. 215
Houston, TX 77002

With copies to:

Counsel for the Debtor:

Baker & Hostetler, LLP
Elizabeth A. Green, Esq.
Fed ID No. 903144
Email: egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
Fed. ID No. 2687598
Email: jparrish@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
**Baker & Hostetler, LLP**
Jorian L. Rose, Esq.
(*admitted pro hac vice* 9/02/2015)
Email: jrose@bakerlaw.com
45 Rockefeller Plaza
New York, New York
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
*Counsel for Debtor*

K.      <u>Manner of Payment.</u>

Any payment of Cash made under this Plan may be made either by check, by wire
transfer, by automated clearing house transfer, or by other commercially reasonable means from
a domestic bank, at the option of the Debtor, the Liquidation Trust or the Litigation Trust, as
applicable.

L.      <u>Compliance with Tax Requirements.</u>

In connection with this Plan, to the extent applicable, the Debtor, the Liquidation
Trust or the Litigation Trust in making distributions under this Plan shall comply with all tax
withholding and reporting requirements imposed on it by any governmental unit and all

62

Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Debtor, the Liquidation Trust or the Litigation Trust may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Debtor, the Liquidation Trust or the Litigation Trust, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtor, the Liquidation Trust or the Litigation Trust, as applicable, to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Debtor, the Liquidation Trust or the Litigation Trust the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

> M.     Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a Distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive Distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor, the Liquidation Trust

609021587.4

or the Litigation Trust pursuant to Bankruptcy Rule 3001(e); or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules not defined or in the Debtor's books and records.

N.      Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any Unclaimed Property distributed under this Plan, shall be forfeited and such Distribution together with all interest earned thereon shall become an asset of the Liquidation Trust.

O.      Fractional Cents; Multiple Distributions.

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that Cash remains undistributed as a result of rounding of such fractions, such Cash shall be treated as Unclaimed Property under the Plan.

P.      Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

Q.      Modification of Plan.

The Debtor may amend or modify this Plan in accordance with Section 1127(b) of the Code, or remedy a defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

609021587.4

Dated:  June 20, 2016
           Houston, Texas

Respectfully submitted,

**BAKER & HOSTETLER, LLP**

*/s/ Elizabeth A. Green*
_____

Elizabeth A. Green, Esq.
Fed ID No. 903144
Email: egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
Fed. ID No. 2687598
Email: jparrish@bakerlaw.com
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: (407) 649-4000
Facsimile:  (407) 841-0168

Pamela Gale Johnson
State Bar No. 10777700
Fed ID No. 4481
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone:  (713) 646-1324
Facsimile:  (713) 751-1717
E-mail:  pjohnson@bakerlaw.com

Jorian L. Rose, Esq.
(*admitted pro hac vice 9/02/2015*)
Email: jrose@bakerlaw.com
45 Rockefeller Plaza
New York, New York
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201

*Counsel for Debtor*