**<u>EXHIBIT L</u>**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

OFFSHORE TECHNICAL SOLUTIONS, LLC      CIVIL ACTION NO.

VERSUS

     SECTION   " "

JAB ENERGY SOLUTIONS, LLC, JAB ENERGY
SOLUTIONS II, LLC, AND ALLISON MARINE
HOLDINGS, LLC      MAGISTRATE   " "

_____

**<u>COMPLAINT</u>**

The Complaint of OFFSHORE TECHNICAL SOLUTIONS, LLC, ("Offshore

Technical"), a Louisiana limited liability company with its principal place of business in the State

of Louisiana, specifically the Parish of Terrebonne, with respect represents as follows:

1.

This is claim relating to services rendered in connection with the decommissioning of oil

and gas wells and removal of offshore platforms in the Gulf of Mexico and for breach of contract

and associated damages arising out of the breach of said contract and/or rendered on open account.

The work on said property was performed on the Outer Continental Shelf in the Gulf of Mexico in

United States Territorial Waters.

2.

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, Federal Question

Jurisdiction, as this matter arises under the Outer Continental Shelf and Lands Act, 43 U.S.C. §

1331, *et seq*.

Page 1 of 16

3.

Venue is proper in this, the Eastern District of Louisiana, because plaintiff, Offshore Technical, resides in this district and maintains its principal place of business in Louisiana within the jurisdiction of this court, specifically in Terrebonne Parish. Additionally, the place of negotiation and confecting of the Master Service Agreement which is directly an issue in this litigation was within this judicial district, again in Terrebonne Parish.

4.

The plaintiff herein is:

> a) **OFFSHORE TECHNICAL SOLUTIONS, LLC**. ("Offshore Technical"), a domestic (Louisiana) limited liability company with its principal place of business in the Parish of Terrebonne, State of Louisiana, at 690 S. Hollywood Road, Houma, Louisiana 70360.

5.

The defendants are:

a) **JAB ENERGY SOLUTIONS, LLC** ("JAB"), a domestic limited liability company doing business in this judicial district and state, who at all material times, maintained and currently maintains its principal office and its principal place of business in the State of Louisiana at 9828 HWY 182 E, Morgan City, Louisiana 70381 and its principal place of business in the State of Texas at 19221 I45 South, Suite 324, Shenandoah, Texas 77385;

b) **JAB ENERGY SOLUTIONS II, LLC** ("JAB-II"), a foreign limited liability company (Delaware) maintaining its principal place of business in the State of Texas, specifically at 19221 I45 South, Suite 324, Shenandoah, Texas 77385; and

c) **ALLISON MARINE HOLDINGS, LLC** ("Allison Marine"), a foreign (Delaware) limited liability company maintaining its principal place of business in the State of Texas at 19221 I45 South, Suite 324, Shenandoah, Texas, 77385 and its Principal Business Establishment in Louisiana at 9828 HWY 182 E, Morgan City, Louisiana 70381.

6.

The parties defendant, and each of them, are liable, jointly, severally and *in solido*, unto plaintiff, Offshore Technical Solutions, LLC. as alter-egos of one another, alternatively a single business enterprise, or as co-obligors for the sum of $564,467.64 in amounts owed under contract with interest through April 1, 2021 and thereafter per diem interest in the amount of $178.15 per day, plus attorney's fees and costs associated with the filing of suit and other damages as prayed for herein, for the following reasons.

### GENERAL ALLEGATIONS
*(The Parties Plaintiff and Defendant and Their Relationship to One Another)*

7.

Plaintiff, Offshore Technical Solutions, LLC, is a locally owned company headquartered in Houma, Louisiana (Terrebonne Parish) that provides services to the oil and gas industry, specifically abrasive cutting, cold cutting and coating removal as well as providing equipment and personnel in connection with those services in and around the Gulf of Mexico.

8.

Plaintiff is generally aware of the company known as JAB which has been in business for some time as a Louisiana limited Liability Company headquartered in Morgan City, Louisiana.

9.

After discussions were had with representatives of JAB, specifically Joshua Towns and Alan Vando, about Offshore Technical working for the company it knew and knows presently as JAB, and after doing due diligence on JAB (website, etc.) Offshore Technical was presented with a Master Service Agreement to execute. A copy of the Master Service Agreement is attached hereto

as Exhibit "1". The agreement is signed by Alan Vando for Brent Boudreaux in his capacity as "President" of JAB Energy Solutions, II, LLC; however, at the time it was not made clear to anyone at Offshore Technical that JAB Energy Solutions, II LLC and JAB Energy Solutions, LLC. were anything other than one and the same.

10.

At the time, unbeknownst to plaintiff, Offshore Technical, Brent Boudreaux was not only an officer in JAB Energy Solutions, LLC (Louisiana) the company it knew and had worked for previously and the company it had performed its due diligence on, but was also apparently an officer or director in JAB Energy Solutions, II, LLC, a Delaware limited liability company similarly named as part of a more comprehensive plan by defendants, that Offshore Technical had never heard of before. In fact, as the following illustrates, despite the agreement being in the name of JAB-II, in the months that ensued, Offshore Technical worked for "JAB" under the JAB-II MSA. Upon information and belief, plaintiff alleges that JAB and JAB-II are alter egos of one another set up by the parent of both, Allison Marine Holdings, LLC in furtherance of a general beclouding and misrepresentation on the market and for other reasons as will be shown at trial.

11.

By way of example, and not by way of exclusion, in August of 2018, working under the supposed MSA with JAB-II, Offshore Technical went out on a job for which they were ultimately paid by JAB, working with JAB employees, for the benefit of JAB, not JAB-II. Attached as Exhibit 2 is a copy of an email between the "project manager" on the 2018 job, Joshua Towns, and Richard Burgo, the general manager of plaintiff, Offshore Technical. In the email, which is incorporated by reference as if pleaded herein *in extenso* for all purposes, Joshua Towns asks plaintiff for advice

about costs asking, "*What is my cost to this point by day*." The email was sent from jtowns@jabenergysolutions.com and Mr. Town's signature block indicates he is acting specifically for "JAB Energy Solutions, LLC", which is the defendant referred to herein as JAB, not JAB-II.

<div align="center">12.</div>

Assuming for purposes of this pleading that Mr. Towns was not intending on paying the project costs from his own funds, the reference "my" is to the company he is purportedly acting on behalf of and the company Offshore Technical was led to believe it was working for, JAB Energy Solutions, LLC out of Morgan City, Louisiana.

<div align="center">13.</div>

On September 26, 2019, Offshore Technical was paid in stages for services rendered on what is refers to herein throughout as the "previous job", the one that commenced in late 2018 and the job which Joshua Towns as an employee of JAB Energy Solutions, LLC (JAB, not JAB-II) was managing under the MSA with JAB-II. A copy of those checks are attached hereto as Exhibit "3" and "4" respectively in furtherance of the misrepresentation, or a reflection of the entity for whom the work was actually performed for, Offshore Technical was paid by check drawn on the account simply of "JAB Energy Solutions."

<div align="center">14.</div>

While the relationship between the corporate parties defendant is discussed in greater detail hereinbelow, the signator on the check presents yet another issue to be addressed. If the MSA with JAB-II was the operative contract, on this job the work was supervised and managed by employees of JAB under an MSA with JAB-II for the benefit it is alleged of JAB, and paid for by a check

drawn on the account of what Offshore Technical interpreted as JAB, the company it knew signed

by an employee of yet another company, Allison Marine Holdings, LLC.

15.

Further complicating the issue of who the work was performed for and services rendered

on behalf of, is the fact that upon information and belief, while said Joshua Towns was managing

the project for JAB, Brent Boudreaux was approving the payments. Brent Boudreaux is an officer

of both JAB and JAB-II and the checks were signed by "Sonda Robertson," an employee of neither

JAB nor JAB-II but rather an individual who is listed as being the "Chief Financial

Officer/Controller/Project Manager" of the third named defendant company, Allison Marine

Holdings.

16.

In 2020, Offshore Technical Solutions was approached about a job at High Island A-370-

A in which JAB was utilizing the TOPS vessel, the D/B Swing Thompson, for a job. JAB issued

a PO to Offshore Technical relative to this job which commenced in October of 2020. The port of

mobilization was ICY in the State of Louisiana.

17.

On October 31, 2020 Offshore Technical issued the first of its three invoices relative to

this job to the company it believed it was working for the benefit of, JAB. Offshore Technical was

advised that JAB had a "new office" at 19221 Interstate 45 S (which not surprisingly is the same

location as JAB-II is run out of and also the registered office for Allison Marine Holdings, LLC in

Texas (See Exhibit 8 attached hereto and incorporated herein by reference)), but that invoices

should be submitted as had been done in the past, to the email invoice@jabenergysolutions.com.

Offshore Technical complied.

18.

The invoices were submitted as requested, to "invoice@jabenergysolutions.com"; however, all the invoices relating to this job, Project No. 2009-1766-P6380, remain unpaid. This is the same domain that Mr. Towns sent the emails from relative to the previous work where his signature block notes the company as JAB Energy Solutions, LLC, the Louisiana company.

19.

Offshore Technical became concerned about the ongoing past due balances maintained on account of JAB; however, was reassured repeatedly by Mr. Brent Boudreaux that the invoices would ultimately be paid. Representative of such representations is the email between Mr. Brent Boudreaux and Mr. Richard Burgo of Offshore Technical attached hereto as Exhibit "9" and incorporated herein by refence. Notably Mr. Boudreaux uses the same domain for his emails that Mr. Towns did and the same domain that hosts the invoice@jabenergysolutions.com address where the invoices are sent. From here, the waters get murkier.

## SPECIFIC ALLEGATIONS
### (*Who gets the invoice, who approves the invoice and who pays the invoice*)

20.

As pled above the invoices for the job in question on which the claims herein are predicated, were directed for payment to invoices@jabenergysolutions.com.

21.

By way of illustration, Exhibit 6, which is Invoice I-7859, was directed to said email address under the cover of the email from Amy Porche at Offshore Technical attached hereto as Exhibit 10, which is an email address as requested and dated December 9, 2020. As is Offshore

Technical' s practice, both read, and delivery receipts were requested.

22.

Offshore Technical did in fact obtain a delivery receipt and said receipt is attached as Exhibit 11. While much of this is technical gibberish, the highlighted portions show that the email sent by Ms. Porche as directed to invoice@jabenergysolutions.com was in fact routed through a server hosted by Allison Marine (postmaster@allisonmarine.onmicrosoft.com) and further that the email Offshore Technical was directed to utilize is in fact a proxy email for lgreenleaf@allisonmarine.onmicrosoft.com.

23.

Upon information and belief, lgreenleaf@allisonmarine.onmicrosoft.com is in fact "Loretta Greenleaf" an accountant working not for JAB-II, but for JAB in Lake Charles, Louisiana.

24.

Separate and distinct from the delivery receipt, is the "read receipt" which is generated by the mail system maintained by defendants. The following day, December 10, 2020 Ms. Porche received a "read receipt" indicating that her email, which was sent to invoice@jabenergysolutions.com" was in fact read by Ms. Becky Sandlin on December 10, 2020. Ms. Sandlin is an Administrative Assistant not for JAB-II, but rather both for "JAB Energy Solutions, LLC" and "Allison Marine Holdings" according to her email signature (See Exhibit 13 attached hereto and incorporated herein by reference).

25.

On Thursday, January 21, 2021, Ms. Sandlin advised that "we" have received the invoices we spoke about and that "all have been approved and posted." This was sent in her ostensible

capacity as an employee of Allison Marine Holdings and/or JAB Energy Solutions, LLC per her email signature line, but nowhere is it indicated that JAB-II is involved in any way.

26.

One of the invoices that Ms. Sandlin indicated was approved was the first invoice issued relative to this job, Invoice 7851. On this date for reasons yet unclear, rather than be delivered to Loretta Greenleaf at JAB, Invoice 7851 sent to the same email address, invoice@jabenergysolutions.com" was delivered to srobertson@allison-companies.net as evidenced by the plain form delivery receipt attached hereto as Exhibit 14.

27.

Upon information and belief well formed, "srobertson@allison-companies.net" is "Sonda Robertson" (See Exhibit 15 attached hereto and incorporated herein by reference). Sonda Robertson, an additional undisclosed recipient of Offshore Technical' s invoices is the very same individual who signed the checks issued to Offshore Technical for the previous job it did in 2018; However, Sonda Robertson has no known affiliation with either JAB or JAB-II being rather an officer of Allison Marine Holdings, LLC, a Delaware company. She does however work out of the offices of all three named defendants.

**SPECIFIC ALLEGATIONS**
(***The Louisiana LLCs and their Shadow Delaware Alter-Egos***)

28.

According to the Louisiana Secretary of State the company that Offshore Technical believed it was working with, JAB Energy Solutions, LLC is a Louisiana Limited Liability Company domiciled in Louisiana at 9828 Hwy 1823 East in Morgan City Louisiana. It bears charter number 36628333K.

29.

While Delaware does not require the listing of officers and directors on LLCs by law, Louisiana does and the Officers of JAB Energy Solutions, LLC are listed as: (1) Henry L. Robards, Jr., (2) W. Stephen Orlando, and (3) Brent J. Boudreaux.

30.

JAB Energy Solutions II, LLC is a Delaware Limited Liability Company bearing Delaware Corporations file #5002821. The Officers and directors of JAB-II are undisclosed. Other than to be listed on the website for the Delaware Division of Corporations, JAB-II has no known commercial presence, except to be the named contracting party under which JAB was allocating its contractual obligations.

31.

This appears to be a pattern of practice with the companies under common control of the directors of the companies named herein. Also domiciled at the same address in Morgan City is the Louisiana Corporation, Allison Marine Contractors, Inc. According to the Secretary of State (Louisiana) Allison Marine Contractors, Inc. has the same domicile address, 9828 Hwy 182 E in Morgan City, Louisiana 70380 and the same mailing address, P.O.Box (or drawer) 511 in Morgan City Louisiana as JAB Energy Solutions, LLC. It also has at least one officer in common, Henry L. Robards, Jr.

32.

Moreover, like JAB, Allison Marine Contractors, Inc. (Louisiana) has a corporate analog in Delaware. Allison Marine Contractors **II,** LLC is like JAB Energy Solutions II, LLC a Delaware entity with no disclosed officers or directors.

33.

In other pleadings filed in this Court, JAB Energy Solutions II, LLC has identified itself as a wholly owned subsidiary of Allison Marine Holdings, LLC. See e.g., *Shore Offshore Services, LLC v. JAB Energy Solutions II, LLC, et al*, Civil Action 10-1288 (E.D.La.)(Zainey, J) at Rec. Doc. 18.

## SPECIFIC ALLEGATIONS
**(Single Business Enterprise, Alter Ego Status, and Undercapitalization)**

34.

Upon information and belief, the above companies, are all acting as a single business enterprise as that term is defined in Louisiana and/or alter-egos of one another as those terms are defined under Texas law and the laws of other jurisdictions.

35.

As to Single Business enterprise, upon information and belief the legal entities, JAB, JAB-II and Allison Marine Holdings have to a yet undisclosed extent, common ownership. As the corporate records of each make clear, there are common officers and directors. Hank Robards is listed as an officer of both JAB and Allison Marine. While it is yet undetermined who the officers and directors of JAB-II are, the MSA bears the signatures of both Brent Boudreaux, who is listed as an officer of JAB and Alan Vando, who is listed as an officer of JAB. Stephen Orlando likewise has corporate affiliations that include but are not limited to being President of Allison Offshore Services, Inc., Director of JAB Energy Solutions II, LLC, President of JAB Energy Solutions, LLC., a member of Allison Offshore Services, LLC, a member of Allison Offshore Services, LLC, among others. All these companies are for the most part affiliated with the addresses of similarly named companies.

Page 11 of 16

36.

Likewise, there appears on these facts to be unified administrative control. A simple invoice submission to JAB is routed not only to employees of JAB (accountants and administrative assistants), but also employees of Allison Marine. As pled above, Invoices submitted to JAB for work signed off on by employees of JAB under the MSA purportedly with JAB-II are routinely reviewed and approved by employees of various companies and paid for with funds approved and instruments signed by an officer of Allison Marine.

37.

Further, upon information and belief, while JAB appears to be capitalized, Offshore Technical avers on information and belief that JAB-II is not and was formed simply as an entity to be the obligor on certain obligations for the mutual benefit of all the companies.

38.

Moreover, it does not appear that JAB-II has any direct employees but rather utilizes routinely employees of other companies under common control to further the purported interests of JAB-II and its alter-ego companies.

39.

Given the lack of any commercial presence, it is unclear how JAB-II solicits business other than through the employees and business contacts of JAB and Allison Marine and in fact plaintiff, Offshore Technical, was under the impression that it was working for JAB as opposed to JAB-II, a reasonable belief given that the employees they were dealing with and all of the contacts were affiliated with or holding themselves out as being affiliated with JAB or Allison as opposed to JAB-II which appears nowhere except in the MSA.

40.

Defendants herein have common office space, centralized accounting, common employees, and other criteria clearly establishing common control and the operation of the various entities as a single business enterprise and/or meet the alter-ego test as articulated by the various courts in the Fifth Circuit interpreting both state and federal law, especially given the ongoing misrepresentations to vendors such as Offshore Technical in regard to whom they were dealing with commercially.

41.

Plaintiff, Offshore Technical, maintains, that there are facts sufficient on the face of these pleadings alone considering the exhibits as part of its well-pleaded complain to establish a basis of liability against each of the named defendants as affiliated corporations and or as juridical persons alter-egos of one another and to extend liability to each jointly, severally and in solido as the facts and law warrant.

## COUNT 1 – BREACH OF CONTRACT

42.

Plaintiff, Offshore Technical, re-asserts and re-alleges all the material facts contained in Paragraphs 1-41, inclusive, as well as any referenced exhibits, as if pleaded herein in extenso.

43.

Defendants, and each of them, are liable to plaintiff, Offshore Technical, for breach of contract relative to their respective failure to pay pursuant to the terms and conditions set forth in the Master Service Agreement entered into by and between the parties and signed by Brent Boudreaux and Richard Burgo, respectively, acting on behalf of their various corporate interests.

44.

The MSA between the parties herein provides for terms of payment in Article 6, specifically Sections 6.1 and 6.2 but nowhere contained in the agreement is a "pay when paid" provision. As is noted in the attached emails, officers of defendants have in fact "approved" Offshore Technical's invoices; however, as is detailed in Exhibit 9, which is the email from Brent Boudreaux to Richard Burgo, the reason Offshore Technical has not been paid has to do with its lack of receipt of funds from third parties.

45.

Payment to Offshore Technical, plaintiff herein, is an obligation of defendants irrespective of any receipt of funds by other sources and as such, this admission by Mr. Boudreaux establishes that defendants have in fact breached the contract knowingly and willingly.

46.

Contained in the MSA at Section 6.3 which states that "payments of undisputed amount shall be made within Forty-Five (45) days after company has received an invoice." Defendants have failed to comply with the terms and conditions of payment as contractually obligated.

47.

In addition to the principal amounts owed, with interest, in Section 11.13 provides that "[t]he prevailing party in any litigation relating to this Agreement, other than that involving defense and indemnity which is addressed above, shall be entitled to recover its reasonable and necessary attorney's fees and costs of litigation from the other party." As such, Offshore Technical is entitled to recover from defendant's attorney's fees and costs associated with the filing of this lawsuit.

## COUNT 2 – OPEN ACCOUNT
### (Failure to Pay Monies Owed under Open Account)

48.

Plaintiff, Offshore Technical, re-asserts and re-alleges all the material facts contained in Paragraphs 1-41, inclusive, as well as any referenced exhibits, as if pleaded herein *in extenso.*

49.

In the alternative, should this Court determine that the contract was void for any reason including but not limited to mutual mistake, fraud in the inducement, etc., Offshore Technical specifically avers that the work performed at the location designated in the invoices submitted as requested by Defendants was performed as requested in good faith and in an appropriate manner. As respect this work performed and services rendered to defendants, Offshore Technical has complied with and satisfied its obligations in all respects.

50.

Offshore Technical specifically avers that the invoices relative to the services requested by defendants and rendered by plaintiff as reflected in the attached invoices were directed to the appropriate company representatives. All invoices having been accepted without objection by defendants herein.

51.

Offshore Technical specifically avers that it is entitled to be compensated for the services rendered and the goods furnished as reflected in the invoices, which at this point are not disputed. Plaintiff is entitled to recover all amounts due to it, as well as actual, and where applicable consequential (bad faith), damages, interest thereon, attorneys' fees and costs of collection and other costs as may be taxable for the willful breach of this contract and failure to pay.

**WHEREFORE**, plaintiff, Offshore Technical Solutions, LLC, prays for judgment in its favor against defendants, and each of them jointly severally and in solido awarding plaintiff all sums due for services rendered pursuant to contract or otherwise, in the amount of $564,467.64 in amounts owed under contract and/or open account inclusive of interest through April 1, 2021 and thereafter per diem interest in the amount of $178.15 per day together with costs, legal interest, attorneys fees, all consequential damages for bad faith breach of contract and all other equitable relief as this honorable court deems just and proper.

DATED:  Wednesday, May 12, 2021

Respectfully submitted:

**B O H M A N | M O R S E , LLC**

s/ Martin S. Bohman
MARTIN S. BOHMAN T/A  (Bar #22005)
HARRY E. MORSE (Bar #31515)
400 Poydras Street, Suite 2050
New Orleans, Louisiana 70130
Telephone: (504) 930-4009
Facsimile: (888) 217-2744
Email: martin@bohmanmorse.com
Email: harry@bohmanmorse.com

*ATTORNEYS FOR OFFSHORE TECHNICAL
SOLUTIONS, LLC*

# MASTER SERVICE AGREEMENT

***THIS AGREEMENT CONTAINS PROVISIONS RELATING TO
INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK.***

## 1. PARTIES

This Master Service Agreement ("Agreement") is made and entered into this <u>26th</u> day of <u>June</u>, <u>2018</u>, (the "Effective Date"), by and between Offshore Technical Solutions, LLC ("Contractor") and JAB Energy Solutions II LLC   ("Company"). Contractor and Company may be referred to herein individually as "Party" and collectively as "Parties".

## 2. PURPOSE AND SCOPE

2.1    **Master Agreement**- This Agreement is a master agreement between Company and Contractor. For and in consideration of the covenants and provisions contained herein, this Agreement shall control and govern all services performed by Contractor for Company, and Contractor's provision to Company of products, equipment, supplies or materials utilized in connection with such services (collectively **"Work"**). During the term of this Agreement Contractor agrees to furnish all labor, equipment, and materials and all other things necessary to perform the Work, more fully described on Exhibit "A", which may be requested by Company.

2.2    **Non-Exclusive Agreement** - The Parties understand that this is a non-exclusive agreement and that Company may contract with other contractors to supply the same type or similar services as those offered by Contractor; and Contractor may perform the same type or similar services for others. This Agreement does not bind Company to request work, or Contractor to agree to perform work if requested.    **HOWEVER, WHENEVER CONTRACTOR PERFORMS ANY WORK FOR COMPANY, THIS AGREEMENT SHALL GOVERN ALL SUCH WORK, UNLESS AUTHORIZED OFFICERS OF THE PARTIES, AFTER REFERENCING THIS AGREEMENT, SPECIFICALLY AGREE OTHERWISE IN WRITING.**

2.3    **Prior Agreement(s)** - This Agreement shall terminate and replace any similar agreement entered into heretofore by and between the Parties.

## 3. DEFINITIONS

(a)    **"Claim" or "Claims"** means, unless specifically provided otherwise, all claims (including, but not limited to, those for property damage, personal injury, illness and death), damages, liabilities, losses, demands, liens, encumbrances, fines, penalties, causes of action of any kind (including actions in rem or in personam), obligations, costs, judgments, interest and awards (including payment of attorneys' fees and costs of litigation) or amounts, of any kind or character, whether under judicial or administrative proceedings or otherwise, or conditions in the premises of or attributable to any person or persons or any party or parties, breach of representation or warranty (express or implied), under any theory of tort, contract, breach of contract, arising out of, or incident to or in connection with this

<div align="center">1</div>

<div align="center" style="color:red">EXHIBIT - 1</div>



Agreement or the performance of the Work under this Agreement, including but not limited to those which arise out of or are directly or indirectly connected with vessels and/or the ownership, possession, management, manning, maintenance, supply, operation (including but not limited to ingress, egress, loading and unloading operations) or navigation of any vessel.

(b) **"Company Group"** means Company, its parent, subsidiaries, related and affiliated companies, and any party from whom Company is performing services of which the Work forms a part, its and their other contractors (other than members of Contractor Group), and the officers, directors, employees, agents, assigns, representatives, managers, consultants, insurers, subrogees and invitees of all of the foregoing.

(c) **"Contractor Group"** means Contractor, its parent, subsidiaries, related and affiliated companies, and its and their subcontractors, and the officers, directors, employees, agents, assigns, representatives, managers, consultants, insurers, subrogees and invitees of all of the foregoing.

(d) **"Third Party"** or **"Third Parties"** means a person or entity other than members of Company Group and Contractor Group.

(e) The term "REGARDLESS OF FAULT" means **WITHOUT REGARD TO THE CAUSE OR CAUSES OF ANY CLAIM, INCLUDING, WITHOUT LIMITATION, EVEN THOUGH A CLAIM IS CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE (WHETHER SOLE, JOINT, CONCURRENT, COMPARATIVE, CONTRIBUTORY, ACTIVE, PASSIVE, GROSS, OR OTHERWISE), STRICT LIABILITY, OR OTHER FAULT (BUT SPECIFICALLY EXCLUDING THE WILLFUL MISCONDUCT OF ANY INDEMNIFIED PARTY) OF ANY MEMBER OF COMPANY GROUP, CONTRACTOR GROUP AND/OR THIRD PARTIES, AND WHETHER OR NOT CAUSED BY A PRE-EXISTING CONDITION OR THE UNSEAWORTHINESS OF ANY VESSEL OR UNAIRWORTHINESS OF ANY AIRCRAFT OF A PARTY WHETHER CHARTERED, OWNED, OR PROVIDED BY COMPANY GROUP OR CONTRACTOR GROUP.**

(f) **"Work Site"** means any location(s) at which Contractor performs any part of the Work.

(g) The phrases **"arising out of, or incident to or in connection with this Agreement or the performance of the Work under this Agreement"** in the definition of "Claims" above and **"arising out of or resulting from the performance of this Agreement"** and similar phrases in this Agreement shall be broadly construed to include not only the Work, but also transportation to and from the Work Site as well as any occurrences at the Work Site, regardless of whether or not the act which causes the Claim is related to the performance of this Agreement.

## 4. <u>TERM AND TERMINATION</u>

4.1 <u>**Term**</u> - This Agreement shall be effective as of the Effective Date and shall continue in force thereafter until either Party terminates this Agreement for any reason upon thirty (30) days' advance written notice given to the other Party. Such termination shall not

2



affect any Work in progress at the time of such termination unless Company, in its sole discretion, decides otherwise.

4.2 **Optional Termination of Work Order** - Company may, in its sole discretion, terminate any particular Work Order (as defined in Article 5), at any time, upon written notice. In the event of such termination, Contractor shall be entitled to payment as set out in Article 6 for that part of the Work performed in accordance with this Agreement and the applicable Work Order, together with the reasonable costs as agreed between the parties at the time of termination.

4.3 **Default Termination** - Notwithstanding the foregoing, in the event Contractor, after receiving authorization from Company, fails to commence performing the Work contemplated hereunder in a timely manner, or to diligently prosecute same once commenced, or Contractor breaches any of the material obligations set forth in this Agreement, Contractor shall be considered in default and Company may immediately terminate this Agreement or any Work Order. In the event Company terminates this Agreement or any Work due to Contractor's default, Contractor shall be entitled to payment as set out in Article 6 for only that part of the Work performed in accordance with this Agreement and the applicable Work Order. Any additional costs reasonably incurred by Company as a direct result of such termination shall be recoverable from Contractor.

## 5. WORK COVERED BY THIS AGREEMENT

5.1 **Generally** - All work and/or services requested by Company and accepted by Contractor shall be the subject of an order for Work issued by Company to Contractor (the **"Work Order"**). The Work Order will be either oral or written, and provide, where applicable, a description of the Work to be performed, the consideration to be paid, the job location, equipment, services, supplies, and personnel to be provided by Contractor, and the items, if any, to be furnished by Company. If written, the Work Order may be in a form similar to that shown in Exhibit "A-1", or any other form that is agreed to by the Parties. Nothing in any Work Order, whether written or oral, shall modify or change the terms contained in this Agreement, which shall at all times govern and control; unless the Work Order references the specific provision(s) of this Agreement to be modified and the Work Order is executed by authorized representatives of the Parties; and it is further agreed and understood that any such modification shall be effective only with respect to that particular Work Order and no other. Although Company may, from time to time, sign Contractor's field tickets, forms for receipt, acknowledgment, documentation, terms of service or similar forms, the terms and conditions associated with such forms (by whatever title) shall not amend, modify, waive, override or release any provision of this Agreement or any Work Order.

5.2 **Vessels** - Company may, from time to time, require that Contractor provide a vessel in order to perform the Work. In such cases, the Contractor agrees any such vessels will be provided subject to the "Special Terms and Conditions for the Provision of Vessels" Exhibit "G" attached hereto and made a part hereof.

## 6. CONSIDERATION AND TERMS OF PAYMENT

6.1. **Consideration** - In consideration of Contractor's performance of Work, Company shall pay to Contractor either:

3



(a)     An amount determined in accordance with either the rates set forth in the Work Order, or, if not so provided for, the Contractor's Rate Schedule, set forth in Exhibit "B"; or

(b)     A fixed price set forth in the Work Order, which may incorporate, but is not limited to, bid and award documents.  Changes to the fixed price shall be made pursuant to Article 10; or

(c)     An amount agreed to in the Work Order that may include a discount to the Rate Schedule for specific periods or particular Work.

Contractor hereby agrees that all the terms and conditions of this Agreement shall remain in full force and effect (except the Rate Schedule in Exhibit "B") when Contractor performs Work at a fixed price, special or discount rates, which differs from Contractor's Rate Schedule.

**CONTRACTOR SHALL GIVE COMPANY THIRTY (30) DAYS PRIOR WRITTEN NOTICE OF ANY PROPOSED CHANGE IN CONTRACTOR'S RATE SCHEDULE APPLICABLE TO SUBSEQUENT WORK ORDERS.   IN NO EVENT SHALL ANY INCREASE IN CONTRACTOR'S RATE SCHEDULE BE EFFECTIVE UNLESS THE CHANGE IS APPROVED IN WRITING BY COMPANY AND THIS AGREEMENT IS PROPERLY AMENDED.**

6.2.    **Terms of Payment** - Company shall pay to Contractor the consideration described in Section 6.1. as follows:

(a)     When Work is authorized and performed in accordance with either Section 6.1(a) or 6.1(c), Contractor shall each day furnish work tickets, on a form acceptable to Company, to Company's Representative (as defined in Section 9.5) for verification of the Agreement number, job location, equipment description, materials or supplies furnished, names of Contractor's employees, and the number of hours worked.  All work tickets shall be prepared in strict accordance with the classifications contained in the Contractor's Rate Schedule, Exhibit "B".

Contractor shall render invoices upon completion of the Work, or monthly if the Work lasts longer than a month.  Contractor's invoices must be in accordance with this Agreement and have sufficient detail for identification and comparison with Contractor's daily work tickets, this Agreement, and Exhibit "B" or the rates set forth in the applicable Work Order.

(b)     When Work is authorized and performed in accordance with Section 6.1(b), Company will pay for material, equipment, fabrication, and installation in the following manner after Company's approval of invoices covering these items:

Company may, at its option, pay ninety percent (90%) of the invoice amount, in accordance with Section 6.3, after receipt and approval of the invoice.  After final acceptance, given by Company in accordance with Article 13, Company will pay the remaining ten percent (10%) of all amounts previously invoiced and approved. Contractor shall not be paid an amount greater than ninety

4



percent (90%) of the total Agreement price while Work is in progress. Invoices shall be submitted as follows:

(i) **Major equipment and materials** - Upon Contractor's receipt from vendor.

(ii) **Fabrication** - Monthly for that portion considered completed by Company's Representative and Contractor during the invoice period.

(iii) **Installation** - Monthly for that portion considered completed by Company's Representative and Contractor during the invoice period.

(c) After final acceptance of the Work in accordance with Article 13, Company shall pay Contractor all money due, and not previously paid, upon receipt of the following, if requested by Company:

(i) Written certification and evidence of Contractor's compliance with all existing laws and/or regulations of all governmental and regulatory bodies with respect to the Work.

(ii) Satisfactory evidence of payment of all bills, claims, and obligations for labor, materials, or services incurred in connection with the Work.

(iii) Satisfactory evidence that no liens have been filed or recorded against Company, Company's property, or the property subject to this Agreement.

(iv) A release by an officer of Contractor, in authentic form, releasing Company, its officers, agents, employees, and persons for whom Company is responsible from all claims of the Contractor arising under this Agreement.

(d) Payment by Company to Contractor for partial completion of Work shall not be deemed acceptance of such Work or any part thereof, nor shall such payment relieve Contractor of any obligation or waive any of Company's rights.

(e) All invoices and payments shall be sent to the applicable Party as set forth in Article 18.

6.3. **Time For Payments** - Unless otherwise provided, payments of undisputed amounts shall be made WITHIN Forty-five (45) DAYS AFTER COMPANY HAS RECEIVED AN INVOICE, in proper form, evidencing that amounts are due. Contractor shall provide, if requested by Company, written verification, supported by proper evidence, that no liens, claims, privileges, or liabilities exist with respect to the Work performed.

6.4 **Disputed Amounts** - In the event of any dispute, Company may, within twenty (20) days after receipt of the invoice, notify Contractor of any item in dispute,

5



specifying the reason therefore, and payment of the disputed item may be withheld until settlement of the dispute, but timely payment shall be made of any undisputed portion. Alternatively, Company may pay the disputed amount without waiver of any of its rights, including the right to seek reimbursement.

## 7.   RELATIONSHIP OF THE PARTIES

7.1   **Independent Contractor** - Contractor certifies that it is, and shall conduct itself as, an independent contractor in the performance of the Work. Contractor shall retain and exercise the authority and right to direct and control the manner in which all Work for Company is performed; provided, however, that Company retains the general right, but is in no way obligated, to observe Contractor in the performance of all Work contemplated hereunder. It is the express understanding and intention of the Parties that Contractor shall act as an independent contractor at all times, that no relationship of master and servant or principal and agent shall exist between Company and Contractor and any of Contractor's employees, agents, representatives or subcontractors. Contractor further certifies that none of the employees, agents or subcontractors of Contractor shall be considered to be or hold themselves out or act as employees of Company. Contractor agrees that neither Contractor nor any of its employees, agents or subcontractors shall act as an agent of Company.

7.2   **Statutory Employer** - In all cases where Contractor's employees (defined to include Contractor's direct, borrowed, special, or statutory employees) are covered by a state's worker's compensation law (such as the Louisiana Worker's Compensation Act, LA R.S. 23:1021 et seq., or similar statute or law of another jurisdiction), Company and Contractor agree that all Work performed by Contractor and its employees pursuant to this Agreement are an integral part of and are essential to the ability of Company to generate Company's goods, products, and services (for purposes of LA R.S. 23:1061 (A)(1) or similar statute or law of another jurisdiction). Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor's employees, pursuant to LA R.S. 23:1061 (A)(3)  or similar statute or law of another jurisdiction. Irrespective of Company's status as the statutory employer or special employer, pursuant to LA R.A. 23:1031 (C) or similar statute or law of another jurisdiction, of Contractor's employees, Contractor shall remain primarily responsible for the payment of the worker's compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Company.

## 8.   OBLIGATIONS OF CONTRACTOR

8.1   **Contractor-Furnished Items** - Contractor shall furnish, at its own expense, that machinery, equipment, tools, spare parts, transportation, supplies and any other items necessary for the performance and timely completion of the Work (other than such items that Company specifically agrees in the Work Order to furnish). All items to be incorporated into the Work shall be suitable for the Work and new, unless otherwise specified. Company furnished items will be delivered to Contractor at the Work Site or other mutually agreed upon location, and Contractor shall verify the delivery, perform a reasonable visual inspection of such items, and notify Company of shortages or items delivered in a discovered or apparent damaged condition and thereafter protect such items from loss or damage.

6



8.2 **Personnel** - Contractor shall furnish, at its own expense, any and all personnel, labor, expertise and supervision (skilled in their trades and trained in safety) necessary for the performance and timely completion of the Work.

8.3 **Drawing and Specifications** - Contractor shall perform the Work in accordance with Company's requirements and the drawings and specifications, if any, in the Work Order and any attachments thereto.

8.4 **Commencement and Completion of Work** - If Contractor fails timely to commence the Work consistent with the applicable Work Order, or other agreement, or after such commencement abandons the Work or for any reason suspends or refuses to continue the Work, unless prevented from commencing or continuing the Work by Force Majeure, or by any failure or delay on the part of Company, then Company shall have the right to take over the Work and all materials and supplies furnished by Contractor and complete the Work, or cause the Work to be completed. In that event Contractor shall be paid only: (1) the reasonable compensation for Work actually provided less (2) the difference, if any, between the actual cost required to complete the Work by Company or another contractor and the price initially agreed upon by Company and Contractor for such Work.

8.5 **Permits** - Unless specified to the contrary in the Work Order, Contractor shall obtain and pay for, and cause its subcontractors to obtain and pay for, at its and their cost, all necessary permits, licenses and similar authorizations for Contractor, its subcontractors and their employees that are required to be obtained in their respective names in connection with the performance of the Work. In the event a representative of any governmental body regulating the Work finds any violation upon inspection of the Work or Work Site, which is in any way related to Contractor Group, Contractor shall take corrective action immediately at Contractor's sole cost and expense without limitation of any rights of Company.

8.6 **Familiarity with the Work** - Contractor acknowledges it is generally familiar with, and understands, the nature of the Work, the environment, and the difficulties that may be incident to performing the Work; and, upon arriving at the Work Site, but prior to commencing Work, Contractor will conduct a reasonable inspection of the Work Site.

8.7 **Liens and Encumbrances** - Contractor shall be responsible for paying all costs and charges of all of its subcontractors, vendors and/or any other parties from which Contractor receives goods and/or services in connection with the performance of this Agreement, and agrees to allow no lien, attachment or other encumbrance asserted by any such party to be fixed upon any member of Company Group, Company Group's property, or the property subject to this Agreement. Further, **CONTRACTOR AGREES TO BE RESPONSIBLE FOR, AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP FROM ANY AND ALL CLAIMS ARISING OUT OF ANY WORK PERFORMED BY ANY SUBCONTRACTOR, VENDOR OR ANY OTHER PARTY FROM WHICH CONTRACTOR RECEIVES GOODS OR SERVICES IN CONNECTION WITH THE PERFORMANCE OF THIS AGREEMENT**. In the event any such lien, attachment or other encumbrance is filed as a result of Contractor's failure to pay for labor, materials, services or supplies, upon receipt of written notification thereof, whether from Company or otherwise, without limiting the generality of the foregoing, within thirty (30) days after receipt of such written notice of the existence of such lien, attachment or other encumbrance, Contractor shall remove, by payment or by posting and recording statutory

7



or other bonds satisfactory to Company, any and all liens, attachments or other encumbrances filed or recorded by any subcontractor (or any employee, agent or subcontractor of a subcontractor), vendor or any other party from which Contractor receives goods or services in connection with the performance of this Agreement, which burdens or encumbers any member of the Company Group, Company Group's property, or the property subject to this Agreement. If Contractor shall fail or refuse to take such steps as may be deemed by Company to be necessary to remove any such lien, attachment or encumbrance, Company shall have the right to take any reasonable action to remove such lien, attachment or encumbrance, by posting and recording statutory or other bonds, or by payment, and deducting the cost of such from any money due or to become due to Contractor under this Agreement or any other agreement between the Parties.

Company agrees that it will not pay any such claim or indebtedness as long as it is being actively contested by Contractor and Contractor has taken reasonable actions (including the posting of a bond when appropriate) to protect the property interests of Company and any other party affected by such claim or indebtedness.

8.8 **Taxes** - Contractor shall pay all taxes, licenses and fees levied or assessed on any member of Contractor Group by any governmental agency based upon the wages or salaries paid by any member of Contractor Group to its agents, employees and/or representatives in connection with or incident to the performance of this Agreement, including, but not limited to, unemployment compensation insurance, old age benefits, pensions, social security or any other similar taxes or payments, together with any fines, penalties or liens assessed in connection therewith. Contractor agrees to require the same actions by all members of its Group, and Contractor shall be liable for any breach of these provisions by any members of its Group.

8.9 **Assurances** - At Company's sole discretion, and as a prerequisite to the commencement or continuance of any Work, Contractor may be required by Company to obtain: a Performance and Payment Bond in an amount, and with a surety company, acceptable to Company; an acceptable irrevocable letter of credit in favor of Company; or any other assurance acceptable to Company, at its sole discretion. Company agrees to reimburse Contractor for the cost of obtaining such assurance.

## 9. WARRANTIES AND INSPECTION

9.1 **General Services Warranty** – Contractor warrants that any and all services or Work performed by Contractor Group shall be performed in a good and workmanlike manner and in full compliance with Company's requirements and specifications, if any, applicable to said Work. "Workmanlike manner" means services performed in a manner deemed proficient by those with the special knowledge, training, and experience to judge such services. Contractor further warrants that all of the members of Contractor Group will be properly and adequately trained to perform the Work competently and safely, and that Contractor will provide to Company, upon request, documentation to confirm such training and safety programs or history, and any other documentation reasonably requested by Company, including that necessary to comply with any applicable reporting requirements or any governmental agency or any party for whom Company may be providing services. For one (1) year after the Work is completed, or such longer period as may be agreed to by the Parties in the applicable Work Order, Contractor shall re-perform any nonconforming Work at Contractor's sole cost and expense in accordance with the requirements of this Agreement, or at Company's option, refund to Company that portion of the consideration

8



that is attributable to the nonconforming Work. If Company elects to have Contractor re-perform the nonconforming Work, Contractor shall promptly commence and complete such re-performance. If Contractor fails to commence or complete such re-performance to the reasonable satisfaction of Company within a reasonable period of time after Company's request, then Company shall have the right to have the nonconforming Work re-performed by any other contractor (or by Company's own employees), and Contractor shall be responsible for all reasonable costs and expenses incurred as a result of such re-performance.

9.2 **Products Warranty** – Contractor warrants that any and all products, equipment (specifically excluding rental equipment which is addressed below) and materials, including service-related materials, provided by Contractor Group, are free from defects, are in full compliance with the applicable specifications, if any, and that such products, equipment and materials shall comply with all applicable laws, regulations, rules, standards and codes, whether governmental or industry. Contractor will promptly repair or replace at Contractor's sole cost and expense, and to the reasonable satisfaction of Company, any products, equipment or materials that are defective or non-conforming. The products warranty shall be 12 months from the date on which the products, equipment and materials where delivered to Company, or such longer period as may be agreed to by the Parties in the applicable Work Order.

9.3 **Rental Equipment Warranty** – Contractor warrants that all equipment rented to Company shall meet or exceed the applicable equipment specifications upon delivery, be in good working condition throughout the rental period (misuse by Company Group excepted), and, if requested by Company, shall include operating manuals, supplies and spare parts. Contractor shall waive rental payments during any time period that equipment fails to operate properly or is otherwise inoperable through no fault of Company Group. In all instances Contractor shall respond in a timely manner to repair or replace the equipment. Equipment misused by Company Group will be either repaired or replaced at Company's option and at Company's cost and expense. Equipment repaired or replaced by Company will, at a minimum, meet the condition of the equipment upon delivery to Company, less normal wear and tear during Company's use.

9.4 **Vessel Warranty** – Contractor warrants that all crew and vessels used in connection with the performance of this Agreement will satisfy those warranties set forth in Exhibit "G."

9.5 **Inspections** - Company may inspect the Work at any time, but failure to inspect or to discover or reject non-conforming or defective Work shall not imply acceptance thereof or waiver of any rights hereunder. If Company Group inspectors request that the finished Work be dismantled and it is found that no defects exist, Company shall bear the actual expense of dismantling, repairing and replacing of the dismantled portion of the finished Work, but if a defect is discovered, Contractor shall bear the expense of dismantling, repairing and replacing the defective Work and restoring the Work to its proper condition. If it is not practical for Contractor to make repairs, or at Company's option, Company shall have the right to engage another contractor, at the sole cost and expense of Contractor, for any dismantling, repairing and replacing of defective Work.

9.6 **Company Representative** - Company, by written notice to Contractor, may designate one or more Company representatives (collectively, "Company Representative") who shall be authorized to act on behalf of Company. The Company Representative shall



be authorized to certify, on behalf of Company, periodic estimates of Work completed which are submitted by Contractor and to bind Company to any Work Order executed pursuant to this Agreement; provided, however that the Company Representative shall not have the authority to amend, modify, change or other vary the terms of this Agreement unless expressly authorized in writing to do so by a duly authorized officer of Company.

9.7 **Contractor Representative** - Contractor, by written notice to Company, shall designate one or more Contractor representatives (collectively, "Contractor Representative") who shall be authorized to act on behalf of Contractor. The Contractor Representative shall be authorized to bind Contractor to any Work Order executed pursuant to this Agreement. Copies of this Agreement shall be furnished by Contractor to, and at all times shall be in the possession of, the Contractor Representative.

## 10. CHANGES AND/OR ADDITIONS TO THE WORK

Company may order additions, deletions or make changes, to the scope of Work, provided such additions and/or changes are reasonably related to the scope of work. No extra work or change shall be performed unless a written authorization has been issued by Company, or a separate written estimate has been submitted by Contractor to Company, and agreed to in writing by Company. This authorization or estimate shall state the extension of time, if any, allowed and specifically provide for the cost for this addition or change to the Work, which shall be either:

(a) A fixed sum agreed upon in writing before such Work is performed, or if the Parties do not agree on a fixed sum, then,

(b) In accordance with the rates contained in the Work Order, of, if not applicable, Contractor's Rental Rate Schedule, attached as Exhibit "A". A daily statement of such additions or changes to the Work shall be delivered to Company in accordance with the provisions of Article 6.

## 11. INDEMNITY

11.1 **Company's Indemnity of Contractor for Damage Suffered by Company Group** - **COMPANY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF PERFORMANCE OF THIS AGREEMENT, REGARDLESS OF FAULT, INVOLVING:**

**(a) DAMAGE TO OR LOSS OF ANY EQUIPMENT OR PROPERTY OF ANY MEMBER OF THE COMPANY GROUP, OR**

**(b) PERSONAL INJURY, ILLNESS, OR DEATH OF ANY MEMBER OF COMPANY GROUP**

11.2 **Contractor's Indemnity of Company Group for Damage Suffered by Contractor Group** - **CONTRACTOR AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF PERFORMANCE OF THIS AGREEMENT, REGARDLESS OF FAULT, INVOLVING:**

10



    **(a)    DAMAGE TO OR LOSS OF ANY EQUIPMENT OR PROPERTY OF ANY MEMBER OF THE CONTRACTOR GROUP, OR**

    **(b)    PERSONAL INJURY, ILLNESS, OR DEATH OF ANY MEMBER OF CONTRACTOR GROUP**

The indemnity obligations set forth in this Section 11.2 shall apply even if any member of the Contractor Group is determined to be the statutory or borrowed employee of any member of the Company Group, under Louisiana or other jurisdiction's applicable law.

    11.3   **Company's Indemnity of Contractor Group for Environmental Damage** - Subject to the indemnity obligations contained in Sections 11.1 and 11.2. immediately above, and notwithstanding any other provisions of this Agreement to the contrary, **COMPANY AGREES TO BE RESPONSIBLE FOR AND RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE CONTRACTOR GROUP AGAINST CLAIMS ARISING IN CONNECTION WITH, ARISING OUT OF, OR RESULTING FROM POLLUTION OR CONTAMINATION (INCLUDING, BUT NOT LIMITED TO, PROPERTY DAMAGE, CONTROL, REMOVAL, RESTORATION AND CLEANUP OF ALL POLLUTION OR CONTAMINATION) WHICH ORIGINATES FROM THE PROPERTY OF COMPANY GROUP, REGARDLESS OF FAULT.**

11.4   **Contractor's Indemnity of Company Group for Environmental Damage** - Subject to the indemnity obligations contained in Sections 11.1 and 11.2 immediately above, and notwithstanding any other provisions of this Agreement to the contrary, **CONTRACTOR AGREES TO BE RESPONSIBLE FOR AND RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP AGAINST CLAIMS ARISING IN CONNECTION WITH, ARISING OUT OF, OR RESULTING FROM POLLUTION OR CONTAMINATION (INCLUDING, BUT NOT LIMITED TO, PROPERTY DAMAGE, CONTROL, REMOVAL, RESTORATION AND CLEANUP OF ALL POLLUTION OR CONTAMINATION) WHICH ORIGINATES FROM THE PROPERTY OF CONTRACTOR GROUP, REGARDLESS OF FAULT.**

    11.5   **Company's Indemnity of Contractor Group for Damage to Third Parties** - Subject to the indemnity obligations contained in Sections 11.1, 11.2. 11.3 and 11.4 immediately above, and notwithstanding any other provisions of this Agreement to the contrary, **COMPANY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE CONTRACTOR GROUP FROM AND AGAINST ANY CLAIM INVOLVING DAMAGE TO PROPERTY OR PERSONAL INJURY OR DEATH TO ANY THIRD PARTY TO THE EXTENT CAUSED BY OR ARISING OUT OF THE ACTION OR INACTION OF COMPANY GROUP, BUT ONLY TO THE EXTENT OF COMPANY GROUP'S PROPORTIONATE NEGLIGENCE OR FAULT.**

    11.6   **Contractor's Indemnity of Company Group for Damage to Third Parties** - Subject to the indemnity obligations contained in Sections 11.1, 11.2. 11.3 and 11.4 immediately above, and notwithstanding any other provisions of this Agreement to the contrary, **CONTRACTOR AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FROM AND AGAINST ANY CLAIM INVOLVING DAMAGE TO PROPERTY OR PERSONAL INJURY OR DEATH TO ANY THIRD PARTY TO THE EXTENT CAUSED BY OR ARISING OUT OF THE ACTION OR INACTION OF CONTRACTOR GROUP, BUT ONLY TO THE EXTENT OF CONTRACTOR GROUP'S PROPORTIONATE NEGLIGENCE OR FAULT.**



11.7 **Removal of Debris and Wreckage** - Contractor shall promptly remove all debris and wreckage of the property of Contractor Group to the extent requested by Company. **CONTRACTOR AGREES TO BE RESPONSIBLE FOR AND RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FOR THE COSTS OR REMOVAL OF CONTRACTOR GROUP PROPERTY AND FROM AND AGAINST CLAIMS ARISING OUT OF OR RESULTING FROM ANY OBLIGATION WHATSOEVER TO REMOVE SAID DEBRIS OR WRECKAGE, REGARDLESS OF FAULT.**

11.8 **Intellectual Property** - In addition to any other indemnity provisions contained in this Agreement, Contractor represents and warrants that the use or construction of any and all tools, equipment, and other materials furnished by Contractor Group under this Agreement does not infringe on any license or patent issued or applied for, and **CONTRACTOR AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS OR ACTIONS OF EVERY KIND AND CHARACTER IN FAVOR OF OR MADE BY AN ALLEGED OWNER OF INTELLECTUAL PROPERTY RIGHTS OR ANY CLAIMANT OF ANY RIGHTS OR PRIORITY TO SUCH TOOL OR EQUIPMENT, OR THE USE OR CONSTRUCTION THEREOF, THAT MAY RESULT FROM OR ARISE OUT OF FURNISHING OR THE USE OF ANY SUCH TOOLS, EQUIPMENT AND OTHER MATERIALS BY FURNISHED BY CONTRACTOR GROUP**; except to the extent such Claims result from Contractor's compliance with: (a) designs and/or specifications furnished by Company (unless originated with Contractor), or (b) specific written instructions given by Company, for the purpose of directing the manner in which Contractor shall perform the Work.

11.9 Not Used.

11.10 **Insurance in Support of Indemnities** - In support of the mutual indemnity obligations, duties and liabilities each Party assumes in this Agreement, each Party, as indemnitor, agrees, at its own cost, to obtain and maintain, for the benefit of the other Party (and its respective Group) as indemnitees, liability insurance with minimum limits and coverages not less than those required under Article 12 of this Agreement; and, in particular, in the event this Agreement is subject to the indemnity limitations in Chapter 127 of the Texas Civil Practices and Remedies Code (or any successor statute) or similar statute of another jurisdiction, and so long as such limitations are in force, each Party covenants and agrees to support the mutual indemnity and release obligations contained in this Article 11 by carrying insurance (or qualified self-insurance) of the types and in the amounts not less than those specified in Article 12 and Exhibit "C". Notwithstanding any other provision of this Agreement, the Parties agree that its obligations, duties, and liabilities under this Article 11 are independent of all other provisions of this Agreement, including, but not limited to, Article 12 and accordingly shall not be limited, restricted, or in any way affected by any other provision of this Agreement except to the extent mandated by applicable law, and that the insurance requirements and the indemnity provisions shall be separate and distinct obligations and shall be separately and independently enforceable

11.11 **Consequential Damages** - **WITH THE EXCEPTION OF SECTIONS 11.5 AND 11.6, NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT, THE PARTIES AGREE AND UNDERSTAND THAT THE INDEMNITY OBLIGATIONS CONTAINED IN THIS AGREEMENT DO NOT INCLUDE AND NEITHER PARTY SHALL**

12



BE LIABLE TO THE OTHER PARTY FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES RESULTING FROM OR ARISING OUT OF THIS AGREEMENT UNDER ANY LAWS OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFIT, LOSS OF PRODUCT, LOSS OF RESERVES, LOSS OR INABILITY TO USE PROPERTY AND EQUIPMENT, AND BUSINESS INTERRUPTION, LOST OPPORTUNITY, HOWEVER SAME MAY BE CAUSED, REGARDLESS OF OWNERSHIP, REGARDLESS OF WHETHER OR NOT OCCASIONED BY OR RESULTING FROM NEGLIGENCE, STRICT LIABILITY, BREACH OF WARRANTY OR OTHER FAULT OF EITHER PARTY (OR ANY MEMBER OF ITS RESPECTIVE GROUP), AS THE CASE MAY BE, IN WHOLE OR PART, WHETHER SOLE, JOINT, ACTIVE OR PASSIVE, EXCEPTING ACTS OR OMISSIONS CONSTITUTING WILLFUL MISCONDUCT COMMITTED BY EITHER PARTY OR ANY MEMBER OF ITS RESPECTIVE GROUP ("CONSEQUENTIAL LOSS"). IN ADDITION, AND NOTWITHSTANDING ANY PROVISION TO THE CONTRARY ELSEWHERE IN THE AGREEMENT, COMPANY SHALL SAVE, INDEMNIFY, DEFEND AND HOLD HARMLESS CONTRACTOR GROUP FROM COMPANY GROUP'S OWN CONSEQUENTIAL LOSS AND CONTRACTOR SHALL SAVE, INDEMNIFY, DEFEND AND HOLD HARMLESS COMPANY GROUP FROM CONTRACTOR GROUP'S OWN CONSEQUENTIAL LOSS.

11.12 **Third-Party Beneficiaries** - It is the intent of the Parties to create a third party beneficiary obligation in favor of the members of each Party's respective Group, but to no others.

11.13 **Attorney's Fees** - In the event either Party fails to furnish a defense and indemnity as provided for herein, the other Party shall be entitled to receive from the offending Party, in addition to its attorneys' fees, costs, expenses and any amounts paid in judgment or settlement, all costs, expenses, and attorneys' fees incurred in the enforcement of this Agreement. Furthermore, the prevailing Party in any litigation relating to this Agreement, other than that involving defense and indemnity which is addressed above, shall be entitled to recover its reasonable and necessary attorneys' fees and costs of litigation from the other Party.

## 12. INSURANCE

12.1 **Insurance to be Carried** - Contractor shall maintain at its sole cost the insurance coverage set forth in Exhibit "C" with companies having an A.M. Best's rating of "A-" or better (or other reputable insurance rating organization of "secure" or better) with full policy limits applying, but not less than as stated in Exhibit "C".

12.2 **Waiver of Subrogation and Additional Insured Status** - All insurance policies of Contractor related to the Work, whether or not required by this Agreement, shall, as respects liabilities assumed by Contractor, (i) waive subrogation against the Company Group, (ii) name the Company Group as additional insured (except for Workmen's Compensation coverage), and (iii) be primary (and not concurrent or excess over other valid insurance which may be available to Company or any member of the Company Group) as respects any other coverage in favor of the Company Group.

12.3 **Insurance Certificates** - Prior to commencement of any Work, Contractor shall deliver to Company a certificate evidencing the required coverages in compliance with this Article 12, provided that neither Company's acceptance of an



incomplete or improper certificate, nor commencement of Work or payment for any Work hereunder, shall constitute a waiver of any rights of Company.   This certificate shall provide that any termination, non-renewal, or change materially restricting or reducing coverage or the cancellation of any policies under which certificates are issued shall not be valid as respects Company Group until Company has received thirty (30) days advance written notice of such change or cancellation.

12.4   **Failure to Carry Insurance** - Contractor agrees to comply with all terms of the insurance contracts referenced in this Article 12.  Failure of Contractor to keep the required insurance policies in full force and effect during the term of this Agreement and during any extensions shall constitute a material breach of this Agreement and Contractor shall be responsible for whatever coverage should have been obtained and Company shall have the right, in addition to any other rights it may have, to immediately terminate this Agreement without further liability to Contractor.  Nothing contained in these provisions relating to coverage and amounts set out herein shall operate as a limitation of Contractor's liability in tort or contracted for under the terms of this Agreement.  Should coverage be provided on a claims-made basis, the policy shall include at least a three (3) year extended reporting period endorsement, and shall not contain a "prior acts" exclusion.

12.6   **Scope of Insurance Coverage** - It is the intention of the Parties that the insurance coverages provided by Contractor in fulfillment of these obligations be as broad as possible.  Contractor agrees that in no event will any insurance policy obtained by Contractor exclude coverage for the Company Group because (1) a claim is made alleging (a) personal injury, death or property damage of Contractor's employees, (b) personal injury, death or property damage resulting from the negligence of Company, or any member of the Company Group, or any other entity, or (c) personal injury, death or property damage resulting from the sudden or accidental release, discharge or dispersal of chemicals, liquids, gasses, waste materials or pollutants, or (2) the indemnity provisions of this Agreement are inapplicable or otherwise unenforceable.

12.7   **Information to be Provided to Insurers** - Contractor shall provide a copy of Articles 11 and 12 hereof to its insurance carrier and require the carrier to provide insurance coverage that complies with both sections.

12.8   **Expense Associated with being Named Additional Insured** - Contractor and Company agree that as respects all Work performed in Louisiana (or offshore Louisiana), or in Texas (or offshore Texas), Company will pay to Contractor's insurers (or their agent or representative) the premium required by Contractor's insurers for extending all of Contractor's insurance policies to include coverage for Company Group as required under Article 12 of this Agreement.  Contractor will arrange to have Company billed for that premium by Contractor's insurers (or their agent or representative), and Contractor will advise Company prior to the inception of this Agreement if such premium will be in excess of $2500.  At each subsequent renewal of Contractor's insurances, Contractor will advise Company as respects the amount of the premium required for such extensions and arrange to have Company billed for the appropriate premium by their insurers (or their agent or representative).  Contractor warrants that such amount constitutes the full cost of extending such insurance protection to Company Group.

**13.   ACCEPTANCE OF WORK**

14



Company shall inspect the Work upon completion, to ensure Contractor's performance and compliance with this Agreement, the applicable Work Order, including drawings, specifications, and project conditions, if any, that may be furnished by Company; and, if not in compliance, Company will provide Contractor with a list of all items not in compliance and Contractor will timely and diligently correct such item; and if in compliance, Company shall, unless otherwise provided, give a written acceptance of the Work performed. Any acceptance by Company shall not relieve Contractor of any guarantees or obligations, or waive any of Company's rights.

14. **CONFIDENTIALITY**

14.1 **Confidential Information** - The Parties, in the course of negotiations and performance of this Agreement and subsequent relationships with each other, may have access to financial, accounting, statistical, personnel, client or other technical or business information of the other Party or its subsidiaries or affiliated companies, and, in the case of Company, information from a party from whom Company is performing services of which the Work forms a part which information is and shall be deemed for all purposes under this Agreement as trade secrets. Except as otherwise provided in this Agreement, all such information, including, without limitation, information obtained as a result of performance the Work, shall be considered "Confidential Information".

14.2 **Use of Confidential Information** - Each Party agrees to hold all Confidential Information in confidence, agrees not to disclose the Confidential Information to any Third Party without the written consent of the other Party, and will use the Confidential Information solely in connection with the performance of this Agreement. The Parties may disclose Confidential Information to their employees, agents or subcontractors to whom disclosure is necessary for the purpose of performing the Work, but only under terms and conditions which protect the confidentiality of the Confidential Information as required by this Agreement. The Parties shall be responsible for any unauthorized disclosure of Confidential Information by anyone in its respective Group.

14.3 **Exceptions** - The obligations imposed by this Agreement shall not apply to any Confidential Information that:

(a)     is already in the possession of the receiving Party on the Effective Date of this Agreement (except Confidential Information in connection with bids, negotiations and/or discussions leading to the execution of this Agreement) or is independently developed by the receiving Party; or

(b)     is or becomes publicly available through no fault of the receiving Party; or

(c)     is obtained by the receiving Party from a Third Party who is under no obligation of confidence to the disclosing Party; or

(d)     for which disclosure is required by law, but only after first notifying the disclosing Party of such required disclosure.

14.4 **Term of Confidentiality** - The obligations set forth in this Article 14 shall survive termination of this Agreement for a period of five (5) years from termination of the Work to which the Confidential Information relates.

## 15.  ASSIGNMENT

Contractor shall have the right to hire subcontractors to assist in performing the Work, but Contractor shall be responsible for said subcontractors and their performance. However, Contractor shall not assign this Agreement, or any Work Order, without Company's prior written consent.  Any such subcontract or assignment shall not relieve Contractor of any liability for the performance of this Agreement. Company may assign this Agreement, or any Work Order, to any parent, subsidiary, related or affiliated corporation, partnership, or limited liability company, whether now existing or hereafter constituted, or any party from whom Company is performing services of which the Work forms a part and Contractor hereby consents to such assignment.

## 16.  FORCE MAJEURE

16.1  **Definition** - For the purpose of this Agreement, "Force Majeure" shall mean any other occurrence not within the reasonable control of the Party affected, including, by way of illustration, but not limited to, an act of God, an act of the public enemy, strike, lockout, boycott, picketing, riot, insurrection, fire, or any governmental law, order, rule, regulation or ordinance.

16.2  **Obligations Suspended** - If either Party is rendered unable, wholly or in part, by Force Majeure to carry out its obligations (except financial obligations) under this Agreement, it is agreed that on such Party's giving notice and reasonably full particulars of such Force Majeure in writing or by facsimile to the other Party within a reasonable time after the occurrence of the cause relied on, then the obligations of the Party giving such notice, so far as they are affected by such Force Majeure, shall be suspended during the continuance of any inability so caused, but for no longer period, and such cause shall so far as possible be remedied with all reasonable dispatch.  The obligation to make payments hereunder shall not be relieved, delayed or excused by any such Force Majeure condition.

16.3  **Labor Disputes** - It is understood and agreed that the settlement of strikes and lockouts shall be entirely within the discretion of the Party asserting Force Majeure as the excuse for non-performance, and that the above requirement that any Force Majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes or lockouts by acceding to the demands of an opposing Party when such course is inadvisable in the discretion of the Party asserting Force Majeure.

## 17.  AUDITS

Contractor shall maintain during the course of this Agreement, and retain for not less than three (3) years after the Work in question have been performed, complete and accurate records of all of Contractor's charges and documentation of items which are chargeable to Company under this Agreement.  Company and/or any party from whom Company is performing services of which the Work forms a part shall have the right at any reasonable time during that period and during normal business hours to inspect and audit those records by authorized representatives of its own or any third-party consultant selected by it.  The records to be thus maintained and retained by Contractor shall include all records required to verify the accuracy of Contractor's charges.  If such audit reveals a discrepancy between the amount or value of materials or services billed to Company and that which is evidenced by Contractor's books and records, Company shall have the right to

16



adjust its account with Contractor, which adjustment may necessitate a refund of funds disbursed to Contractor. If Company is unable to gain access to the pertinent records of any of the Contractor's subcontractors or vendors, Contractor will expend every effort to assist Company in obtaining this information.

## 18.    NOTICES

All notices necessary to be given under the terms of this Agreement, except as herein otherwise provided, shall be effective upon receipt and shall be in writing and communicated by prepaid mail, telegram or facsimile transmission addressed to the respective parties at the address below or to such other address as respectively designated hereafter in writing from time to time:

> **To Company:**    JAB Energy Solutions II LLC
> 262 North Sam Houston Pkwy East
> Suite 230
> Houston, Texas 77060
>
> Attn:   Brent Boudreaux
> Fax:   281-260-7500

> **To Contractor:**   Offshore Technical Solutions
> 690 S. Hollywood Rd
> Houma, LA 70360
>
> Attn:   Richard Burgo
> Fax:   985-879-3475

## 19.    CONFLICTS OF INTEREST

No Contractor employee, agent, officer, director, or subcontractor shall give, or cause to be given, to any employee (or their immediate family) of Company any gift, entertainment, travel, payment, loan, or service. Gifts of nominal value and entertainment, meals and social invitations that are customary and proper under the circumstances and do not place the recipient under obligation, or the appearance of obligation, of any sort, are acceptable. Nor will Contractor's employees, agents, officers, directors, or subcontractors provide direct or indirect employment to family members of active employees of Company without written approval of a duly authorized Company officer. Also any arrangement by Contractor to enter into any direct or indirect business arrangement with any employee or agent of Company is prohibited. Company may audit pertinent Contractor, subcontractor, or vendor records to confirm compliance with this paragraph. If Company cannot gain access to pertinent records of any of Contractor's subcontractors or vendors, Contractor will expend every effort to assist Company in obtaining the requested information from Contractor's subcontractors and vendors necessary for a complete audit to confirm compliance with the above paragraph.

## 20.    SUBSTANCE ABUSE

Contractor agrees to abide by the terms of the substance abuse requirements in attached Exhibit "E".

17



## 21.   COMPLIANCE WITH APPLICABLE LAWS

21.1   **Posting of Notices** - Contractor agrees to keep posted all notices required under workers' compensation laws and other laws, ordinances, rules, or regulations of any governmental authority having jurisdiction over the Work.

21.2   **Contractor's Obligation and Indemnification of Company** - Contractor agrees to comply, and shall ensure that all members of the Contractor Group comply, with **all** federal, state, tribal, county, municipal and other laws, rules, regulations, and ordinances applicable to the performance of this Agreement. **CONTRACTOR AGREES TO BE RESPONSIBLE FOR, AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP AGAINST FINES, PENALITIES AND OTHER SIMILAR ASSESSMENTS IMPOSED OR ASSESSED AGAINST CONTRACTOR GROUP OR COMPANY GROUP AS A RESULT OF CONTRACTOR GROUP'S FAILURE TO COMPLY WITH ANY APPLICABLE LAWS, RULES, REGULATIONS AND ORDINANCES**

## 22.   EQUAL EMPLOYMENT OPPORTUNITY

Contractor agrees to abide by the terms of the Equal Employment Opportunity requirements in attached Exhibit "F".

## 23.   ANNOUNCEMENTS AND PRESS RELEASES

Contractor agrees that during and after the term of this Agreement, it will make no announcements, press releases or other publications concerning the Work without the prior written consent of Company's authorized officer, except that Contractor may identify Company as a customer and client.

## 24.   OWNERSHIP OF DATA

All data and information related to the Work, and generated by or for Contractor and its subcontractors and vendors during the performance of the Work, shall be the sole property of Company.   Contractor agrees to destroy all draft copies of reports when subsequent final copies of those reports are generated.

## 25.   APPLICABLE LAW

The Parties recognize and agree that Work that may be performed by Contractor for Company may be performed at numerous locations, and at times simultaneously, and as a result could be subject to the laws of various jurisdictions. In order to provide certainty and predictability with regard to the interpretation of the provisions of this Agreement, the Parties, knowingly and willingly agree that this Agreement shall be governed by and interpreted in accordance with **GENERAL MARITIME LAW, BUT IF GENERAL MARITIME LAW IS NOT APPLICABLE, THE LAWS OF THE STATE OF TEXAS (EXCLUSIVE OF ANY PRINCIPLES OF CONFLICTS OF LAWS WHICH WOULD DIRECT APPLICATION OF THE SUBSTANTIVE LAWS OF ANOTHER JURISDICTION) SHALL GOVERN.** In the event of a dispute over the meaning or application of this

18

Agreement, it shall be construed fairly and reasonably and neither more strongly for nor against either Party.

## 26. SEVERABILITY

If any part, term or provision of this Agreement is held by a court of competent jurisdiction to be unenforceable or in conflict with any applicable law, the validity of the remaining portions or provisions shall not be affected by such determination. Any term or provision so held to be unenforceable or in conflict with applicable law shall be deemed amended to the minimum extent necessary to comply with such law.

## 27. SURVIVAL

The indemnity, insurance, audit, confidentiality and related provisions of this Agreement (as well as any other provisions as may be identified expressly herein or which by their nature are intended to survive termination) shall survive termination of this Agreement.

## 28. WAIVER

The failure of either Party hereto at any time to require performance by the other Party of any provision of this Agreement shall in no way effect the right of such Party thereafter to enforce the same, nor shall any waiver of any breach of any provision hereof by the other Party be taken or held to be a waiver by such Party of any succeeding breach of such provision, or as a waiver of the provision itself.

## 29. PERSONAL CONTRACT

This Agreement shall be deemed a personal contract of Contractor, which waives all benefits of the Shipowner's Limitation of Liability Act, 46 U.S.C. § 183, et seq. or any other similar laws as to Company Group. Neither Contractor nor its underwriters shall be entitled to claim the benefits of such limitation of liability statute in respect of Claims asserted by Company Group. The purpose of this Article is to insure by specific contractual agreement that Company Group are able to enforce all indemnity obligations and insurance coverage for their benefit under this Agreement to the maximum extent permitted by law. Nothing in this paragraph is intended to prevent Contractor or its underwriters from asserting all applicable limitation of liability defenses or Claims by persons or entities not specifically defined as Company Group under this Agreement.

## 30. CITIZENSHIP OF CONTRACTOR'S PERSONNEL

Contractor certifies that none of Contractor's personnel who perform Work pursuant to this Agreement are unauthorized aliens as defined in The Immigration Reform and Control Act of 1986 and the rules and regulations promulgated pursuant thereto, all as amended from time to time. Contractor agrees, as required, to obtain a substantially similar certification from its contractors or subcontractors performing Work related to this Agreement. Contractor further agrees, if requested, to provide proof of citizenship of Contractor's personnel who perform Work pursuant to this Agreement.

## 31. SECTION HEADINGS

The article or section headings appearing in this Agreement have been inserted for the purpose of convenience and ready reference. They do not purport to, and shall not be deemed to define, limit or extend the scope or intent of the sections to which they appertain.

## 32.   EXHIBITS

The following exhibits are attached hereto and made a part hereof:

| | |
|---|---|
| Exhibit "A" | - Services Work Order and Pricing |
| Exhibit "C" | - Insurance |
| Exhibit "D" | - Contractor Safety Management (By Contractor) |
| Exhibit "E" | - Substance Abuse (By Contractor) |
| Exhibit "F" | - Equal Employment Opportunity (By Contractor) |
| Exhibit "G" | - Special Terms and Conditions for the Provision of Vessels |

## 33.   CONFLICTS

If conflicts exist between this Agreement and any other writing, this Agreement shall control, unless the other writing specifically references this Agreement and the Parties' intent that the other writing control, and such other writing is executed by authorized officers of the Parties. Further, if conflicts exist between the body of this Agreement and the Exhibits attached to this Agreement, then the body of this Agreement shall control, unless the Exhibit expressly provides otherwise.

## 34.   ENTIRE AGREEMENT

This Agreement supersedes all prior oral or written proposals, communications or other agreements related to the subject matter of this Agreement. This Agreement sets forth the entire agreement between the Parties with regard to the subject matter of this Agreement and no amendment shall be binding upon the Parties unless in writing and signed by authorized officers of both Parties. In addition, in the event of any conflict this Agreement shall control over any subsequent writing between the Parties unless the intent to amend or supercede this Agreement is expressly stated in a writing executed by a representative of each party authorized to amend this Agreement.

## 35.   COUNTERPARTS

This Agreement may be executed in multiple counterparts, each of which shall be considered an original once Company and Contractor have executed a counterpart of this Agreement.

20



**JAB Energy Solutions II LLC**

By: _____

Name: _Brent Boudreaux_____

Title: _President_____

Date: ___6/27/18_____

**Offshore Technical Solutions, LLC**

By: _____

Name: _Richard Burgo_

Title: ___General Manager_

Date:___06/26/18_

21

# Exhibit C

## Insurance Requirements

Each Party shall carry and maintain for the benefit of the other Party, to the extent of the specific risks and liabilities assumed in this Agreement by the respective Parties, the following minimum insurance coverage with policy territory sufficient to cover the Work hereunder.

(a) **Workmen's Compensation Insurance**, with statutory limits in accordance with all applicable State, Federal and Maritime laws, and **Employer's Liability Insurance** of **$1,000,000 per accident/occurrence**, including but not limited to an "Alternate Employer" and "Borrowed Servant" endorsement in favor of the other Party and its respective Company Group or Contractor Group, whichever is applicable. If the operations are over water or where the laws hereinafter mentioned apply, the Party shall carry the following additional insurance as applicable: **U.S. Longshoremen's and Harbor Worker's Compensation Act Liability** (including the Outer Continental Shelf Lands Act) for statutory limits, and **Maritime Employer's Liability** of **$1,000,000 per accident/occurrence** (including but not limited to coverage for Jones Act, General Maritime Laws and Death on the High Seas Act; Transportation, Wages, Maintenance and Cure; Voluntary Compensation; Alternate Employer/Borrowed Servant endorsement in favor of the other Party and its respective Company Group or Contractor Group, whichever is applicable; and "In rem" endorsement).

(b) **Comprehensive General Liability Insurance**, with limits of **$1,000,000 combined single limit per occurrence**, including but not limited to coverage for public liability, bodily/personal injury, advertising injury, property damage premises coverage, contractual liability for those risks and liabilities assumed by the respective Parties herein, cross liability and severability of interest, liability for pollution and cleanup on a sudden and accidental basis, products and completed operations, protective liability/independent contractors/work sublet.

(c) **Automobile Liability Insurance**, with limits of **$1,000,000 combined single limit per accident/occurrence** for bodily/personal injury and property damage, including but not limited to coverage for all ~~owned,~~ hired and non-owned vehicles or automotive equipment used by or for the respective Parties and contractual liability for those risks and liabilities assumed by the Parties pursuant to this Agreement.

(d) **Property Insurance** covering each Party's respective machinery and equipment for its replacement value and including removal of wreck/debris coverage.

(e) **Umbrella Excess Liability Insurance**, with limits of ~~$20,000,000~~ **$10,000,000 per accident/occurrence**, in excess of the primary liability coverages and limits above.

To the extent of the specific risks and liabilities assumed by the respective Parties to this Agreement, all of the above insurance coverages shall be endorsed to provide that:



(1) The Party's insurers waive their right of subrogation (equitable or by assignment, express or implied, loan receipt or otherwise), except for Workers' Compensation, against Company Group or Contractor Group, whichever is applicable.

(2) The Party's insurers name Company Group or Contractor Group, whichever is applicable, as additional insureds (except for Worker's Compensation Insurance).

(3) Such insurance coverage is primary over any insurance coverage maintained by the other Party.

**From:** Joshua Towns <jtowns@jabenergysolutions.com>
**Sent:** Wednesday, August 29, 2018 12:35 PM
**To:** Richard Burgo <richard@offshoretechnical.com>
**Subject:** Re: Mactech Spread

No, they can't, logistics told me they have to use the crane.


Sent via the Samsung Galaxy Note8, an AT&T 4G LTE smartphone


-------- Original message --------
From: Richard Burgo <richard@offshoretechnical.com>
Date: 8/29/18 12:32 (GMT-06:00)
To: Joshua Towns <jtowns@jabenergysolutions.com>
Subject: Mactech Spread

Josh,

This is the copy of the manifest.
5 lifts all by forklift to offload the truck.
I'm not sure if you can load the boat without the crane.


**From:** Joshua Towns <jtowns@jabenergysolutions.com>
**Sent:** Wednesday, August 29, 2018 11:00 AM
**To:** Richard Burgo <richard@offshoretechnical.com>
**Subject:** Cost

What is my cost to this point by day?

Thank you

Joshua Towns
JAB Energy Solutions L.L.C.
jtowns@jabenergysolutions.com
(979)229-9161 - Cell
(281)260-7500 - Office
(281)260-7508 - Fax

EXHIBIT - 2




N HOUSTON
13 SEP '18
PM 11
02 1P $ 000.47⁰
0001956628  SEP 13 2018
MAILED FROM ZIP CODE 77385

```
                            773  NEE  1     C17I0009/13/18
NOTIFY SENDER OF NEW ADDRESS
1 OFFSHORE TECHNICAL SOLUTIONS
690 S HOLLYWOOD RD
HOUMA LA 70360-3226

BC:  70360322690      *2533-05596-13-39
```

---

**Offshore Technical Solutio  Date:  9/13/2018**                                          **No:    1542**

| Invoice | Description | Amount | Discount | Net Amount |
|---------|-------------|--------|----------|------------|
| I-7532  |             | 73,362.45 | 0.00 | 73,362.45 |
|         |             |           | **Total:** | 73,362.45 |

---



**No:  1542      Date:  9/13/2018**

19221 I-45 South, Suite 200
Shenandoah, TX 77385

**Wells Fargo Bank NA**
11-24
1210

**Amount:** $   *********73,362.45

Seventy-Three Thousand Three Hundred Sixty-Two and 45/100 US$******************************************

*SmdeRobertsne*

**Pay to the**   Offshore Technical Solutions
**Order of**    1345 Valhi Blvd
               Houma LA 70360
               USA



EXHIBIT - 3

| Invoice | Description | Amount | Discount | Net Amount |
|---------|-------------|--------|----------|------------|
| I-7695 | | 145,100.00 | 0.00 | 145,100.00 |

| | | | **Total:** | 145,100.00 |

---

🔒 THE REVERSE SIDE OF THIS DOCUMENT INCLUDES MICROPRINTED ENDORSEMENT LINES AND ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW   🔒

**No:** 4998        **Date:** 9/26/2019

**JAB Energy Solutions**

19221 I-45 South, Suite 324
Shenandoah, TX 77385

**Capital One, NA**

**Amount:** $        ********145,100.00

One Hundred Forty-Five Thousand One Hundred and no/100 US$**********************************************

SmdeRobertson

**Pay to the Order of**   Offshore Technical Solutions
690 South Hollywood Road
Houma LA 70360
USA











N HOUSTON
TX 773
24 OCT '19
PM 5 L

FIRST-CLASS

US POSTAGE

02 1P
0001221837      OCT 23 2019
MAILED FROM ZIP CODE 77385

$ 000.50

EXHIBIT - 4


**OFFSHORE TECHNICAL SOLUTIONS**

# Invoice   **I-7851**

690 South Hollywood Road
Houma, LA 70360

| Invoice Date | 10/31/2020 |
| --- | --- |
| Point of Contact | Richard Burgo |
| Project No. | 2009-1768-P6380 |

JAB Energy Solutions
19221 Interstate 45 S
Suite 324
Shenandoah, TX 77385

| Customer PO | Location | Vessel | Terms: |
| --- | --- | --- | --- |
| JAB-0708 | HI A 370-A | DB Swing Thompson | Net 45 |

| Description | Qty | U/M | Rate | Amount |
| --- | --- | --- | --- | --- |
| ACU-CUT Water Abrasive Cutting System (10/24/20 - 10/26/20) (10/31/20) | 4 | day | 6,800.00 | 27,200.00 |
| Multi-string Conductor Cutting Package (10/24/20 - 10/26/20) (10/31/20) | 4 | day | 2,000.00 | 8,000.00 |
| Standby Rate on ACU-CUT Water Abrasive Cutting System (10/04/20 - 10/18/20) | 15 | day | 316.25 | 4,743.75 |
| Standby Rate on ACU-CUT Water Abrasive Cutting System (10/19/20 - 10/23/20) (10/27/20 - 10/30/20) | 9 | day | 3,520.00 | 31,680.00 |
| Personnel 24 Hour coverage (10/24/20 - 10/26/20) (10/30/20 - 10/31/20) | 5 | day | 7,100.00 | 35,500.00 |
| Diamond Wire Saw 36" (Includes HYD, Hose Reel, Control Panel, and Transport Basket) (10/31/20) | 1 | day | 1,620.00 | 1,620.00 |
| Diamond Wire Saw 30" - Backup (10/31/20) | 1 | day | 1,150.00 | 1,150.00 |
| Mobilization (10/04/20) | 1 | ea | 6,400.00 | 6,400.00 |
| Personnel Transportation (Cost + 15%) (Demob from ICY 10/26/20) | 1 | ea | 477.25 | 477.25 |
| Personnel Transportation (Cost + 15%) (Mob to ICY 10/30/20) | 1 | ea | 437.00 | 437.00 |
| Additional Equipment Mobilization (DWS Spread to ICY 10/30/20) | 1 | ea | 250.00 | 250.00 |

| Interest at 1.5% on all past due amounts | **Total** | $117,458.00 |
| --- | --- | --- |

EXHIBIT - 5



**OFFSHORE TECHNICAL SOLUTIONS**

# Invoice  **I-7859**

690 South Hollywood Road
Houma, LA 70360

| Invoice Date | 11/30/2020 |
|---|---|
| Point of Contact | Richard Burgo |
| Project No. | 2009-1768-P6380 |

JAB Energy Solutions
19221 Interstate 45 S
Suite 324
Shenandoah, TX 77385

| Customer PO | Location | Vessel | Terms: |
|---|---|---|---|
| JAB-0708 | HI A 370-A | DB Swing Thompson | Net 45 |

| Description | Qty | U/M | Rate | Amount |
|---|---|---|---|---|
| ACU-CUT Water Abrasive Cutting System (11/01/20) (11/14/20 - 11/15/20) (11/26/20 - 11/28/20) | 6 | day | 6,800.00 | 40,800.00 |
| Multi-string Conductor Cutting Package (11/01/20) | 1 | day | 2,000.00 | 2,000.00 |
| Standby Rate on ACU-CUT Water Abrasive Cutting System (11/02/20 - 11/13/20) (11/22/20 - 11/25/20) (11/29/20) | 17 | day | 3,520.00 | 59,840.00 |
| Standby Rate on ACU-CUT Water Abrasive Cutting System (11/16/20 - 11/21/20) (11/30/20) | 7 | day | 316.25 | 2,213.75 |
| Personnel 24 Hour coverage (11/01/20 - 11/05/20) (11/13/20 - 11/16/20) | 9 | day | 7,100.00 | 63,900.00 |
| Personnel 24 Hour coverage (11/11/20 - 11/12/20) (11/22/20 - 11/29/20) | 10 | day | 5,200.00 | 52,000.00 |
| 36" Diamond Wire Saw Package (11/01/20 - 11/05/20) | 5 | day | 1,620.00 | 8,100.00 |
| 30" Diamond Wire Backup Saw (11/01/20 - 11/05/20) | 5 | day | 1,150.00 | 5,750.00 |
| 30" and 36" Diamond Wire Saw Packages (11/11/20 - 11/16/20) | 6 | day | 3,000.00 | 18,000.00 |
| 60" Diamond Wire Saw Package X 2 (11/22/20 - 11/28/20) | 7 | day | 3,050.00 | 21,350.00 |
| Standby Rate 60" Diamond Wire Saw Package X 2 (11/29/20 - 11/30/20) | 2 | day | 1,525.00 | 3,050.00 |
| 30" Cutting Wire Assembly (11/01/20) (11/13/20 - 11/15/20) | 5 | ea | 975.00 | 4,875.00 |
| 36" Cutting Wire Assembly (11/14/20 - 11/15/20) | 2 | ea | 1,100.00 | 2,200.00 |
| 60" Cutting Wire Assembly (11/23/20 - 11/27/20) | 7 | ea | 1,620.00 | 11,340.00 |
| Cutting Charge (Piles) (11/14/20) | 1 | ea | 550.00 | 550.00 |
| Cutting Charge - (Conductors) (11/01/20) | 2 | ea | 950.00 | 1,900.00 |
| Demobilization | 0 | ea | 9,000.00 | 0.00 |

| Interest at 1.5% on all past due amounts | **Total** |
|---|---|

EXHIBIT - 6



## OFFSHORE TECHNICAL SOLUTIONS

690 South Hollywood Road
Houma, LA 70360

### Invoice    I-7859

| Invoice Date | 11/30/2020 |
|---|---|
| Point of Contact | Richard Burgo |
| Project No. | 2009-1768-P6380 |

JAB Energy Solutions
19221 Interstate 45 S
Suite 324
Shenandoah, TX 77385

| Customer PO | Location | Vessel | Terms: |
|---|---|---|---|
| JAB-0708 | HI A 370-A | DB Swing Thompson | Net 45 |

| Description | Qty | U/M | Rate | Amount |
|---|---|---|---|---|
| Personnel Transportation (Demob ICY to Houma + 2 Hour wait at dock 11/05/20) | 1 | ea | 540.00 | 540.00 |
| Personnel Transportation (Mob to ICY 11/11/20) | 1 | ea | 450.00 | 450.00 |
| Personnel Transportation (Mob to ICY 11/13/20) | 1 | ea | 450.00 | 450.00 |
| Personnel Transportation (Demob Cameron to Houma + wait at dock 11/16/20) | 1 | ea | 1,148.79 | 1,148.79 |
| Personnel Transportation (Mob to Stone Dock in Cameron from Houma Base 11/22/20) | 1 | ea | 805.00 | 805.00 |
| Personnel Mobilization (GSI tech to Cameron Dock 11/24/20) | 1 | ea | 805.00 | 805.00 |
| Personnel Transportation (Demob Cameron to Houma + 2.5hr wait at dock 11/29/20) | 1 | ea | 904.48 | 904.48 |
| Mechanical Equipment Demobilization  (DWS Spread to Broussard 11/05/20) | 1 | ea | 634.24 | 634.24 |
| Abrasive Equipment Demobilization (Damaged TDU, HRU, HPP, CRI on 11/06/20) | 1 | ea | 1,750.00 | 1,750.00 |
| Mechanical Equipment Mobilization (2 DWS Spreads to ICY on 11/11/20) | 1 | ea | 807.24 | 807.24 |
| Abrasive Equipment Mobilization (HPP, HRU, CRI on 11/13/20) | 1 | ea | 1,750.00 | 1,750.00 |
| Mechanical Equipment Demobilization (2 DWS Spreads from Cameron to Broussard on 11/17/20) | 1 | ea | 1,426.87 | 1,426.87 |
| Abrasive Equipment Demobilization (Well Cutting Eq from Cameron to Houma 11/19/20) | 1 | ea | 1,937.76 | 1,937.76 |
| Mechanical Equipment Mobilization (2 DWS Spreads 60" from Houma to Cameron 11/22/20) | 1 | ea | 2,991.23 | 2,991.23 |

| Interest at 1.5% on all past due amounts | **Total** | $314,269.36 |
|---|---|---|



**OFFSHORE TECHNICAL SOLUTIONS**

690 South Hollywood Road
Houma, LA 70360

Invoice **I-7887**

| Invoice Date | 12/18/2020 |
|---|---|
| Point of Contact | Richard Burgo |
| Project No. | 2009-1768-P6380 |

JAB Energy Solutions
19221 Interstate 45 S
Suite 324
Shenandoah, TX 77385

| Customer PO | Location | Vessel | Terms: |
|---|---|---|---|
| JAB-0708 | HI A 370-A | DB Swing Thompson | Net 45 |

| Description | Qty | U/M | Rate | Amount |
|---|---|---|---|---|
| ACU-CUT Water Abrasive Cutting System (12/07/20 - 12/08/20) | 2 | day | 6,800.00 | 13,600.00 |
| Standby Rate on ACU-CUT Water Abrasive Cutting System (12/04/20 - 12/06/20) (12/09/20) | 4 | day | 3,520.00 | 14,080.00 |
| Standby Rate on ACU-CUT Water Abrasive Cutting System (12/01/20 - 12/03/20) | 3 | day | 316.25 | 948.75 |
| Personnel 24 Hour coverage (12/04/20 - 12/09/20) | 6 | day | 7,100.00 | 42,600.00 |
| 60" Diamond Wire Saw Package X 2 (12/07/20 - 12/08/20) | 2 | day | 3,050.00 | 6,100.00 |
| Standby Rate 60" Diamond Wire Saw Package X 2 (12/01/20 - 12/06/20) | 6 | day | 1,525.00 | 9,150.00 |
| 60" Diamond Wire Saw Repairs (12/01/20) | 1 | ea | 3,905.00 | 3,905.00 |
| Cutting Charge (Piles) (12/07/20) | 1 | ea | 550.00 | 550.00 |
| Demobilization (12/09/20) | 1 | ea | 9,000.00 | 9,000.00 |
| Personnel Transportation (Mob to ICY 12/04/20) | 1 | ea | 477.25 | 477.25 |
| Personnel Transportation (Demob ICY to Houma 12/09/20) | 1 | ea | 477.25 | 477.25 |
| Mechanical Equipment Demobilization  (DWS Spread to Houma 12/09/20) | 1 | ea | 1,862.94 | 1,862.94 |

| Interest at 1.5% on all past due amounts | **Total** | $102,751.19 |
|---|---|---|

EXHIBIT - 7



**State of Louisiana Secretary of State**

**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

---

| Name | Type | City | Status |
|---|---|---|---|
| ALLISON MARINE HOLDINGS, LLC | Limited Liability Company (Non-Louisiana) | WILMINGTON | Active |

**Previous Names**

**Business:** ALLISON MARINE HOLDINGS, LLC

**Charter Number:** 41181741Q

**Registration Date:** 5/21/2013

**Domicile Address**

251 LITTLE FALLS DRIVE

WILMINGTON, DE 19808

**Mailing Address**

19221 I-45 SOUTH, SUITE 324

SHENANDOAH, TX 77385

**Principal Business Office**

19221 I-45 SOUTH, SUITE 324

SHENANDOAH, TX 77385

**Registered Office in Louisiana**

501 LOUISIANA AVENUE

BATON ROUGE, LA 70802

**Principal Business Establishment in Louisiana**

9828 HWY 182 EAST

MORGAN CITY, LA 70380

## Status

**Status:** Active

**Annual Report Status:** In Good Standing

**Qualified:** 5/21/2013

**Last Report Filed:** 4/21/2020

**Type:** Limited Liability Company (Non-Louisiana)

## Registered Agent(s)

| Agent: | CORPORATION SERVICE COMPANY |
|---|---|
| Address 1: | 501 LOUISIANA AVENUE |
| City, State, Zip: | BATON ROUGE, LA 70802 |

EXHIBIT - 8

| **Appointment Date:** | 5/21/2013 |
|---|---|

# Officer(s)

| | |
|---|---|
| **Officer:** | HENRY ROBARDS |
| **Title:** | Manager |
| **Address 1:** | 217 TIGER LILY |
| **City, State, Zip:** | HOUMA, LA 70360 |

## Amendments on File (1)

| Description | Date |
|---|---|
| Foreign LLC Statement of Change | 12/28/2015 |

Print

**From:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Sent:** Wednesday, February 24, 2021 11:02 AM
**To:** Richard Burgo <richard@offshoretechnical.com>
**Subject:** RE: Invoices HI A 370-A

Richard
We are trying to expedite payment from BEE/BSEE.
As soon as payment is released we can begin to get vendors paid.

Thanks,

Brent Boudreaux
JAB Energy Solutions
19221 I 45 South
**Suite 324**
Shenandoah, Texas 77385
281-260-7500 office
281-204-7168 cell

## Please note we moved offices.

**From:** Richard Burgo <richard@offshoretechnical.com>
**Sent:** Thursday, February 18, 2021 1:46 PM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Subject:** Invoices HI A 370-A

Brent,

I've been directed on this matter.

We've submitted three separate invoices for the work performed on the HI A 370-A removal.
Those were I-7851, I-7859, and I-7887.   The total for all three invoices is $534,478.55
I confirmed that all three invoices are in your payables to be paid.

The last invoice submitted is at 62 days outstanding.

I was hoping to get an update from you on the expected payment date for all three.

Let me know if any additional information is needed.

EXHIBIT - 9

Thanks,

**Richard Burgo**
General Manager



690 South Hollywood Rd
Houma, LA 70360
(985) 879-3212 Office
(985) 855-7780 Direct/Cell
(985) 879-3475 Fax
**website | Facebook**

This e-mail is confidential and is intended only for the person(s) named above. Its contents may also be protected by privilege, and all rights to privilege are expressly claimed and not waived. If you have received this e-mail in error, please call us immediately and destroy the entire e-mail. If this e-mail is not intended for you, any reading, distribution, copying, or disclosure of this e-mail is strictly prohibited.

**Subject:** Offshore Technical Solutions Inv.# I-7859 for JAB Energy Solutions PO# JAB-0708

**Date:** Wednesday, December 9, 2020 at 12:31:52 PM Central Standard Time

**From:** Amy Porche

**To:** invoice@jabenergysolutions.com

**Attachments:** image001.jpg, image002.png, Offshore Technical Solutions Inv.# I-7859.pdf

Please find attached Offshore Technical Solutions Inv.#  I-7859 for JAB Energy Solutions PO# JAB-0708 for your processing.

Kindest Regards,

**Amy Porche**
Office Administrator



690 South Hollywood Road Houma, LA  70360
(985) 879-3212 Office
(985) 688-5800 Direct
(985) 879-3475 Fax
www.offshoretechnical.com

This e-mail is confidential and is intended only for the person(s) named above. Its contents may also be protected by privilege, and all rights to privilege are expressly claimed and not waived. If you have received this e-mail in error, please call us immediately and destroy the entire e-mail. If this e-mail is not intended for you, any reading, distribution, copying, or disclosure of this e-mail is strictly prohibited.

EXHIBIT - 10

Received: from BYAPR17MB2712.namprd17.prod.outlook.com
(2603:10b6:a03:e1::23)
 by BN7PR17MB2194.namprd17.prod.outlook.com with HTTPS; Wed, 9 Dec
2020
 18:32:51 +0000
Received: from C01PR15CA0110.namprd15.prod.outlook.com
(2603:10b6:101:21::30)
 by BYAPR17MB2712.namprd17.prod.outlook.com (2603:10b6:a03:e1::23)
with
 Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.3632.21; Wed,
9 Dec
 2020 18:32:47 +0000
Received: from MW2NAM12FT032.eop-nam12.prod.protection.outlook.com
 (2603:10b6:101:21:cafe::a) by C01PR15CA0110.outlook.office365.com
 (2603:10b6:101:21::30) with Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.3654.12 via
Frontend
 Transport; Wed, 9 Dec 2020 18:32:47 +0000
Received: from NAM10-MW2-obe.outbound.protection.outlook.com
(52.100.157.206)
 by MW2NAM12FT032.mail.protection.outlook.com (10.13.180.225) with
Microsoft
 SMTP Server (version=TLS1_2,
cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id
 15.20.3654.10 via Frontend Transport; Wed, 9 Dec 2020 18:32:47 +0000
From: "postmaster@allisonmarine.onmicrosoft.com"
        <postmaster@allisonmarine.onmicrosoft.com>
To: Amy Porche <amy@offshoretechnical.com>
Subject: Delivered: Offshore Technical Solutions Inv.#  I-7859 for JAB
Energy
 Solutions PO# JAB-0708
Thread-Topic: Offshore Technical Solutions Inv.#  I-7859 for JAB
Energy
 Solutions PO# JAB-0708
Thread-Index: AdbOWWxVwFhXlopMTDK9QzRd7WJDbAAAEP8a
Date: Wed, 9 Dec 2020 18:32:45 +0000
Message-ID:
 <26ff0509-b489-4a36-b69f-
c0ed4b8bd8ed@CH2PR07MB6551.namprd07.prod.outlook.com>
References:

<BN7PR17MB2194926AF8D03224A5BDFC92BFCC0@BN7PR17MB2194.namprd17.prod.ou
tlook.com>
In-Reply-To:

<BN7PR17MB2194926AF8D03224A5BDFC92BFCC0@BN7PR17MB2194.namprd17.prod.ou
tlook.com>
Content-Language: en-US
X-MS-Exchange-Organization-AuthSource:

EXHIBIT - 11

MW2NAM12FT032.eop-nam12.prod.protection.outlook.com
X-MS-Has-Attach: yes
X-Auto-Response-Suppress: All
X-MS-Exchange-Organization-Network-Message-Id:
 7c311a03-68ca-4935-e16c-08d89c70d3ae
X-MS-TNEF-Correlator:
X-MS-Exchange-Organization-RecordReviewCfmType: 0
x-ms-publictraffictype: Email
received-spf: Pass (protection.outlook.com: domain of
 NAM10-MW2-obe.outbound.protection.outlook.com designates
52.100.157.206 as
 permitted sender) receiver=protection.outlook.com; client-
ip=52.100.157.206;
 helo=NAM10-MW2-obe.outbound.protection.outlook.com;
x-ms-exchange-organization-originalclientipaddress: 52.100.157.206
x-ms-exchange-organization-originalserveripaddress: 10.13.180.225
x-ms-exchange-organization-submissionquotaskipped: False
authentication-results: spf=pass (sender IP is 52.100.157.206)
 smtp.helo=NAM10-MW2-obe.outbound.protection.outlook.com;
 offshoretechnical.com; dkim=pass (signature was verified)
 header.d=allisonmarine.onmicrosoft.com;offshoretechnical.com;
 dmarc=bestguesspass action=none
 header.from=allisonmarine.onmicrosoft.com;compauth=pass reason=109
arc-seal: i=1; a=rsa-sha256; s=arcselector9901; d=microsoft.com;
cv=none;
 b=eKO0n+OEySs/
YnAfR7JIMMMVfiIFth0CsW8cfXMpIMzDO2MYZ6aN0Dw+qTjDVSYZCZTWfDBpD8+55uUfw1
U5sHZUNJWNM6URJPpv5Ujfjn3NwdStsHcFDqA70GpL78VWSRpU5fd73J/
tHZQfz5C7jBhyIrLMvnusyKuZYM07GTacRmPn0G1Y+AEV3R+zeDssFfi17ct8DlKx5A14Z
X+2m5Pg66x39CFnDcInwlQTer99C0ONaeOP0n/ecm/0z8dcqvQJLfYcRW/L9XRRpAWuP/
ManYaRZpRruR/RXDtQQKlgFlAakXHGKlW3zRz4fkQRi3F7pAaEE/BL2gjhlBhFqw==
arc-message-signature: i=1; a=rsa-sha256; c=relaxed/relaxed;
d=microsoft.com;
 s=arcselector9901;
 h=From:Date:Subject:Message-ID:Content-Type:MIME-Version:X-MS-
Exchange-SenderADCheck;
 bh=BXRrdEU7e0M6cc2KoiSNEh+QaDPd6aMc99E9Z0aVtwo=;
 b=M6aBdsoUN/
vD9oD30KxXIoPr2eVBpgSl0EN2Xq2QUwgUqzuz9jamIvuayii9roP560UO+1KUVY62llax
tYZtk/
CTkQGniWGylAruoLStSFlEB5gou2LGcfjuy6xW2b1kCmam2nqSAGhtNoUXNTpFV6vkVOBV
HbC99gAOxckGf00Tl6gRjgxR50YFU/TyV88AbESxx8zLuEvrlK2Qc1/
pkTtHplBSISpi6FAYNFC0t8zOR8L1mAsXkH7G23qfXmBfT/
887m3jbyR0NRVmb537QtkjkXnr0m6pishEVrZWM12Xg4zpkOaEta4geSNl5I59wY/
OQm5TOq/qi8Nb6tZdMg==
arc-authentication-results: i=1; mx.microsoft.com 1; spf=pass;
dmarc=pass
 action=none header.from=allisonmarine.onmicrosoft.com; dkim=pass
 header.d=allisonmarine.onmicrosoft.com; arc=none
dkim-signature: v=1; a=rsa-sha256; c=relaxed/relaxed;

d=allisonmarine.onmicrosoft.com; s=selector2-allisonmarine-
onmicrosoft-com;
 h=From:Date:Subject:Message-ID:Content-Type:MIME-Version:X-MS-
Exchange-SenderADCheck;
 bh=BXRrdEU7e0M6cc2KoiSNEh+QaDPd6aMc99E9Z0aVtwo=;
 b=H1jw68eTquqeJ5E/
suBh88TzIPhhVeJohsPf+72AUxnoCE6YtwQW1Wtgl3MkVOVFb8I/6fF7fo/PzmYRYvV/
NyxxonpsqpWbb8rJ6xCQIldtRB49gTkp8J/
wbnmC7hGOX1iMAtgA0T6sJGwukSHN2Y2vA9uBZhYLOiUHjd7OB4=
x-ms-office365-filtering-correlation-id: 7c311a03-68ca-4935-
e16c-08d89c70d3ae
x-ms-traffictypediagnostic: CH2PR07MB6551:|BYAPR17MB2712:
x-microsoft-antispam-prvs:

<CH2PR07MB65514CA88D45B049F67F8D95B8CC0@CH2PR07MB6551.namprd07.prod.ou
tlook.com>
x-ms-oob-tlc-oobclassifiers: OLM:53;OLM:53;
x-forefront-antispam-report:

CIP:52.100.157.206;CTRY:US;LANG:en;SCL:1;SRV:;IPV:NLI;SFV:NSPM;H:NAM10
-MW2-obe.outbound.protection.outlook.com;PTR:mail-
mw2nam10hn2206.outbound.protection.outlook.com;CAT:NONE;SFS:
(1930700014)(83120400003)(2876002)(6506007)(6512007)(53546011)
(7636003)(19233515002)(83380400001)(42882007)(356005)(6916009)
(8676002)(336012)(30864003)(31696002)(19627235002)(6486002)(26005)
(5660300002)(8636004)(36736006)(78352004)(15843345004)(36906005)
(1096003)(956004)(66574015)(496002)(9686003)(82146005)
(299355004);DIR:INB;
x-ms-exchange-senderadcheck: 1
x-microsoft-antispam: BCL:0;
x-ms-exchange-crosstenant-network-message-id:
 7c311a03-68ca-4935-e16c-08d89c70d3ae
x-ms-exchange-crosstenant-originalarrivaltime: 09 Dec 2020
18:32:47.3329 (UTC)
x-ms-exchange-crosstenant-fromentityheader: Internet
x-ms-exchange-crosstenant-id: 1718b1dc-a2ae-409f-813f-6c1fcbed01b9
x-ms-exchange-transport-crosstenantheadersstamped: BYAPR17MB2712
x-microsoft-antispam-untrusted: BCL:0;
x-microsoft-antispam-message-info-original:
 Q7I1FtCyuNmheDgNni9UL+jWkY2XoS9B4mnf8ebNASWrOAfCl+bTADZ8S/swopDqv+
+hZ7V2oa1edhnt3zB9iKmrO8s0udi7HvBpcDhAy+Mq9naBpiM+TM6BXW2VzEWF9WMWzlhM
0MZntjIZRHujnXfKN/4uJXITFKxvr5xdfRz6JXQHElmaLent8u48C/
6PI9kRE42R0EqyVODF5sLXFujLyHkjdATA1Fug7S+7d8EmQa620Syl8V5e8dQx9sj2nYfY
tQxfTtv4v8P+D3Jsj1S4ci7cWbNyriKY6FGURTbKpQjV+xviAluUAQUh2KLRDF6Lg8wPkJ
WkSRwlcU9BJymVob2cquQS/Z7wpO2ow7RzTrbVOvxxiOjdMkC6fPD4xH/
XZnKtZspxVkR37tbDJfLYs2g2ciWOhOiLKCusDFlQzC8Jod/qJpSRZF8qopqc
x-forefront-antispam-report-untrusted:

CIP:255.255.255.255;CTRY:;LANG:en;SCL:1;SRV:;IPV:NLI;SFV:NSPM;H:;PTR:;
CAT:NONE;SFS:(136003)(376002)(346002)(366004)(1930700014)(53546011)

(19627235002)(6916009)(31696002)(78352004)(78496005)(8676002)
(66946007)(15843345004)(66576008)(66574015)(83120400003)(9686003)
(2876002)(42186006)(83380400001)(508600001)(19233515002)(5660300002)
(42882007)(30864003)(2906002)(82146005)(299355004);DIR:OUT;SFP:1501;
x-eopattributedmessage: 0
x-eoptenantattributedmessage: 1718b1dc-a2ae-409f-813f-6c1fcbed01b9:0
x-ms-exchange-transport-crosstenantheadersstripped:
 MW2NAM12FT032.eop-nam12.prod.protection.outlook.com
x-ms-exchange-transport-crosstenantheaderspromoted:
 MW2NAM12FT032.eop-nam12.prod.protection.outlook.com
x-ms-exchange-transport-endtoendlatency: 00:00:04.1044217
x-ms-exchange-processed-by-bccfoldering: 15.20.3632.023
x-ms-exchange-crosstenant-authas: Anonymous
x-ms-exchange-crosstenant-authsource:
 MW2NAM12FT032.eop-nam12.prod.protection.outlook.com
X-Microsoft-Antispam-Mailbox-Delivery:
 ucf:0;jmr:0;auth:0;dest:I;ENG:(20160514016)(750128)(520011016)
(944506458)(944626604);
X-Microsoft-Antispam-Message-Info:
 =?us-ascii?Q?
KhdC7jYxmKXbxTZcJpCuN75uG2wRlEGp81+dC9R+Ic0TkSNlVhxrciM4R2kF?=
 =?us-ascii?Q?39L0ai30KxhEB8eaUfRSb/KDtJqIjU9UChRH/
7v3g97639J3BwXX8Vo6u9B2?=
 =?us-ascii?Q?
nuy0EnuByZPon7lDDCsjm+Bwmy2A2NsLyEgROeTk3maj4XoNwnEzSgAhGZ11?=
 =?us-ascii?Q?
G9sptb7+05NJdAPYPrhcQPO6Nx9XVMzH6QuVJFlkFRmjsZp2+E1lQ8DkWVc9?=
 =?us-ascii?Q?dGgDJhpMaj4mkqvK/KI80vAD6aaWtF5xoTaOGp/
UpwZcKLep4s8QHpj3SUnY?=
 =?us-ascii?Q?
f8qCgH+pj0RpSA3S6r0FjcO9YiyC5xQ1eUqNXdusDBMsznmn6ez+JaMEPkyd?=
 =?us-ascii?Q?JoRLAFVnQV/Hd2mtmaC3n4P0PJU6QihW7MEZNTe/Ak/
k+ppf+XfJ7INW1jjw?=
 =?us-ascii?Q?m0LCt0vgk+bN1ybq1dHwLIO159pEdISVauztY/oUb/
AJFvCcIpeEFfQ0uta9?=
 =?us-ascii?Q?TBh6ou2IMuasEhnT0zPuL/qCWBIb90iY4bjKhCJ6pa/
Orm33hpOQlvx777Ph?=
 =?us-ascii?Q?PNUt22BINEvTSEdOIr/
5mlKXcOokXtBG1tntDqVpRPQcp4hbLwlhAiGgN8A8?=
 =?us-ascii?Q?
239tvDN8eGk+yCNm3EKyInjGTu3K3m9CGAxsgVH6+NJXdqyYKbs5C8E0vjMf?=
 =?us-ascii?Q?1wTx5+aJ8Z7grId9CEN/
ZGfxFSDz+2sMtNhj0uW7dp3pWauNOJtBrQ+BTGss?=
 =?us-ascii?Q?
aCW1phqqvBoqjmdl3B11kIWJezUgdADZr+EQxCxgVJsmsGi1bn0CH1cxs0JE?=
 =?us-ascii?Q?b3n/
slL1Pftr+sLYZDPOXrZfy0wsuDiEDISYTN5EOoL+uL6QIfQdQakDkVKV?=
 =?us-ascii?Q?
uqBhDcVa5oofy1zX8Es0YhquQxMOnwYfH86FaXWpi23WUqWAse5PXsxDQEn2?=
 =?us-ascii?Q?wamq4jZufKd0VOSxbwVo85U3/

JWE6CHDa31UAYERFZXS6swTT30Y2FytUh8R?=
 =?us-ascii?Q?TIaszkjJJmVOQ8KGR7P5lv42ewKxS7TDzbmRVJIenC2Vz8R1t+8ww/
iat8G3?=
 =?us-ascii?Q?1M1GhO1nN7ebgwlkdVVTJKbtanEynQbUKKPi2kZKO858j0dV33Konej/
v5C4?=
 =?us-ascii?Q?luXHOjdEWbjuW/3jhbWx+V/wxHDBeEm23/
xgY0oKM1gXnIMfE4iwBlmYFIT0?=
 =?us-ascii?Q?xdfDpGKOh8N9nTzHCSHO+rEwOb1qJpAoxCZcQAfzL9q9k2gQ/
TcqeyzfIl0N?=
 =?us-ascii?Q?uU9Bpr1OV2nu86p+sEhgV/
qXIWozhKwBvjOlPPiNOwjCCV6MZyvUgr7pt7v/?=
 =?us-ascii?Q?JEFBp9WQxZV/N2c4UNhfitZsMCBughsvKeqJZ/
ihkldZ1xLjo55kllMUZO2i?=
 =?us-ascii?Q?
diriD8A7POW0x2aF7Z1La+OxgNl+XsGn8h5wYH0eltGRo7w8w6thaEC6G74x?=
 =?us-ascii?Q?R+I4AY8=3D?=
Content-Type: multipart/report;

boundary="_000_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr
_";
        report-type=delivery-status
MIME-Version: 1.0

--_000_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr_
Content-Type: multipart/alternative;

boundary="_002_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr
_"

--_002_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr_
Content-Type: text/plain; charset="us-ascii"
Content-Transfer-Encoding: quoted-printable

Your message has been delivered to the following recipients:

lgreenleaf@allisonmarine.onmicrosoft.com<mailto:lgreenleaf@allisonmari
ne.on=
microsoft.com>

Subject: Offshore Technical Solutions Inv.# I-7859 for JAB Energy
Solutions=
 PO# JAB-0708


--_002_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr_
Content-Type: text/html; charset="us-ascii"
Content-ID:
<D00B34572FEBE74E8E23BC4993BF701C@namprd17.prod.outlook.com>
Content-Transfer-Encoding: quoted-printable

```
<html><head>
<meta http-equiv=3D"Content-Type" content=3D"text/html; charset=3Dus-
ascii"=
>
</head>
<body>
<p><b><font color=3D"#000066" size=3D"3" face=3D"Arial">Your message
has be=
en delivered to the following recipients:</font></b></p>
<font color=3D"#000000" size=3D"2" face=3D"Tahoma">
<p><a
href=3D"mailto:lgreenleaf@allisonmarine.onmicrosoft.com">lgreenleaf@a=
llisonmarine.onmicrosoft.com</a></p>
<p>Subject: Offshore Technical Solutions Inv.# I-7859 for JAB Energy
Soluti=
ons PO# JAB-0708</p>
</font>
</body>
</html>


--_002_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr_--

--_000_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr_
Content-Type: message/delivery-status

Reporting-MTA: dns; CH2PR07MB6551.namprd07.prod.outlook.com

Final-recipient: RFC822; lgreenleaf@allisonmarine.onmicrosoft.com
Action: delivered
Status: 5.4.0
X-Supplementary-Info: < #2.0.0 smtp;250 2.0.0 OK>


--_000_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr_
Content-Type: message/rfc822
Content-Disposition: attachment;
        creation-date="Wed, 09 Dec 2020 18:32:51 GMT";
        modification-date="Wed, 09 Dec 2020 18:32:51 GMT"

Received: from SN2PR01CA0060.prod.exchangelabs.com (2603:10b6:800::28)
by
 CH2PR07MB6551.namprd07.prod.outlook.com (2603:10b6:610:26::33) with
Microsoft
 SMTP Server (version=TLS1_2,
cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id
 15.20.3654.13; Wed, 9 Dec 2020 18:32:14 +0000
Received: from SN1NAM04FT064.eop-NAM04.prod.protection.outlook.com
 (2603:10b6:800:0:cafe::5a) by SN2PR01CA0060.outlook.office365.com
 (2603:10b6:800::28) with Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.3654.12 via
```

Frontend
 Transport; Wed, 9 Dec 2020 18:32:14 +0000
Received: from NAM02-CY1-obe.outbound.protection.outlook.com
(40.107.76.134)
 by SN1NAM04FT064.mail.protection.outlook.com (10.152.89.198) with
Microsoft
 SMTP Server (version=TLS1_2,
cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id
 15.20.3654.12 via Frontend Transport; Wed, 9 Dec 2020 18:32:13 +0000
Received: from BN7PR17MB2194.namprd17.prod.outlook.com
(2603:10b6:406:c2::22)
 by BN6PR17MB3138.namprd17.prod.outlook.com (2603:10b6:405:7d::12)
with
 Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.3632.17; Wed,
9 Dec
 2020 18:31:53 +0000
Received: from BN7PR17MB2194.namprd17.prod.outlook.com
 ([fe80::e8f8:4183:cdd6:61fa]) by
BN7PR17MB2194.namprd17.prod.outlook.com
 ([fe80::e8f8:4183:cdd6:61fa%6]) with mapi id 15.20.3632.023; Wed, 9
Dec 2020
 18:31:53 +0000
From: Amy Porche <amy@offshoretechnical.com>
To: "invoice@jabenergysolutions.com" <invoice@jabenergysolutions.com>
Subject: Offshore Technical Solutions Inv.#  I-7859 for JAB Energy
Solutions
 PO# JAB-0708
Thread-Topic: Offshore Technical Solutions Inv.#  I-7859 for JAB
Energy
 Solutions PO# JAB-0708
Thread-Index: AdbOWWxVwFhXlopMTDK9QzRd7WJDbA==
Disposition-Notification-To: Amy Porche <amy@offshoretechnical.com>
Date: Wed, 9 Dec 2020 18:31:52 +0000
Message-ID:

<BN7PR17MB2194926AF8D03224A5BDFC92BFCC0@BN7PR17MB2194.namprd17.prod.ou
tlook.com>
Accept-Language: en-US
Content-Language: en-US
X-MS-Exchange-Organization-AuthSource:
 SN1NAM04FT064.eop-NAM04.prod.protection.outlook.com
X-MS-Exchange-Organization-TransportTrafficType: Email
X-MS-Has-Attach:
X-Auto-Response-Suppress: DR, OOF, AutoReply
X-MS-Exchange-Organization-Network-Message-Id:
 89284b24-c20d-47e2-4f83-08d89c70bfc7
X-MS-Exchange-Organization-SCL: 1
X-MS-TNEF-Correlator:
X-MS-Exchange-Organization-RecordReviewCfmType: 0

```
x-ms-publictraffictype: Email
x-ms-exchange-organization-transporttraffictype: Email
received-spf: Pass (protection.outlook.com: domain of
offshoretechnical.com
 designates 40.107.76.134 as permitted sender)
 receiver=protection.outlook.com; client-ip=40.107.76.134;
 helo=NAM02-CY1-obe.outbound.protection.outlook.com;
x-ms-exchange-organization-originalclientipaddress: 40.107.76.134
x-ms-exchange-organization-originalserveripaddress: 10.152.89.198
x-originating-ip: [108.93.22.168]
authentication-results: spf=pass (sender IP is 40.107.76.134)
 smtp.mailfrom=offshoretechnical.com; jabenergysolutions.com;
dkim=pass
 (signature was verified)
 header.d=NETORG4934644.onmicrosoft.com;jabenergysolutions.com;
 dmarc=bestguesspass action=none
 header.from=offshoretechnical.com;compauth=pass reason=109
arc-seal: i=1; a=rsa-sha256; s=arcselector9901; d=microsoft.com;
cv=none;
 b=j+oWq2wjEdmvTFQ/
eb60FHQec3yzkdp1+MBympoP1VFQh0FaHATdh0QJeaIH6eLkUFbjwWUx6qyYBV/
UbSnUhSeXYd9+Pd/
2c4FHJgJTp5p51jV3ue5Bqk7vEMtlVHyzHu2WUilNhWoN90evU4CoXY6wuUtjB9f4wbcn6
lD2kqTUZQdc7lFxvR0/2QyQ9AeMIgkOGKTLHfYQPofjl4Irf9XcdT6FbKLTwVISuYPXIay
1LSEfE0VbG/
d54euardBYXrVHY4wzTcshaRjLRORVbZsYeE9Ve5r1Zwfl4OWoNZRwLLK5hlyHL9UznCUB
gLQqD6tUf8apT3VXADo5qVyTVQ==
arc-message-signature: i=1; a=rsa-sha256; c=relaxed/relaxed;
d=microsoft.com;
 s=arcselector9901;
 h=From:Date:Subject:Message-ID:Content-Type:MIME-Version:X-MS-
Exchange-SenderADCheck;
 bh=lZGMwhFbsBT6nNVHecF/aIQDR/5E6sI4qv3ML11hjdI=;

b=mVzVCY5SdIRwC5E+j6dw61rgw6myjwhAbVQoLrZPlKTYI3xIoOdipFkLXVFNlUt3Pkij
/M8oKKAe/4FZY0gUGrjYSVxhi/
cuZCoxqx3p1nVbKJMOwAOmhZaXT6VZ80HsuXaXoZI6Pp2Nf6RDfBXCn+e2xeUXyZZRkzWP
juQMCqNpOeTg8jqLUoxFoFFwk4tgcYrWAW0veRZ0B/
SosOEvnoEcJgmUhJXDutYvjHsRwkNAFDLZFY7A5HX10Tjc1JSnVPtnygiZ26e81vXcoQXQ
6Css+KfQO7kykhOyLfzj00k4aLXGr8CdMc5K/dGo0PlzBJakit9jznA68+NBkjJnQw==
arc-authentication-results: i=1; mx.microsoft.com 1; spf=pass
 smtp.mailfrom=offshoretechnical.com; dmarc=pass action=none
 header.from=offshoretechnical.com; dkim=pass
header.d=offshoretechnical.com;
 arc=none
dkim-signature: v=1; a=rsa-sha256; c=relaxed/relaxed;
 d=NETORG4934644.onmicrosoft.com; s=selector2-NETORG4934644-
onmicrosoft-com;
 h=From:Date:Subject:Message-ID:Content-Type:MIME-Version:X-MS-
Exchange-SenderADCheck;
```

bh=lZGMwhFbsBT6nNVHecF/aIQDR/5E6sI4qv3ML11hjdI=;

b=nxw13I8iHxbGScjWW+07bW9MrZSxZEUbL0NE16depm3VABPJJsPCltMiuNAXZY9P2EZ1
aVzDj3DnSu8rMhtRf8Y0Vmr1ErUrhMK9y+1jkhekOUBVu+RPaQTpgk7SdGqpV/
kbLH9EWB+Ki5BXJMQ6o5B2Y8PF9wW50n/AQuWqIt8=
x-ms-office365-filtering-correlation-id: 89284b24-
c20d-47e2-4f83-08d89c70bfc7
x-ms-traffictypediagnostic: BN6PR17MB3138:|CH2PR07MB6551:
x-microsoft-antispam-prvs:

<BN6PR17MB313830D4FF508B27D22DCB22BFCC@BN6PR17MB3138.namprd17.prod.ou
tlook.com>
x-ms-oob-tlc-oobclassifiers: OLM:8882;OLM:8882;
x-forefront-antispam-report:

CIP:40.107.76.134;CTRY:US;LANG:en;SCL:1;SRV:;IPV:NLI;SFV:NSPM;H:NAM02-
CY1-obe.outbound.protection.outlook.com;PTR:mail-
eopbgr760134.outbound.protection.outlook.com;CAT:NONE;SFS:(7636003)
(6862004)(33656002)(1096003)(8676002)(28085005)(8636004)(55016002)
(26005)(15974865002)(86362001)(7696005)(58800400005)(21480400003)
(9686003)(52536014)(83290400002)(83280400002)(166002)(83380400001)
(36906005)(336012)(83320400002)(83300400002)(83310400002)(356005)
(5660300002)(6506007);DIR:INB;
x-ms-exchange-senderadcheck: 1
x-microsoft-antispam: BCL:0;
x-microsoft-antispam-message-info:
 =?us-ascii?Q?9R//
a65owyBgb6pTGPmBa9W0rdSFRijXPaMZj83SPTSDxJQFXEU6xgaW8hs7?=
 =?us-ascii?Q?9QJks09SFgSdvoAm5K6b/
xW4FcqmKlZoO7Rjq7W3jFB7RB39cmU4KjbnYm3C?=
 =?us-ascii?Q?DASftzGTBI7yv56iieBhh3ZBjPn42/2Cu/BBI/ux/
vgpCnc2d0V06ojOvVi7?=
 =?us-ascii?Q?
CpVzXG+Y55s03o9o2ccb6dpoNz3Yf+QKJzrLY0HHDF71RjKG8KnSu4DurQ5v?=
 =?us-ascii?Q?+jLc0LtziQ6hH+sheAAgpuN5PqgMY7zku5yEhyQxx27t2DYhWHzMFC/
qL0cg?=
 =?us-ascii?Q?
O4PsUMn+CXKREJ7hMnR4Z3YAeUbth7aHh1XpYqGkqzBUzEM5UAS6zJVTqX+o?=
 =?us-ascii?Q?32Apiw1WCADSO6hn1P9vJ4SleAqBJ/
01sMSb3FNpS1x8ONNRpNRk6tFblm0w?=
 =?us-ascii?Q?
OPt4ofBMcPjJ0gGQCmo0oWDUybtPwzIjDQTBlJX0RUIaSMbMRL0yWqNrMFvC?=
 =?us-ascii?Q?
ylBe5Tfnlmc7NVA4VhKsTPksWLoJroYm+dWYBfSEIgqRbor2susjoPjs5HWR?=
 =?us-ascii?Q?p4H714GAQTmR+zdmqAULwAZdnl63cu/
yLcRh4wVe3XTfaxLxZ0Nla0NFsCoo?=
 =?us-ascii?Q?
53qBSny00qiRVRA+0U3Lx2AuCBpAMdu1zQsD8Pd90Uyvn4YbiosLfcYGOI3k?=
 =?us-ascii?Q?
rY9BssulmJhC37congv7hlqrlSaTNVNnHCjeqGSPtDfZDmGP4/6dRKaC86qP?=

 =?us-ascii?Q?
YL5vbEPqAwnIDb5fjzzd89Qpi2V9J+JshmcS9OhaATPCFsKml3ZMTFw3mvFM?=
 =?us-ascii?Q?kXlpc+VGlqgoaK0aK/
gdtyL6rr5wNTM7gQ8NTiEaz7xQLUE1hWHx0QmUl9g8?=
 =?us-ascii?Q?2Oqw0OK8IKczWByCjOrwqQemiz7VCG6YneUpT8pkycPczg/8uv/
6cSC4FNOP?=
 =?us-ascii?Q?
jawdRhMwiegrfIlriiHpEkhr54Yaf2mpiRapczq53FdpvXvNXYqTgJ86wmYR?=
 =?us-ascii?Q?
dsBcsjLQPbCDuAo8eW3aqC5d8ejnPboetJsJvfUpujM5LxIdVghUpR9o9rts?=
 =?us-ascii?Q?
zw9KqtPfNbcvtGlyUifAhav7GJyP5yXvjPlkpDHaZcpvrb11OQIVqN34E87j?=
 =?us-ascii?Q?YJZtN+Uc1MFaVZmxeBO7d6cHpUjtYes8JYT9Dos3Q/
nyYuPH7b6TmDCAffFo?=
 =?us-ascii?Q?qRr92AMwXVY0aWspWat7KKeK6zVthHIXXgX6KTkpzP+ZNgPY52/
OlJx4opU7?=
 =?us-ascii?Q?k5fM5Z3X92e7d3ka/
K+P+vmBdOw0gzhIk8fPpGRbDsnXEzJjjuxl1LZvuPdx?=
 =?us-ascii?Q?Sz+B4BshsWV1TDq7tH8s+lbhnLMLvzNzQc/
NBYRSoWtrOh2QX14pLnrznkyD?=
 =?us-ascii?Q?
Gza2Shcj4b8iFNlKoctatKXLSmoKYITTOJzG4jhd4cZ1bVOc6AptZTBxSRJ8?=
 =?us-ascii?Q?EuRsTR82YGHO/
PAxhC5sby2JFjTctWXfGzl8Fw5xSakELWJX+w=3D=3D?=
x-ms-exchange-transport-forked: True
x-ms-exchange-crosstenant-network-message-id:
 89284b24-c20d-47e2-4f83-08d89c70bfc7
x-ms-exchange-crosstenant-originalarrivaltime: 09 Dec 2020
18:32:13.6397 (UTC)
x-ms-exchange-crosstenant-fromentityheader: Internet
x-ms-exchange-crosstenant-id: 5ad2ad8c-7114-462f-bafb-fe3ad9261ef4
x-ms-exchange-transport-crosstenantheadersstamped: CH2PR07MB6551
authentication-results-original: jabenergysolutions.com; dkim=none
(message
 not signed) header.d=none;jabenergysolutions.com; dmarc=none
action=none
 header.from=offshoretechnical.com;
x-microsoft-antispam-untrusted: BCL:0;
x-microsoft-antispam-message-info-original:
 BtBpZke58ub6G8G/
e+OfcgHEXCVVH8huQcWyeRQaJEabi+inVdJ2Hj7GU45h49LNfjg9LDTsL95o30jcM8EMOm
2y+Ui7ObGeu7zA+m1dS9uEFlhou55u9q+ua2dNYtJTaUZiOEm7ojN5Yv3Yy7ZZhEgtKq5c
P1d+pkYos3LMQzsgavv0Bhfu2jGwhF5MdHuu4KL9tMvXVdH0ngpiot1e1yfM+9NA50Nkdx
BsAfyAN/iK7qEVCbNw8Q22gGYNRmOYJPQ6RADHFQbCBrdoxM1RtPrF4E3tnQ//
5j8hFARMC6C3eseDJPBRcGyIQTk3qrgvuFSYMgGXMCWcNf5nIEfaqu8doutl2X9G3vVj/
lg/u0iBtaAfUgn+/mTLE4j9NFbb/xlgD6wgNy8v44i6R3SNEw==
x-forefront-antispam-report-untrusted:

CIP:255.255.255.255;CTRY:;LANG:en;SCL:1;SRV:;IPV:NLI;SFV:NSPM;H:BN7PR1
7MB2194.namprd17.prod.outlook.com;PTR:;CAT:NONE;SFS:(346002)(136003)

(376002)(366004)(66556008)(66476007)(66946007)(64756008)(71200400001)
(83380400001)(52536014)(76116006)(166002)(86362001)(4744005)(66576008)
(8936002)(66446008)(99936003)(33656002)(55016002)(26005)(186003)
(9686003)(8676002)(508600001)(7696005)(5660300002)(6506007)(6916009)
(2906002);DIR:OUT;SFP:1102;
x-eopattributedmessage: 0
x-eoptenantattributedmessage: 5ad2ad8c-7114-462f-bafb-fe3ad9261ef4:0
x-ms-exchange-transport-crosstenantheadersstripped:
 SN1NAM04FT064.eop-NAM04.prod.protection.outlook.com
x-ms-exchange-transport-crosstenantheaderspromoted:
 SN1NAM04FT064.eop-NAM04.prod.protection.outlook.com
x-ms-office365-filtering-correlation-id-prvs:
 0ab8b0b5-7b09-41e0-3ae8-08d89c70b360
x-ms-exchange-crosstenant-authas: Anonymous
x-ms-exchange-crosstenant-authsource:
 SN1NAM04FT064.eop-NAM04.prod.protection.outlook.com
x-ms-exchange-antispam-messagedata-original:
 =?us-ascii?Q?
IJ8AaGMjTSXGNH0O+rvtx7bkuOkoAWaU8hTDjk7Mx0h8szWYCAO+DWySw2ZH?=
 =?us-ascii?Q?
zWzo1020vbllxWnDPBxPigB8hCIGU5erm50NZqdjiajrehG4N+bIqjFisYpu?=
 =?us-ascii?Q?
XIt1Dd5UlJD09SGXDmZWRWLeqNJFRQDIUJlshuLPb6t68KGL54iKEX15JeEx?=
 =?us-ascii?Q?FKORM0OEDZcc3dqwjbW//
eVFSgD8QAdQmSet+VQKDo9IhE2e0FM2QLHz/J5M?=
 =?us-ascii?Q?
Q9SyVRURJpbJYShmud2wxyPkWzKq7h30AjYnwYJR4xRhGO34iZJNIxAp4Sma?=
 =?us-ascii?Q?G82CDW3Alg3dbZq6W/
zrpUArny4wcixzMlb+WV9urT1bJe2vYWjroqrwExRg?=
 =?us-ascii?Q?1HWolZZtxF/
GzAP4DOZkJAyEfZS42weLlZ9sNEzrxRWhROFmHUE4cW4373xs?=
 =?us-ascii?Q?neGpjFz0GTS046JAX2wOG+Nn/
If9kM1VjFYkYa4+FS8F08G8A7cL0odKk1C+?=
 =?us-ascii?Q?
vSsuICSedR6AGCw64bVL1eRw1pXqLgQknfS3UzjaAi2hYRAziWFB0tkaL/qP?=
 =?us-ascii?Q?
ppNlxqEffzUSp6NjafZ5BVZPH47AJTUxOHfaHQV+WSl0H0xVWqzO0dTvVOtJ?=
 =?us-ascii?Q?1SjbSz5L/
oW502zj92oXnWuc0fT1Dx0KfznS0IS+tBpBOLmJmpHxYmlH3t7y?=
 =?us-ascii?Q?nj/8NZDsQWL7rVBkGWvGL66hIZx5i5367tLR5fKpU/
G2Wt4QCAo2r6oJfJqE?=
 =?us-ascii?Q?Q6keoIofOumFHqTT7LAgkBh3IgF7m30ucVkMOlp/
vUibF4xrxQmwoicdCde+?=
 =?us-ascii?Q?
ADQeRlAhi1p043gHWxJG0mwXns9VzOCz5J5ZMsrvnWsIGNa+b8C3NvZDuFh8?=
 =?us-ascii?Q?o7lqeSnCsGkXKyYUwM6Sm2aWTSiC/
N+ge2ACcpbUL0Te4fBpfOwpaEx+iXbu?=
 =?us-ascii?Q?
STSQ3wJhsK8lofchYDNVHjn0Id8Os2H0Ypgx127yEJ3TDQgIQFO8reF+GiNC?=
 =?us-ascii?Q?BGhOjzPxpAKVmyI0ugzRlNN7GEHEJXfB8PCdext/sAM=3D?=

x-ms-exchange-organization-originalsize: 22984001
x-ms-exchange-organization-originalarrivaltime: 09 Dec 2020
18:32:13.6397
 (UTC)
x-ms-exchange-organization-fromentityheader: Internet
x-ms-exchange-organization-messagedirectionality: Incoming
x-ms-exchange-organization-id: 5ad2ad8c-7114-462f-bafb-fe3ad9261ef4
x-ms-exchange-organization-orgeopforest: NAM04
x-ms-exchange-organization-orderedprecisionlatencyinprogress:
 LSRV=CH2PR07MB6551.namprd07.prod.outlook.com:TOTAL-HUB=19.145|
SMRE=9.886(RENV=0.215|REOD=2.806(SMRED=1.908(SMRED-Protocol
 Filter Agent=1.906))|CMSGC=6.860
 |R-CMSG=0.911(R-HS=0.900(R-HSXD=0.899)|XR-DR=0.900))|
CAT=9.378(CATOS=6.441(CATSM=6.428
 (CATSM-Pre Index Routing Agent=2.468|CATSM-RMS Attachment Decryption
 Agent=0.054|CATSM-DC Pre Content Filter Agent=3.783 |CATSM-UnJournal
 Agent=0.053|CATSM-Journal Agent=0.064))|CATRESL=0.253(CATRESLLR=0.072
 |CATRESLPR=0.179(X-CATRESLX=0.122))|CATORES=2.477(CATRS=2.476(CATRS-
DC Pre
 Content Filter Agent=0.198 |CATRS-Transport Rule
 Agent=0.808(X-ETRLD=0.120|X-ETREX=0.687)|CATRS-DLP Policy Agent=0.066
 (X-DLPLD=0.066)|CATRS-Retention Policy Agent=0.053|CATRS-DC Content
Filter
 Agent=1.024 |CATRS-Spam Filter Agent=0.237|CATRS-UnifiedGroup
 Agent=0.055))|CATORT=0.056(CATRT=0.056 (CATRT-Supervisory Review
 Agent=0.053))|CATOC=0.142(CATCM=0.142(CATCM-DC Post Content Filter
 Agent=0.140 )));2020-12-09T18:32:33.759Z
x-ms-exchange-forest-arrivalhubserver:
CH2PR07MB6551.namprd07.prod.outlook.com
x-ms-exchange-organization-expirationstarttime: 09 Dec 2020
18:32:14.0705
 (UTC)
x-ms-exchange-organization-expirationstarttimereason: OriginalSubmit
x-ms-exchange-organization-expirationinterval: 1:00:00:00.0000000
x-ms-exchange-organization-expirationintervalreason: OriginalSubmit
x-ms-exchange-organization-messagescope:
54df45fe-3105-4001-9008-1f7fd7615a71
x-ms-exchange-forest-messagescope:
54df45fe-3105-4001-9008-1f7fd7615a71
x-ms-exchange-organization-cross-premises-headers-processed:
 SN1NAM04FT064.eop-NAM04.prod.protection.outlook.com
x-ms-exchange-organization-antispam-protocolfilterhub-scancontext:
 ProtocolFilterHub:SmtpOnEndOfData;
x-ms-exchange-organization-hygienepolicy: Premium
x-ms-exchange-organization-replicationinfo:
 ReplicaId=ee10fb95-c6d9-85fa-
a5b1-07c0709cd808;ReplicatingServerFqdn=DM6PR07MB6554.namprd07.prod.ou
tlook.com
x-ms-exchange-organization-messagelatency:
 SRV=SN2PR01CA0060.prod.exchangelabs.com:TOTAL-FE=0.253|SMR-

PEN=0.106(RENV=0.104|SMRPROXY-PEN=0.000)|SMS=0.216(SMSC=0.068)
x-ms-exchange-forest-indexagent: 1 3695
x-ms-exchange-forest-emailmessagehash:
7897CA10,6C592C0F,C895E58B,A30CEF73
x-ms-exchange-forest-language: en
x-ms-exchange-organization-ispotentialintraorgmail: False
x-ms-exchange-organization-antispam-precontentfilter-policyloadtime:

MAOSUB:64;MAOSUBLOAD:52;SAORES:64;SAORESLOAD:11;SLORES:52;SLORESLOAD:5
2;
x-ms-exchange-organization-attachmentdetailsheaderstamp-success: 1.0
x-ms-exchange-organization-attachmentdetails:

0:AErrX+mcNJ8PeehJgEtcptCkd5+dIZlH1MYbxerLiD0=:U:Jpeg:aW1hZ2UwMDEuanBn
::#:False:::N:::N::N:None;1:bYmTU0CKWgq1YWA0WlGfiG7qsIHrHAFiqIB0TkYw90
0=:U:Png:aW1hZ2UwMDIucG5n::#:False:::N:::N::N:None;2:khdZ2yerw6mtIzayP
MALpi0rBCV1Vwt/
2mtgH0m2g3A=:U:Pdf:T2Zmc2hvcmVUGVjaG5pY2FsIFNvbHV0aW9ucyBJbnYIyAgSS0
30DU5LnBkZg==::#:True:::N:::N::N:None
x-ms-exchange-organization-messagefingerprint:
 E7E662AE.2D19D529.61FF1FF3.78B1D882.2019A
x-ms-exchange-organization-urlfeaturereduction:
 26;2;0;25;0;0;0;21;3;1;10000000;0;0;0
x-ms-exchange-organization-persisted-urls-chunkcount: 1
x-ms-exchange-organization-persisted-urls-0:
 =?us-ascii?Q?[{"ID":1,"OU":"http://
www.offshoretechnical.com/","U":"http:?=
 =?us-ascii?Q?//www.offshoretechnical.com/","IAR":false,"LI":
{"TN":"a","IC?=
 =?us-ascii?
Q?":true,"BF":2,"SI":-1,"EndIndex":-1},"SRCI":1,"IU":null,"NU"?=
 =?us-ascii?
Q?:"www.offshoretechnical.com","UFT":"{101:\"26\",102:\"2\",10?=
 =?us-ascii?Q?
5:\"25\",108:\"3\",110:\"17\",111:\"21\",112:\"2\",114:\"17\?=
 =?us-ascii?
Q?",115:\"3\",116:\"1\",118:\"3\",119:\"17\",121:\"12\",122:\"?=
 =?us-ascii?Q?
3\",123:\"1\",125:\"3\",131:\"10000000\",135:\"F538357B,FA22?=
 =?us-ascii?Q?
8868,AA95A690,A7754E2C,55189E9D,69D6E630,FD5429ED,DB1B982A,3?=
 =?us-ascii?Q?
F988AAD,736EE201,14646B99,A6EB019A,88D95594,33F7EAB3,27F63E5?=
 =?us-ascii?Q?
A,AB00CE35\",201:\"3324\",202:\"35\",203:\"1058\",204:\"4383?=
 =?us-ascii?Q?
\",205:\"74\",206:\"2\",207:\"74\",208:\"2\",209:\"75\",210:?=
 =?us-ascii?Q?
\"2\",211:\"75\",212:\"2\",213:\"82\",214:\"2\",215:\"82\",2?=
 =?us-ascii?Q?

16:\"2\",217:\"82\",218:\"2\",219:\"0\",220:\"0\",221:\"54\"?=
 =?us-ascii?
Q?,222:\"3\",223:\"54\",224:\"3\",225:\"54\",226:\"3\",227:\"5?=
 =?us-ascii?Q?
4\",228:\"3\",229:\"82\",230:\"2\",231:\"85\",232:\"2\",233:?=
 =?us-ascii?Q?
\"99\",234:\"2\",235:\"0\",236:\"0\",237:\"82\",238:\"2\",23?=
 =?us-ascii?Q?
9:\"82\",240:\"2\",241:\"82\",242:\"2\",243:\"0\",244:\"0\",?=
 =?us-ascii?Q?
245:\"96\",246:\"3\",247:\"96\",248:\"3\",249:\"0\",250:\"0\?=
 =?us-ascii?Q?",251:\"0\",252:\"0\"}","DPD":
{"UF":"256","OCH":"15199243031?=
 =?us-ascii?Q?
592915292","SCHM":"Http","CNT":"4","SL":"1","LOG":"1"},"PROC?=
 =?us-ascii?Q?":[]}]?=
x-ms-exchange-organization-persistedurlcount: 1
x-ms-exchange-organization-antispam-precontentfilter-scancontext:
 CategorizerOnSubmitted;CategorizerOnResolved;
x-ms-exchange-organization-avscannedbyv2: Symantec;Microsoft;Command
x-ms-exchange-organization-avscancomplete: true
x-ms-exchange-organization-isanyattachmentatpsupported: true
x-ms-exchange-organization-urllogged: 1
x-ms-exchange-organization-recipient-limit-verified: True
x-ms-exchange-organization-totalrecipientcount: 4
x-ms-exchange-organization-asdirectionalitytype: 1
x-ms-exchange-organization-antispam-contentfilter-scancontext:
 CategorizerOnResolved;
x-ms-exchange-organization-antiphish-v2: SKP-DLX-BLK-NOSAVE
x-ms-exchange-organization-containsattachments: true
x-ms-exchange-organization-extractionattachmentnames: 0;1;2
x-ms-exchange-organization-extractiontags: 1IMG;2IMG;SUB64;LINK;
x-ms-exchange-organization-extractiontagsurlfound: URL
x-ms-exchange-organization-extractiontagssubject: Offshore Technical
Solutions
 Inv.#  I-7859 for JAB Energy Solutions PO# JAB-0708
x-ms-exchange-organization-extractiontagsfrom: Amy Porche
 <amy@offshoretechnical.com>
x-ms-exchange-organization-extractiontagssubjectnormalized: ofshore
technlcal
 solutlons lnv l 78s9 for jab energy solutlons po jab o7o8
x-ms-exchange-organization-antispam-scancontext:
DIR:Incoming;SFV:NSPM;SKIP:0;
x-ms-exchange-organization-antispam-postcontentfilter-scancontext:
 CategorizerOnResolved;CategorizerOnRouted;CategorizerOnCategorized;
x-ms-exchange-organization-groupforkperf: VCL=0;VL=55
x-ms-exchange-organization-processed-by-gcc-journaling: Journal Agent
x-ms-exchange-organization-processed-by-journaling: Journal Agent
x-ms-exchange-organization-cross-session-cache:
02M;FVS=Filters;FSCL=1;TAP_EP=

```
x-ms-exchange-organization-outboundcrosstenantagentprocessed:
CH2PR07MB6551
x-ms-exchange-organization-delayanalysis-summary: Processed
x-ms-exchange-organization-targetresourceforest:
namprd07.prod.outlook.com
x-ms-exchange-organization-ffo-servicetag: NAM04B
x-ms-exchange-organization-tenantserviceprovider: FOPE
x-ms-exchange-organization-originaltenant-network-message-id:
 0ab8b0b5-7b09-41e0-3ae8-08d89c70b360
x-ms-exchange-organization-originaltenant-originalarrivaltime: 09 Dec
2020
 18:31:52.7076 (UTC)
x-ms-exchange-organization-originaltenant-fromentityheader: Hosted
x-ms-exchange-organization-originaltenant-id:
 1718b1dc-a2ae-409f-813f-6c1fcbed01b9
x-ms-exchange-organization-originaltenant-mailboxtype: HOSTED
x-ms-exchange-organization-originaltenant-userprincipalname:
 9dFCEmVK++AzQVNG6FHEZ/Yqlausw13bXX/
qHZx0S8rQ3AHl4gEVCdSZRW2t3wCjuOVx4x/DaxkSGIIwNc9VT9m+OFOS7hlcG/
L8yxTNPN8=
x-ms-exchange-organization-connectingip: 40.107.76.134
x-ms-exchange-organization-connectingehlo:
 NAM02-CY1-obe.outbound.protection.outlook.com
x-ms-exchange-organization-as-lastexternalip: 40.107.76.134
x-ms-exchange-organization-originating-country: US
x-ms-exchange-organization-originalenveloperecipients:
 invoice@jabenergysolutions.com
x-ms-exchange-organization-p2senderpii:

<PII:H101(Pv+gI+mMunyWrRFXhLD61YhOEz1vXvCwWTNy3U4+71M=)>@offshoretechn
ical.com
x-ms-exchange-organization-recipientmxinfo-pfafd:
 jabenergysolutions.com#jabenergysolutions-
com.mail.protection.outlook.com
x-ms-exchange-organization-mxpointstous: true
x-ms-exchange-organization-senderrep-score: 3
x-ms-exchange-organization-senderrep-data:
 IpClassLargeGrayBest_GrayBest_SmallGrayBest
x-ms-exchange-organization-vbr-class: GrayBest
x-ms-exchange-organization-compauthres: pass
x-ms-exchange-organization-compauthreason: 109
x-ms-exchange-organization-spoofdetection-frontdoor-displaydomainname:
 offshoretechnical.com
x-ms-exchange-organization-hmatpmodel-spf: 1
x-ms-exchange-organization-hmatpmodel-recipient:

<PII:H101(EtMr6sIZL3XDPLKPjHrF+hX6b9LmB5GbB9v69LfewxE=)>@jabenergysolu
tions.com
x-ms-exchange-organization-asniplda: true
x-ms-exchange-organization-auth-dmarcstatus: Pass
```

```
x-ms-exchange-organization-verifieddkimdomainslist:
 NETORG4934644.onmicrosoft.com
x-ms-exchange-organization-boomerang-verdict: None
x-ms-exchange-organization-hmatpmodel-dkimauthstatus: 1
x-ms-exchange-organization-hmatpmodel-dmarcauthstatus: 2
x-ms-exchange-organization-cfa-useroption: 0
x-ms-exchange-organization-communicationstatesummary: NEI
x-ms-exchange-organization-firstcontactsummary:

ST=2;MRG=1;EXT=0;UN=0;ORCT=4;EV=4;FC=0;NESI=3;NES=1;ESTI=0;EST=0;INS=0
;MP=0;UD=0;QE=0;ERR=0
x-ms-exchange-organization-compauth-eop: compauth=pass reason=109
x-ms-exchange-organization-uriinbody: true
x-ms-exchange-organization-feature-long: 0 201:4354 202:699  203:1
205:66
        208:142  215:4352 220:1    221:1    223:1    227:1    235:2
236:1   238:2    239:1    240:1    241:1
        242:2    243:3    244:8    245:1    246:3    247:4    248:1
252:1   256:3    257:46   260:3    261:766
        262:17   1004:cmsenergy.com           1006:attach      1007:Latn
        1014:NETORG4934644.onmicrosoft.com
1015:offshoretechnical.com
        1020:offshoretechnical.com           1030:offshoretechnical.com
        1033:jpg,png,pdf

1034:1F934BEE@allisonmarine.onmicrosoft.com,CD8FC416@jabenergysolution
s.com,8C380C2@allison-companies.net,1F934BEE@jabenergysolutions.com
        1035:offshoretechnical.com
x-ms-exchange-organization-spamscore: 0
x-ms-exchange-organization-antispam-analystrulehits:
 (7636003)(6862004)(33656002)(1096003)(8676002)(28085005)(8636004)
(55016002)(26005)(15974865002)(86362001)(7696005)(58800400005)
(21480400003)(9686003)(52536014)(83290400002)(83280400002)(166002)
(83380400001)(36906005)(336012)(83320400002)(83300400002)(83310400002)
(356005)(5660300002)(6506007)
x-ms-exchange-forest-rulesexecuted: CH2PR07MB6551
x-ms-exchange-organization-rulesexecuted: CH2PR07MB6551
x-ms-exchange-organization-rules-execution-history:
 64bc57b2-f353-4183-9f70-af65a76a7c3a%%
%6c1fc6ea-13bd-4c70-918e-48cee67804ec
x-ms-exchange-organization-urlselected: 1
x-ms-exchange-organization-ptrdomains:
 mail-eopbgr760134.outbound.protection.outlook.com
x-ms-exchange-organization-ehloandptrdomain:
 NAM02-CY1-obe.outbound.protection.outlook.com;mail-
eopbgr760134.outbound.protection.outlook.com
x-ms-exchange-organization-urlminimumdomainage:
offshoretechnical.com#3324
x-ms-exchange-organization-replyallblocker-verdict: Allow
x-ms-exchange-organization-hdrfeaturev2:
```

11;0;23;4;4;20;4;4;-1;19;0;11;0;18;31;0;8;0;0;100;0;116;4;4;20;4;4;-1;
19;0;178;0;51;286;0;229;114;23;1;2;1;0;0;0;0;4;18;17;102;-1;-1
x-ms-exchange-organization-outboundhop-mailuseragent-ipaddress:
 [108.93.22.168]
x-ms-exchange-organization-outboundhop-usermbx-cpev: 10000
x-ms-exchange-organization-outboundhop-usermbx-throttlelvl: 0
x-ms-exchange-organization-outboundhop-usermbx-24hrsusalrts: 0
x-ms-exchange-organization-outboundhop-usermbx-24hrblockcnt: 0
x-ms-exchange-organization-outboundhop-usermbx-24hrmsgssent: 15
x-ms-exchange-organization-originaltenant-authas: Internal
x-ms-exchange-organization-originaltenant-authsource:
 BN7PR17MB2194.namprd17.prod.outlook.com
x-ms-exchange-organization-outboundhop-usermbx-aadobjectid:
 822c94f3-996a-483e-8f12-ccd3d0946fcc
x-ms-exchange-organization-senderrecipientcommunicationstate: NEI
x-ms-exchange-organization-attachmentdetailsinfo-chunkcount: 1
x-ms-exchange-organization-attachmentdetailsinfo-0:

[{"ID":0,"FN":"image001.jpg","FS":830,"HFH":"AErrX+mcNJ8PeehJgEtcptCkd
5+dIZlH1MYbxerLiD0=","FT":["Jpeg"],"EXT":"jpg","AF":0},
{"ID":1,"FN":"image002.png","FS":13471,"HFH":"bYmTU0CKWgq1YWA0WlGfiG7q
sIHrHAFiqIB0TkYw900=","FT":["Png"],"EXT":"png","AF":0},
{"ID":2,"FN":"Offshore
 Technical Solutions Inv.#
  I-7859.pdf","FS":16764908,"HFH":"khdZ2yerw6mtIzayPMALpi0rBCV1Vwt/
2mtgH0m2g3A=","FT":["Pdf"],"EXT":"pdf","AF":0}]
x-ms-exchange-organization-p2senderdisplaynamepii:
 H101(4BAgozSXCgBzmJR59PXTw4xj+u5T0xnfasv1w487JmA=)
x-ms-exchange-organization-outboundhop-aadsender-creationtime:
 636887220950000000
x-ms-exchange-organization-outboundhop-aadsender-passwordlastset:
 636888780108130033
x-ms-exchange-organization-outboundhop-mailuseragent-clienttype: MoMT
x-ms-exchange-organization-includeinsla:
 False:FlexTransport:EnterpriseMsgsAboveSizeThreshold
x-ms-exchange-organization-prioritization:
 2:FlexTransport:EnterpriseMsgsAboveSizeThreshold
x-ms-exchange-organization-transport-properties: DeliveryPriority=Low
Content-Type: text/plain; charset="us-ascii"
Content-Transfer-Encoding: quoted-printable
MIME-Version: 1.0


--_000_26ff0509b4894a36b69fc0ed4b8bd8edCH2PR07MB6551namprd07pr_--

Received: from BLAPR17MB4164.namprd17.prod.outlook.com
(2603:10b6:208:255::8)
 by BN7PR17MB2194.namprd17.prod.outlook.com with HTTPS; Thu, 10 Dec
2020
 14:24:48 +0000
Received: from DM6PR08CA0001.namprd08.prod.outlook.com
(2603:10b6:5:80::14) by
 BLAPR17MB4164.namprd17.prod.outlook.com (2603:10b6:208:255::8) with
Microsoft
 SMTP Server (version=TLS1_2,
cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id
 15.20.3632.21; Thu, 10 Dec 2020 14:24:45 +0000
Received: from DM6NAM12FT006.eop-nam12.prod.protection.outlook.com
 (2603:10b6:5:80:cafe::f) by DM6PR08CA0001.outlook.office365.com
 (2603:10b6:5:80::14) with Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.3654.12 via
Frontend
 Transport; Thu, 10 Dec 2020 14:24:45 +0000
Received: from NAM10-DM6-obe.outbound.protection.outlook.com
(40.107.93.115)
 by DM6NAM12FT006.mail.protection.outlook.com (10.13.178.234) with
Microsoft
 SMTP Server (version=TLS1_2,
cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id
 15.20.3654.10 via Frontend Transport; Thu, 10 Dec 2020 14:24:44 +0000
Received: from BLAPR07MB7537.namprd07.prod.outlook.com
(2603:10b6:208:29a::22)
 by MN2PR07MB7055.namprd07.prod.outlook.com (2603:10b6:208:1a2::14)
with
 Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.3654.13; Thu,
10 Dec
 2020 14:24:41 +0000
Received: from BLAPR07MB7537.namprd07.prod.outlook.com
 ([fe80::8139:989e:7db:af72]) by
BLAPR07MB7537.namprd07.prod.outlook.com
 ([fe80::8139:989e:7db:af72%7]) with mapi id 15.20.3654.014; Thu, 10
Dec 2020
 14:24:40 +0000
From: Becky Sandlin <bsandlin@jabenergysolutions.com>
To: Amy Porche <amy@offshoretechnical.com>
Subject: Read: Offshore Technical Solutions Inv.#  I-7859 for JAB
Energy
 Solutions PO# JAB-0708
Thread-Topic: Offshore Technical Solutions Inv.#  I-7859 for JAB
Energy
 Solutions PO# JAB-0708
Thread-Index: AdbOWWxVwFhXlopMTDK9QzRd7WJDbAApqleB
Date: Thu, 10 Dec 2020 14:24:40 +0000
Message-ID:

EXHIBIT - 12

```
<BLAPR07MB753712CC3D918B5A0F032278A5CB0@BLAPR07MB7537.namprd07.prod.ou
tlook.com>
In-Reply-To:

<BN7PR17MB2194926AF8D03224A5BDFC92BFCC0@BN7PR17MB2194.namprd17.prod.ou
tlook.com>
Accept-Language: en-US
Content-Language: en-US
X-MS-Exchange-Organization-AuthSource:
 DM6NAM12FT006.eop-nam12.prod.protection.outlook.com
X-MS-Has-Attach:
X-Auto-Response-Suppress: All
X-MS-Exchange-Organization-Network-Message-Id:
 e46c2db5-af89-463c-dadc-08d89d1757ab
X-MS-TNEF-Correlator:
X-MS-Exchange-Organization-RecordReviewCfmType: 0
x-ms-publictraffictype: Email
received-spf: Pass (protection.outlook.com: domain of
jabenergysolutions.com
 designates 40.107.93.115 as permitted sender)
 receiver=protection.outlook.com; client-ip=40.107.93.115;
 helo=NAM10-DM6-obe.outbound.protection.outlook.com;
x-ms-exchange-organization-originalclientipaddress: 40.107.93.115
x-ms-exchange-organization-originalserveripaddress: 10.13.178.234
x-ms-exchange-organization-submissionquotaskipped: False
x-originating-ip: [12.195.159.98]
authentication-results: spf=pass (sender IP is 40.107.93.115)
 smtp.mailfrom=jabenergysolutions.com; offshoretechnical.com;
dkim=pass
 (signature was verified)
 header.d=allisonmarine.onmicrosoft.com;offshoretechnical.com;
 dmarc=bestguesspass action=none
 header.from=jabenergysolutions.com;compauth=pass reason=109
arc-seal: i=1; a=rsa-sha256; s=arcselector9901; d=microsoft.com;
cv=none;
 b=VA/w/92Q7cCl3/bjIZfC/yG+7mivdpmL7tGmtcbVAYe/dZNRnyILfj6jwu/
KpngyodS1qfl90db1KCCQ/H/
RlVRySLP2kZk07SY0+xTWEgtaKANygJOmTALxsyqZWkQG4wImc3AXN3OgXtZx+P5yMiNW9
Y1FJ1f+WRTlVNjk86izsg+7ye8tlx35wLhiD5vSOfBPkDsJw97LCouZg6V8Ty/
dKadRoMoBiXFp542nPEz57s0k8WNDoj3qxO17NI4g7rSqccEt/
vljDNxfUND6HEpUzjTPe9GOdsV6rRkjX7m6jGTEwlOQYc8ZEUheL0C/
vDQKPZljWkspRZ0hWCmqgg==
arc-message-signature: i=1; a=rsa-sha256; c=relaxed/relaxed;
d=microsoft.com;
 s=arcselector9901;
 h=From:Date:Subject:Message-ID:Content-Type:MIME-Version:X-MS-
Exchange-SenderADCheck;
 bh=TEh4ZdhNPjsF4NYYVq9CzSkUr3NWXLtDxvHhMvl5cro=;
 b=Vs/LQzi1HvgusEaZCdaXISDpl9a/
```

N9xLzleylYh18izq50GTGXFdyO4ckpLP0fTOvxRFGIzb2P8fkLgbTQLDzAHtLVDIbeHVEJ
a3ti4mG/R2iFg4Wq4yZGWeFRYoHq4NryMRQZcS2CSnpesVyJG/
j2QH+9V36i+y57bPJyOXJss4a7bnaq0CbnWm5QCFsb4+hgIprfecQcTAH/
J908ViLcsat6KYFs05h1bZ700djaGY5h8XzKXxEueEUKMVTu4clNHl07E9rCdkmKtX6CBG
+uqXYtU72uCHLjq6Bpwp2rrL40lRbnhcBzvn30Jl3GEh0GI8m8xS5jqEvunkREnk0g==
arc-authentication-results: i=1; mx.microsoft.com 1; spf=pass
 smtp.mailfrom=jabenergysolutions.com; dmarc=pass action=none
 header.from=jabenergysolutions.com; dkim=pass
 header.d=jabenergysolutions.com; arc=none
dkim-signature: v=1; a=rsa-sha256; c=relaxed/relaxed;
 d=allisonmarine.onmicrosoft.com; s=selector2-allisonmarine-
onmicrosoft-com;
 h=From:Date:Subject:Message-ID:Content-Type:MIME-Version:X-MS-
Exchange-SenderADCheck;
 bh=TEh4ZdhNPjsF4NYYVq9CzSkUr3NWXLtDxvHhMvl5cro=;

b=II7xyqbiZrFPXBT+fdXbclpNUjBrGxDe1dfB7iOvTMQXVcQn0D7oNfSD9vrm7TniCxgH
VfA4Zir4rUM6FEFo6Zmvti2g1qyOgJJVivWtw8rAONLsQcvxTbnwRlFsqFmWhsfikjJoRj
9l+jE978/qJM9G0scpRlkIm/0FpFGtRh4=
x-ms-office365-filtering-correlation-id: e46c2db5-af89-463c-
dadc-08d89d1757ab
x-ms-traffictypediagnostic: MN2PR07MB7055:|BLAPR17MB4164:
x-microsoft-antispam-prvs:

<MN2PR07MB7055B3B064E71FC0B6E4FA0CA5CB0@MN2PR07MB7055.namprd07.prod.ou
tlook.com>
x-ms-oob-tlc-oobclassifiers: OLM:1728;OLM:813;
x-forefront-antispam-report:

CIP:40.107.93.115;CTRY:US;LANG:en;SCL:1;SRV:;IPV:NLI;SFV:NSPM;H:NAM10-
DM6-obe.outbound.protection.outlook.com;PTR:mail-
dm6nam10on2115.outbound.protection.outlook.com;CAT:NONE;SFS:
(5660300002)(7696005)(2160300002)(9686003)(52536014)(336012)(8676002)
(55016002)(1096003)(58800400005)(83380400001)(83320400002)(86362001)
(33656002)(356005)(83290400002)(7636003)(83300400002)(83280400002)
(6916009)(6506007)(36906005)(26005)(8636004)(83310400002);DIR:INB;
x-ms-exchange-senderadcheck: 1
x-microsoft-antispam: BCL:0;
x-ms-exchange-transport-forked: True
x-ms-exchange-crosstenant-network-message-id:
 e46c2db5-af89-463c-dadc-08d89d1757ab
x-ms-exchange-crosstenant-originalarrivaltime: 10 Dec 2020
14:24:44.8247 (UTC)
x-ms-exchange-crosstenant-fromentityheader: Internet
x-ms-exchange-crosstenant-id: 1718b1dc-a2ae-409f-813f-6c1fcbed01b9
x-ms-exchange-transport-crosstenantheadersstamped: BLAPR17MB4164
authentication-results-original: offshoretechnical.com; dkim=none
(message not
 signed) header.d=none;offshoretechnical.com; dmarc=none action=none
 header.from=jabenergysolutions.com;

x-microsoft-antispam-untrusted: BCL:0;
x-microsoft-antispam-message-info-original:

p5luTXSsYBJV9EompnFKRFOMXk3Qs9x98Va+GMeiJXkKJpvK592EcyQOsWEKOj9EHcCvDh
bPF8/
pks9necJTViia4BldbNh0DN6OGf+BmEX0M8I5aCoHnu6xcKq8lBHCo+cPKyCUbO0FD06Ru
qyUtu2VU56cPJZ5tMvzGIwYqNbsDj0YM0yg8/Z3ZKv2l/
FH7g6jukHKzwh1weefj3rIWMGuc6L/AKWmb5fG/hO+nSc=
x-forefront-antispam-report-untrusted:

CIP:255.255.255.255;CTRY:;LANG:en;SCL:1;SRV:;IPV:NLI;SFV:NSPM;H:BLAPR0
7MB7537.namprd07.prod.outlook.com;PTR:;CAT:NONE;SFS:(136003)(366004)
(346002)(376002)(186003)(55016002)(86362001)(9686003)(66556008)
(76116006)(66446008)(7696005)(66946007)(64756008)(66476007)(2906002)
(33656002)(621065003)(73894004)(52536014)(26005)(8676002)(6916009)
(6506007)(71200400001)(508600001)(8936002)
(4270600006);DIR:OUT;SFP:1102;
x-eopattributedmessage: 0
x-eoptenantattributedmessage: 1718b1dc-a2ae-409f-813f-6c1fcbed01b9:0
x-ms-exchange-transport-crosstenantheadersstripped:
 DM6NAM12FT006.eop-nam12.prod.protection.outlook.com
x-ms-exchange-transport-crosstenantheaderspromoted:
 DM6NAM12FT006.eop-nam12.prod.protection.outlook.com
x-ms-office365-filtering-correlation-id-prvs:
 fadebbbf-3595-4c71-a192-08d89d175497
x-ms-exchange-transport-endtoendlatency: 00:00:03.2778530
x-ms-exchange-processed-by-bccfoldering: 15.20.3632.023
x-ms-exchange-crosstenant-authas: Anonymous
x-ms-exchange-crosstenant-authsource:
 DM6NAM12FT006.eop-nam12.prod.protection.outlook.com
x-ms-exchange-antispam-messagedata-original:
 =?us-ascii?Q?
UV+5DkgsvplG4gt4Cn4d0L8HRuHFLCEuEiimDTEQvmUA4+FG9fDpKIhE5ysC?=
 =?us-ascii?Q?
38dg3TMeCOXWKaeuND+MlrnjkAcYTdgUA9U2bRx1SD7TRdvK6tdCtf2Pisz5?=
 =?us-ascii?Q?q0I9fdetj6HELH9gn5i6q5NlYT/+PFZr/pAb/
VQDdVG0+Zx2vmG1q012lkAF?=
 =?us-ascii?Q?IZCvMzOEyhaDwTTHx9ApdgNEMTqDmTVbTm4FYUQlQuoKvM/
LryhgEc1VOtMT?=
 =?us-ascii?Q?lR+UuXBfNTLc4jZNMmy6W5/5flnv82844wnyxfrsetJZ/
YBFVEjfg+XOsH5a?=
 =?us-ascii?Q?6PUtqEdK2zQxnaMxTopWkdgFTBIeq5vwKc9/
InO5uiBoKswLxV5G3qmuGEZp?=
 =?us-ascii?Q?
MzGM7RvZ3ZL5iVSKMEGa7zBNQx1lJaYVuKYfGJXR1eMhITRnLcrpQlNv5ksc?=
 =?us-ascii?Q?iUbh5yDjy4cCCAHRrY8Dv07/
Z5HX6X4Efxyqk8CVFzWgyXR4KAQcH51Gd+/H?=
 =?us-ascii?Q?zageURycZgXi/S22XQ+szRF/
fOESdukiWkYa+Nr5fYzyAtuGxkPEizr5xo/t?=
 =?us-ascii?Q?

```
dkuTna3IhW9J860K8Lf+5vf7uaPwqoC+s1v81YhnvUGdxR7l94HtPU35yFgs?=
 =?us-ascii?Q?ZGh4vYIYZJF7LBOaKG9IUszmCkSTDmOtTKHkCQq8dwTc/
IOOA3DwzLfF1iCi?=
 =?us-ascii?Q?
Q+VWJEQsYcEXXurKmKAWN3skGCVRPj6o2+qrATy40SjBnALkXUmsAdFfogHM?=
 =?us-ascii?Q?CC2R6yGsT/
i5XId8ajhDRNglt7Gf8Di43mQda96WkIURY+fuVJJbXuOGyfGD?=
 =?us-ascii?Q?FOUvEb9z1DVljTMUPh5/jZHzqPff8lWMN/
khmKPaWchhiBtLgDel2mVEd0Hv?=
 =?us-ascii?Q?YDK9mvWU0z58NKeLEgsYyEicbHdP/4SGgT4amGV3YlSUgAzVDC2EKc+
+Ep+r?=
 =?us-ascii?Q?Ut7GPbkNNgBqgL0JnilZJ0RD3+nHH/
BN7guzvYUiVW0l9QY9rRgRppMwr8eG?=
 =?us-ascii?Q?pMRFa2XxnyLOPVgF9GsUwCWmlWeJNhILmfYOYUuoxyA=3D?=
X-Microsoft-Antispam-Mailbox-Delivery:
 ucf:0;jmr:0;auth:0;dest:I;ENG:(20160514016)(750128)(520011016)
(944506458)(944626604);
X-Microsoft-Antispam-Message-Info:
 =?us-ascii?Q?
YQ2E1b6Snfzaf67iXt2N+jG9Tz3yWhcV8OPHM3V5+6m+AbMgxEpqN2eha5Lk?=
 =?us-ascii?Q?xDe0To7Uf15qn2Sa0sF5Nl1iQPCt9HuyCx1hcyEaeGxgFVFSwIo+
+t9yFM5i?=
 =?us-ascii?Q?hrrzIBaf+JdAI73mH9zYk8/Za9CW4mpmxCgBns/a/
XLdHOoCAg6Mlv34SgMJ?=
 =?us-ascii?Q?TEG46iu1xPTp9xRv/
l7t7rnWeeDzBnxF3aq6RJTjz51eiSj7Ae7TN4t74DE+?=
 =?us-ascii?Q?/
FEvblNEnnY7KCRXvyatICxhAcB+CG2ck09PEM9AbUQikpvBH4EAa67MF0FN?=
 =?us-ascii?Q?
edMCKpT5o7wecAsM7tb8/9Bg7+KliG4jbHmNfrfrxQN3fM0xuCBodrxyVOcI?=
 =?us-ascii?Q?5GqG1S4WJqPI3t5gzdJjKKTJZJQcECUnc8Z2nSW3cHMiK3/
DnjQi7wIFduWY?=
 =?us-ascii?Q?cgn3VUweYEOzAymn7iqQYMn7nZXTG6mf0oRxkR3A/
uesm09vv1RsM3rmme6h?=
 =?us-ascii?Q?4/IuNDRhLOj4Hij3MXjZIbiHeODgHOuMsPM/
K0+a2VzlHaGRDGET9Oi2bIct?=
 =?us-ascii?Q?
kyKTeF0R2Bon09Qom1m4W0S+LSp8U2ZMPgcZBWwBLvca23ShfEqMDD3qGRO0?=
 =?us-ascii?Q?5i/v/RWDVHyFO5KkY4supcn0WmzF/7KLuF0/+31E/
xyeldvzOzYWpmzUVSOs?=
 =?us-ascii?Q?
Fh6vUY4D2jThCkR5xsTPzzQIRk8VAoC6jVgqc3vWKUCSP5f9aFUEUfY+KO6o?=
 =?us-ascii?Q?6IviXG7cdYUQhyD87UspYPVbyg9f/1LizMH6/
NGN1OlPi2p7xZ4LLWfspuj9?=
 =?us-ascii?Q?
xtziYuWlWtfg3RijkYEypbKNdPN10G+wIMR8CH79w2zp7Sd72LACxwpE/RdZ?=
 =?us-ascii?Q?0ZN/uci0KX852YZwvICV4Co6VTkxwaqLNZ0J8Z+4xKQ63mpOQX5F/
BbhAP5z?=
 =?us-ascii?Q?nsA/0k1QPOX/cAiLDoC8aXRT5XFaHIGw3j2eL4f2V8QzxH4Zj/
efPcwbyhgi?=
```

```
 =?us-ascii?Q?
nn+PNVQtrDBsctsgQd6XTJnpfGjuO3ynugnjf67i1iPWBO8qkUqFXIOga5xI?=
 =?us-ascii?Q?
+Xva3nYUu42vAyvCtPjh9t2Vd9H08MlOV7wndMlGLfmwGaDKVdDQcxBPQLro?=
 =?us-ascii?Q?MD/3or274X8hX6uuQGz7seUi8zNRB9l0koWaSjIK5D0DjPCGiV3FM/
8LiH21?=
 =?us-ascii?Q?H/KtNwuWym0xtCuLZToiMOGr4lm4YpZMzporyF/
pNvCfW1yx5PXZ6Dbp/zDP?=
 =?us-ascii?Q?
+KMMRCrMTgSj6CL8uQ66WrEfKQIEAeWiPYLTxrnjMDXyPiKBr1QDvjAoS6Kz?=
 =?us-ascii?Q?HVBgQy4DJF8ptx+1wFuq93lPcIHGFMr3H/2luboFXQ=3D=3D?=
Content-Type: multipart/report;

boundary="_000_BLAPR07MB753712CC3D918B5A0F032278A5CB0BLAPR07MB7537namp
_";
        report-type=disposition-notification
MIME-Version: 1.0

--_000_BLAPR07MB753712CC3D918B5A0F032278A5CB0BLAPR07MB7537namp_
Content-Type: multipart/alternative;

boundary="_002_BLAPR07MB753712CC3D918B5A0F032278A5CB0BLAPR07MB7537namp
_"

--_002_BLAPR07MB753712CC3D918B5A0F032278A5CB0BLAPR07MB7537namp_
Content-Type: text/plain; charset="us-ascii"
Content-Transfer-Encoding: quoted-printable

Your message

   To: Becky Sandlin
   Subject: Offshore Technical Solutions Inv.#  I-7859 for JAB Energy
Solut=
ions PO# JAB-0708
   Sent: Wednesday, December 9, 2020 12:31:52 PM (UTC-06:00) Central
Time (=
US & Canada)

 was read on Thursday, December 10, 2020 8:23:52 AM (UTC-06:00)
Central Tim=
e (US & Canada).

--_002_BLAPR07MB753712CC3D918B5A0F032278A5CB0BLAPR07MB7537namp_
Content-Type: text/html; charset="us-ascii"
Content-ID:
<AC9B8EED1FA1CB44833EA037DCC5A2BE@namprd17.prod.outlook.com>
Content-Transfer-Encoding: quoted-printable

<html><head>
<meta http-equiv=3D"Content-Type" content=3D"text/html; charset=3Dus-
```

```
ascii"=
>
<meta name=3D"Generator" content=3D"Microsoft Exchange Server">
<!-- converted from text --><style><!-- .EmailQuote { margin-left:
1pt; pad=
ding-left: 4pt; border-left: #800000 2px solid; } --></style>
</head>
<body>
<font size=3D"2"><span style=3D"font-size:11pt;">
<div class=3D"PlainText">Your message <br>
<br>
   To: Becky Sandlin<br>
   Subject: Offshore Technical Solutions Inv.#  I-7859
for J=
AB Energy Solutions PO# JAB-0708<br>
   Sent: Wednesday, December 9, 2020 12:31:52 PM (UTC-06:00)
Cent=
ral Time (US &amp; Canada)<br>
<br>
 was read on Thursday, December 10, 2020 8:23:52 AM (UTC-06:00)
Centra=
l Time (US &amp; Canada).</div>
</span></font>
</body>
</html>


--_002_BLAPR07MB753712CC3D918B5A0F032278A5CB0BLAPR07MB7537namp_--

--_000_BLAPR07MB753712CC3D918B5A0F032278A5CB0BLAPR07MB7537namp_
Content-Type: message/disposition-notification

Final-recipient: RFC822; bsandlin@jabenergysolutions.com
Disposition: automatic-action/MDN-sent-automatically; displayed
X-MSExch-Correlation-Key: kqyFkv71TE+X73nkhz+46A==
X-Display-Name: Becky Sandlin


--_000_BLAPR07MB753712CC3D918B5A0F032278A5CB0BLAPR07MB7537namp_--
```

**Subject:**      JAB Energy Solutions Invoices - I-7851, I-7859, I-7887
**Date:**         Thursday, January 21, 2021 at 2:32:50 PM Central Standard Time
**From:**         Becky Sandlin
**To:**           Richard Burgo
**CC:**           Accounts Payable
**Attachments:** image005.jpg, image006.jpg

We have received the three invoices we spoke about.  All have been approved and posted.

I do not have any information regarding payment of these.

**Kind Regards,**

*Becky Sandlin*

**Administrative Assistant**
**JAB Energy Solutions, LLC**
**Allison Marine Holdings**
**19221 I45 South**
**Ste 324**
**Shenandoah, TX 77385**
**281-260-7500**



EXHIBIT - 13

**From:** Amy Porche <amy@offshoretechnical.com>
**Date:** April 28, 2021 at 4:41:19 PM CDT
**To:** Richard Burgo <richard@offshoretechnical.com>
**Subject: FW: Offshore Technical Solutions Inv.# I-7851 for JAB Energy PO# JAB-0708**



**Amy Porche**
Office Administrator



690 South Hollywood Road Houma, LA  70360
(985) 879-3212 Office
(985) 688-5800 Direct
(985) 879-3475 Fax
www.offshoretechnical.com

This e-mail is confidential and is intended only for the person(s) named above. Its contents may also be protected by privilege, and all rights to privilege are expressly claimed and not waived. If you have received this e-mail in error, please call us immediately and destroy the entire e-mail. If this e-mail is not intended for you, any reading, distribution, copying, or disclosure of this e-mail is strictly prohibited.

**From:** postmaster@allisonmarine.onmicrosoft.com
<postmaster@allisonmarine.onmicrosoft.com>
**Sent:** Friday, November 6, 2020 4:48 PM
**To:** Amy Porche

EXHIBIT - 14

**Subject:** Delivered: Offshore Technical Solutions Inv.# I-7851 for JAB Energy PO# JAB-0708


**Your message has been delivered to the following recipients:**

srobertson@allison-companies.net

Subject: Offshore Technical Solutions Inv.# I-7851 for JAB Energy PO# JAB-0708

## Amy Porche

| | |
|---|---|
| **From:** | Sonda  Robertson <srobertson@allison-companies.net> |
| **Sent:** | Wednesday, April 28, 2021 4:47 PM |
| **To:** | Amy Porche |
| **Subject:** | RE: Offshore Technical Solutions - JAB Pass Due Account |

Amy,
I have forwarded to Brent Boudreaux for his feedback.
Regards,
Sonda

**From:** Amy Porche <amy@offshoretechnical.com>
**Sent:** Wednesday, April 28, 2021 4:45 PM
**To:** Sonda Robertson <srobertson@allison-companies.net>
**Subject:** Offshore Technical Solutions - JAB Pass Due Account
**Importance:** High

Jab Energy's account with Offshore Technical Solutions is over 90 days past due.  I have included a copy of the statement for Jab Energy along with the original invoices as they were submitted for payment.
It would be greatly appreciated if we could get a status on payment of these invoices.

Kindest Regards,

**Amy Porche**
Office Administrator

 **OFFSHORE**
**TECHNICAL**
**SOLUTIONS**
690 South Hollywood Road Houma, LA  70360
(985) 879-3212 Office
(985) 688-5800 Direct
(985) 879-3475 Fax
www.offshoretechnical.com

This e-mail is confidential and is intended only for the person(s) named above. Its contents may also be protected by privilege, and all rights to privilege are expressly claimed and not waived. If you have received this e-mail in error, please call us immediately and destroy the entire e-mail. If this e-mail is not intended for you, any reading, distribution, copying, or disclosure of this e-mail is strictly prohibited.

**EXHIBIT - 15**

JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Offshore Technical Solutions, LLC | JAB Energy Solutions, LLC, JAB Energy Solutions II, LLC, and Allison Marine Holdings, LLC |

**(b)** County of Residence of First Listed Plaintiff   Terrebonne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Martin S. Bohman & Harry E. Morse, Bohman Morse, LLC, 400 Poydras Street, Suite 2050, New Orleans, Louisiana 70130

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability |  | 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability    ☐ 367 Health Care/ |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &    Pharmaceutical Slander    Personal Injury |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability    ☐ 368 Asbestos Personal ☐ 340 Marine    Injury Product ☐ 345 Marine Product    Liability |  | ☐ 835 Patent - Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability    **PERSONAL PROPERTY** ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act |  | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury    ☐ 385 Property Damage ☐ 362 Personal Injury -    Product Liability Medical Malpractice | ☐ 740 Railway Labor Act ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | Exchange ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act |  | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee |  | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence Accommodations    ☐ 530 General |  | ☐ 871 IRS—Third Party | Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | Employment    **Other:** ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other Other    ☐ 550 Civil Rights ☐ 448 Education    ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions |  | State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
43 U.S.C. 1331 (Outer Continental Shelf and Lands Act)
Brief description of cause:
Suit for Breach of Contract / Services rendered in connection with OCSLA situs; Well decommissioning

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
05/12/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____