**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

CRAIG T. GOLDBLATT  
JUDGE

824 N. MARKET STREET  
WILMINGTON, DELAWARE  
(302) 252-3832



September 18, 2023

**VIA CM/ECF**

      Re:   *JAB Energy Solutions II, LLC*, Case No. 21-11226

Dear Counsel:

      Under the plan confirmed in the above-captioned bankruptcy case, a Liquidating Trust was granted authority to pursue certain causes of action against the debtor's former insiders.[1] The Trust filed such a lawsuit, on September 6, 2023, in the United States District Court for the Southern District of Texas.[2] The parties dispute the scope of the authority the plan grants the Liquidating Trust to bring such litigation. The Liquidating Trust accordingly filed this motion seeking clarification about the scope of the authority it enjoys under the terms of the confirmed plan. The debtor's former parent corporation, Allison Marine Holdings, objects to that relief, arguing that it is both procedurally and substantively improper.[3]

      For the reasons described below, the Court is satisfied that the Trust's motion is procedurally appropriate. On the merits, the Court agrees with the Trust's reading of the plan as it relates to certain claims, but not as to others. The Trust's motion will therefore be granted in part and denied in part.

**I.    The relief sought by the Trust is procedurally appropriate.**

      AMH offers three procedural reasons why the relief sought is inappropriate. None is persuasive.

---

[1] The JAB Energy Solutions II, LLC Liquidating Trust, of which H. Kenneth Lefoldt serves as the Trustee, is referred to as the "Liquidating Trust" or the "Trust."

[2] *See Lefoldt v. Boudrequx, et al.,* S.D. Tex. No. 23-3331.

[3] Allison Marine Holdings is referred to as "AMH".

### A.  This Court has subject-matter jurisdiction to construe the plan.

AMH first argues that the Court lacks subject-matter jurisdiction over this dispute in view of the fact that the underlying litigation is now pending in the Southern District of Texas.  That assertion is incorrect.  Under 28 U.S.C. § 1334(b), district courts have jurisdiction over matters arising under title 11 or those that "arise in" or are "related to" a bankruptcy case.  28 U.S.C. § 157(a) authorizes the district court to refer such cases to the bankruptcy judges, which the District Court for the District of Delaware has done through its February 29, 2012 standing order.

The controlling case law makes clear that this statutory grant of jurisdiction authorizes bankruptcy courts to interpret and enforce their own prior orders.  The Supreme Court explained in *Travelers* that the question whether a bankruptcy court had jurisdiction to construe and enforce its prior orders was "easy."[4]  The Third Circuit recently underscored that principle in *Essar Steel*, stating unequivocally that "bankruptcy courts have jurisdiction to interpret and enforce their prior orders."[5]  And because the confirmation order in this case expressly provides that the Court retained jurisdiction "to ensure that the purpose and intent of the Plan are carried out," this motion to enforce is properly understood as one to enforce that confirmation order.[6]

AMH offers no response at all to this controlling authority holding that a bankruptcy court may enforce its prior order.  The Court is thus satisfied that it has subject-matter jurisdiction to consider the Trust's motion, which seeks to clarify and enforce section 3.37 of the confirmed plan.

### B.  Even if this action ought to have been brought as an adversary proceeding under Rule 7001, any violation of the rules is harmless.

AMH next argues that the Trust is improperly seeking relief by way of a motion that can only be granted through an adversary proceeding.  Bankruptcy Rule 7001 sets forth the types of matters that must proceed by way of adversary proceeding rather than by motion.  AMH correctly argues that the motion seeks, in effect, a declaratory judgment with respect to the meaning of the confirmed plan.  And Rule 7001(9) provides that "a proceeding to obtain a declaratory judgment" relating to the

---

[4] *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009).

[5] *In re Essar Steel Minnesota, LLC*, 47 F.4th 193, 200 (3d Cir. 2022).

[6] *See* D.I. 382 at 28; *see also In re Shenango Group, Inc.*, 501 F.3d 338, 344 (3d Cir. 2007) (bankruptcy courts have jurisdiction to enforce a plan).

topics set forth in Rules 7001(1) to 7001(8) shall proceed by way of adversary proceeding.

The Trust responds that the declaratory judgment it seeks does not relate to the matters set forth in 7001(1) to 7001(8) and therefore does not require an adversary proceeding. The Trust may well be correct about that. Rule 7001(7) covers a proceeding "to obtain an injunction or equitable relief, except when a … chapter 11 … plan provides for the relief."[7] So a case can be made that the declaratory relief sought by this motion, which seeks only a clarification of what the plan already provides, is within the Rule 7001(7) exception to the requirement of an adversary proceeding, and therefore not covered by Rule 7001(9).

Under the circumstances presented, however, the Court does not believe it needs to reach a definitive resolution of the merits of that question, since even if the Rules formally required an adversary proceeding, the error the Trust committed in bringing this proceeding by motion was a harmless one. Bankruptcy Rule 9005 incorporates Rule 61 of the Federal Rules of Civil Procedure, which states that the "court must disregard all errors that do not affect any party's substantial rights."[8]

Had this dispute been brought to the Court by way of adversary proceeding, the caption would have looked different and AMH would have been served with a summons. But there is no dispute that AMH in fact received notice of the proceeding. It filed an extensive brief setting forth its position in opposition to the relief sought. And while AMH contends that it would have had additional time to respond had the matter taken the form of an adversary proceeding, the Court does not believe that the points made would have been materially different. In light of the issues presented, both sides had sufficient time to present their arguments. As such, the Court does not believe that any violation of Rule 7001, if the Rule was in fact violated, affected any party's substantial rights. The Court is thus directed, by Bankruptcy Rule 9005 and Civil Rule 61, to disregard any such error.

### C. The fact that the plan incorporates the terms of an insurance policy does not transform the action into a non-core insurance coverage dispute.

As is further described in Part II, below, the plan defines the universe of claims that are assigned to the Trust (through a series of defined terms) by cross-referencing an insurance policy issued to AMH. As a result, to resolve the merits of the present motion, the Court is required to construe the terms of that policy.

---

[7] Fed. R. Bankr. P. 7001(7).

[8] Fed. R. Civ. P. 61.

*JAB Energy Solutions II, LLC*, Case No. 21-11226
September 18, 2023
Page 4 of 8

      From that, AMH argues that the motion is no different from an insurance coverage dispute, which it contends is a non-core matter. AMH is certainly correct that a lawsuit by a debtor seeking contractual damages against an insurer would be a non-core matter. Such an action is a paradigmatic matter of "private right" which under *Stern v. Marshall* Congress could not refer (absent consent) to a non-Article III bankruptcy court for the entry of final judgment.[9]

      But this motion is not a claim seeking money damages for breach of an insurance contract. It seeks a construction of a confirmed plan of reorganization. The fact that the plan happens to incorporate language from an insurance policy does not turn this dispute into an insurance coverage matter.

      AMH protests that it is concerned that this Court's ruling might nevertheless be viewed as binding on the insurer. That concern is misplaced, as the insurer is not a party to the dispute now before this Court. And while the court issuing a decision typically ought not opine on the preclusive effect of that court's own judgment, which question is better left to the court in which a party seeks to give the prior judgment preclusive effect,[10] nothing is more fundamental than the proposition that a court's order binds only the parties to the lawsuit and those with whom they are in privity.[11] In any event, the question of the preclusive effect of a judgment has nothing to do with whether the matter is core or non-core. This is (as set forth above) a motion that seeks a clarification of this Court's own prior orders. As such, Third Circuit law makes plain that it is a core matter.[12]

---

[9] *See Stern v. Marshall*, 564 U.S. 462, 489-492 (2011). *See also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

[10] "A court usually does not get to dictate the preclusion consequences of its own judgment." *Smith v. Bayer Corp.,* 564 U.S. 299 (2011), quoting Wright, Miller & Cooper, 18 FED. PRAC. & PROC. JURIS. § 4405 (3d. ed. 2017). *See also Pettibone Corp. v. Easley,* 935 F.2d 120, 123-124 (7th Cir. 1991) ("Disputes about the effect of a decision in one case on the prosecution of another are for the judge presiding in the second case. In the law of preclusion the second court normally determines the effects of the first judge's order.").

[11] *See Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) ("It is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.") (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).

[12] *Essar Steel Minnesota*, 47 F.4th at 199 (the "matter falls within those categories of core proceedings, as Mesabi asked the Bankruptcy Court to interpret the discharge injunction order in its own plan and confirmation order").

*JAB Energy Solutions II, LLC*, Case No. 21-11226
September 18, 2023
Page 5 of 8

## II. The plan authorizes the Trust to bring claims against officers for amounts outside of insurance policy limits, but does not authorize it to bring suit against AMH.

The plan authorizes the Trust to "investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtor holds or may hold against any Entity that constitute Liquidating Trust Assets."[13] The plan further provides that the Liquidating Trust Assets vest in the Trust.[14]

The term Liquidating Trust Assets is itself defined in § 3.85 of the plan to include the Assigned Liquidating Trust Claims. Those, in turn, are defined to include the D&O Insurance Assigned Claims.[15] D&O Insurance Assigned Claims are themselves defined, in § 3.37, to include:

> Any and all claims and causes of action belonging to the Debtor or the Estate, only to the extent such claims and causes of action are covered under any applicable policy of insurance belonging to the Debtor or the Estate, against Brent Boudreaux and any other person qualifying as an "Insured Person" under that certain Management Liability Solutions 2.0 Insurance Policy, Policy No. DPLE320442, Policy Form Number D56100-G.[16]

The merits question raised by this motion thus asks two questions. *First*, whether the claims that the Trust is asserting in the district court action is a claim that is "covered under any applicable policy of insurance belonging to the Debtor or the Estate." And *second*, whether AMH fits within the language describing who may be sued – "Brent Boudreaux and any other person qualifying as an 'Insured Person' under that certain Management Liability Solutions 2.0 Insurance Policy, Policy No. DPLE320442, Policy Form Number D56100-G."

### A. The Trust may bring any claim that is covered, even if only in part, by applicable insurance.

The Trust first seeks a determination that it is not limited to pursuing only that portion of the claims against directors and officers that might be covered by insurance, but that it may recover the entire claim, keeping for the beneficiaries of

---

[13] D.I. 312, § 14.6, at 58.

[14] *Id.* § 14.5, at 57

[15] *Id.* § 3.6, at 8.

[16] *Id.* § 3.37 at 11.

*JAB Energy Solutions II, LLC*, Case No. 21-11226
September 18, 2023
Page 6 of 8

the Trust only that portion that is covered by insurance, and remitting to the holders of Class 3 claims against the estate the portion that is not covered by insurance.

In arguing that the Trust may *not* assert the portion of the claim that is not covered by insurance, AMH argues that the language of § 3.37 that limits the assignment "only to the extent such claims and causes of action are covered" by an insurance policy means exactly that – the Trust only gets the portion that is covered by insurance and cannot assert a claim for anything more.

That argument, though supportable from the text of the plan, runs into a host of practical problems. Unless and until any disputes regarding insurance coverage are resolved, how is the Trust supposed to proceed in district court? A cause of action either is or is not asserted against a defendant in a lawsuit. What does it mean to assert a claim "to the extent" of available insurance?

In addition to pointing to this practical problem posed by AMH's construction, the Trust also points to its own textual provision. Section 10.3(b) of the plan, which describes the treatment afforded to the holders of Class 3 claims – claims held by the debtor's prepetition junior lenders – states that "the Holder of the Prepetition Junior Lender Claims shall be entitled to any Class 3 - Distributable D&O Non-Insurance Proceeds as soon as reasonably practicable after the receipt thereof by the Liquidating Trust."[17]

The Trust thus argues that the language of § 3.37 describes the portion of the claim that the Trust keeps and distributes to its beneficiaries. It does not prevent the Trust from suing to recover "Distributable D&O Non-Insurance Proceeds," a term that, despite being capitalized, is (unhelpfully) not defined by the plan. The role of the Trust is to sue to recover these amounts beyond the limits of coverage and turn them over to the Class 3 creditors.

If one were to view the language of 3.37 in isolation, perhaps it is true that AMH would have the better reading. But text cannot be read without context. And the context provided by § 10.3(b) is decisive. AMH candidly acknowledged that it had absolutely no explanation for what work, on its construction of § 3.37, §10.3(b) was doing. The truth of it is that AMH's reading is worse than just rendering § 10.3(b) surplusage, AMH's reading turns this provision of §10.3(b) into a false statement. In light of that glaring difficulty with AMH's reading, the Court is persuaded that the Trust's reading of § 3.37 is the more plausible one.

Finally, AMH focuses on the language of § 3.37 indicating that the claims were limited to ones covered by insurance "belonging to the Debtor or the Estate." Because, under the insurance policy at issue, the debtor – while an "Insured" – is not the

---

[17] *Id.* § 10.3(b) at 46.

"Named Entity," AMH argues that the policy in question does not "belong" to the debtor. That is incorrect. As an "Insured," there is no dispute that the debtor had rights to coverage under the policy at issue. As a matter of ordinary English, that is sufficient to make the policy in question one that "belong[s] to the Debtor or the Estate."

The Court will accordingly enter an order clarifying that § 3.37 does not prevent the Trust from asserting a claim for amounts in excess of those that may be covered by insurance.

### B.     The Trust is not assigned any claim against AMH.

AMH next argues that it is not an "Insured Person" under the policy at issue, and as such the plan does not authorize the Trust to assert a claim against it. The Court is persuaded by AMH's argument in this regard.

The policy defines an insured person as "all Executives and all Employees."[18] Further, Executives are defined as "all persons who were, now are, or shall be directors, officers, management committee members, advisory committee members, members of the Board of Managers or natural person general partners of the Company."[19]

While it is undisputed that AMH was the sole manager of JAB, that does not mean that it was either a "management committee member" or a member of the "Board of Managers." Moreover, again as a matter of ordinary English, it would seem surprising if a corporate entity would fit within the definition of "Executive," which term certainly brings to mind a natural person rather than a corporation.

The Trust responds by arguing that such a reading is inconsistent with the principle that ambiguous provisions in insurance policies should be read in favor of coverage, and that such a ruling would operate to remove from coverage a claim that AMH mismanaged JAB. But that is incorrect. The policy at issue includes four separate heads of coverage: Insured Persons Liability Coverage, Insured Persons Reimbursement Coverage, Company Coverage, and Outside Entity Coverage. The basis under which claims against AMH would be covered by the policy would be under the "Company Coverage." It turns out, however, that the plan only assigns to the Trust claims that run against "Insured Persons." Because AMH is not such an Insured Person, the claim against it is not assigned to the Trust under the plan.

---

[18] D.I. 501-2, Exhibit 2, at 18.

[19] *Id.*

## Conclusion

For the foregoing reasons, the Court concludes that the Trust's right to assert claims against "Insured Persons" is not limited to the portion of the claim that is covered by an applicable policy, but that AMH is not such an "Insured Person" as the plan uses that term. An appropriate order will follow.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge